UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

Civil Action No.

ELECTRO-MECHANICAL PRODUCTS, INC.,
a Colorado corporation, DAVID P. MORRIS, an
individual, and DAVID J. WOLENSKI, an individual,

        Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York
corporation, and ALAN LUPTON II, an individual.

        Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiffs Electro-Mechanical Products, Inc., David P. Morris and David J. Wolenski, by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., hereby file their Verified Complaint and claims for relief against Defendants Alan Lupton Associates Inc. and Alan Lupton II and state and allege the following:

### I. PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Electro-Mechanical Products, Inc., ("EMP"), is a Colorado corporation whose principal place of business is 897 Tabor Street, Lakewood, CO, 80401.

2.    Plaintiff David P. Morris is an individual who resides at 2326 Cherry Street, Denver, CO, 80207.

3. Plaintiff David J. Wolenski is an individual who resides at 5328 W. Burgundy Pl., Littleton, CO, 80123.

4. Defendant Alan Lupton Associates Inc., also known as Lupton Associates, ("Lupton Associates") is a New York corporation whose principal place of business is 343 N. Main Street, #201, Canandaigua, NY, 14424.

5. Defendant Alan Lupton II is an individual who resides in Canandaigua, New York.

6. This Court has subject matter jurisdiction over Plaintiff's claims through diversity jurisdiction under 28 USC §1332. The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. Moreover, complete diversity exists between the parties. The claims are between the Plaintiffs, a Colorado corporation and individuals located or domiciled in the state of Colorado, and Defendant Lupton Associates, a New York corporation located in the state of New York and Alan Lupton II domiciled in the state of New York. U.S.C. §1391(d).

7. Personal jurisdiction is proper as the Defendants have transacted extensive business in the state of Colorado during the time period in question and have had sufficient minimum contacts with the state of Colorado. Venue is proper pursuant to 28 USC §1391(b)(2) as a substantial part of the events giving rise to the Plaintiffs' claims occurred in this judicial district.

## II. GENERAL ALLEGATIONS

8. EMP is a leading manufacturer of precision machined components, thermal management solutions, and mechanical and electrical sub-assemblies used by technology–driven industries worldwide. For more than 50 years, EMP and its predecessors have provided innovative manufacturing solutions for the semiconductor, medical, laser, aerospace, commercial and hi–tech

industries. EMP, either directly and/or through its subsidiary, holds ISO9001:2015 and AS9100:2016 (rev B) certifications.

9. Lupton Associates provides engineered products to contract manufacturers. Lupton Associates also claims to provide sales representative services.

10. Alan Lupton II is believed to be a shareholder and officer of Lupton Associates.

11. On November 1, 1989, EMP and Lupton Associates entered into a contract ("the Contract") whereby Lupton Associates agreed to provide its best efforts to promote, develop and extend the sales of EMP's services and products to original equipment manufacturers or other contract manufacturers. In exchange for Lupton Associates' services, the parties agreed that EMP would pay Lupton Associates 5% of net sales resulting from orders received and accepted by EMP as produced by Lupton Associates. *See* Exhibit A attached hereto, Contract Dated November 1, 1989.

12. Pursuant to the Contract, commissions on orders are limited to those from persons and entities having businesses within the state of Colorado. The Contract provides that it will be automatically renewed for one year upon the same terms unless terminated pursuant to the termination clause.

13. On March 8, 2000, EMP and Lupton Associates executed an amendment ("the Amendment") to the Contract. The Amendment provides that Lupton Associates agreed to be the exclusive sales representative for the territory which includes the states of New York, Vermont, New Hampshire, Maine, Connecticut, Massachusetts, Rhode Island, Pennsylvania, New Jersey, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, Colorado, and Wyoming.

14. Paragraph four of the Amendment provides as follows:

"'Cause' for termination pursuant to Paragraph 8 of the Sales Agreement is defined as material breach of the Sales Agreement or material nonperformance under the Sales Agreement, in either case continuing more than 30 days after written notice specifying such cause and demanding its cure."

15. Paragraph 10 of the Amendment provides as follows:

"All contrary provisions notwithstanding, the Sales Agreement may not be terminated by EMP (except for Cause), nor may EMP elect not to renew it under Paragraph 7 or 9 of the Sales Agreement, so long as Alan Lupton or any other shareholder in Lupton Associates or family member (meaning parent, grandparent, descendant, sibling or the spouse of Alan Lupton or any such person) thereof or employee of Lupton Associates owns stock in EMP."

16. EMP has served its notice of breach and demanding cure of Lupton Associates material nonperformance. *See* <u>Exhibit B</u> attached hereto, Letter Declaring Breach and Demanding Cure.

17. Paragraph 13 of the Amendment provides that all other provisions of the Contract shall remain in full force and effect other than as set forth in the Amendment. Collectively, the Contract and the Amendment are the "Lupton Agreement".

18. Paragraph one of the Contract provides that in addition to Lupton Associates using its best efforts to promote, develop and extend the sales of EMP, it will not directly or indirectly solicit orders for or sell any products competitive with EMP's products without EMP's written consent. Contrary to this provision, Lupton Associates has marketed a company called PGM Corp. ("PGM"), located in Rochester, NY. PGM's website indicates that it is "a full service precision manufacturing corporation specializing in precision CNC machining, turning, grinding and assembly" and is ISO9001:2015 and AS9100:2016 certified. Upon information and belief, Lupton Associates is providing sales support and services for PGM, and PGM is a direct competitor with EMP. EMP has not consented to Lupton Associates' representation of PGM.

19. During the early years of the Contract, Lupton Associates provided adequate sales services and assistance to EMP and provided quotes for new customers to buy EMP's products.

20. In recent years, and in particular the last 2-3 years, Lupton Associates has significantly underperformed and not performed its sales services and assistance to EMP. In particular, in a number of the defined territories for which Lupton Associates is to be the exclusive sales representative of EMP, there has been no contact or virtually no contact with the sales representative for that state and, further, no quotes or virtually no quotes from a vast majority of these territories. Even when a sales representative was involved in the early sales process, their assistance substantially decreased or ceased over time.

21. One of the customers is located in the United States and in Mainland China, among other countries (due to confidentiality obligations, identified as the "Customer"). In or about 2008, conflicts and problems arose between Lupton Associates' sales representative Harlan (Rusty) Munn, the Customer and EMP regarding sales made to the Customer. EMP requested that Mr. Munn no longer be the sales representative for the Customer because of the conflicts. In or about 2009, he left the employment of Lupton Associates. Lupton Associates did not provide an acceptable proposal for the assignment of a new sales representative to promote the sales of EMP. By that time the purchasing was sourced primarily in Mainland China, and Lupton Associates had no experience selling in Mainland China, and since then no sales representative has been assigned to promote the sales of EMP to this Customer. Lupton Associates has not assisted with quotes, sales, or servicing to this Customer since approximately 2009.

22. With the passage of time, and the fact that Lupton Associates has not interacted directly or indirectly with the Customer for at least 12 years, the sales resulting from orders

received and accepted by EMP as produced by Lupton Associates reflect products that have largely reached end-of-life, and are no longer being sold to the Customer. In their place, the vast majority of products currently being delivered to the Customer were sold by EMP without any assistance from Lupton Associates.

23. The parties orally, and through course of conduct, agreed to reduce the 5% commission to a 2.5% commission for any commissionable international sales.

### III.  FIRST CLAIM FOR RELIEF
### Breach of Contract - Against Lupton Associates

24. All of the previous allegations are incorporated as if fully set forth herein.

25. Lupton Associates has materially breached the Lupton Agreement by material nonperformance of its sales duties and services as set forth above and by providing sales services to a competitor.

26. Lupton Associates has failed to cure the breaches under the Lupton Agreement.

27. EMP has fully performed its obligations under the Lupton Agreement.

28. Lupton Associates' material breaches of the Lupton Agreement has caused damages and lost profits to EMP and has caused Lupton Associates to be overcompensated for services it failed to perform.

29. In addition to the breaches of the Lupton Agreement as set forth above, Lupton Associates has violated the covenant of good faith and fair dealing implicit in every contract in the state of Colorado. Lupton Associates has knowingly abandoned its obligation to use its best efforts to provide sales assistance, obtain quotes, and identify and present new customers and new work opportunities for EMP. Defendant Lupton Associates acted in a manner to deprive EMP of its

right to receive the sales assistance and services under their agreement and did not act in good faith.

### IV.   SECOND CLAIM FOR RELIEF
### Unjust Enrichment – Against Lupton Associates

30. All of the previous allegations are incorporated as if fully set forth herein.

31. Defendant Lupton Associates has been unjustly enriched and received the benefit at Plaintiff EMP's expense by the material nonperformance under the Lupton Agreement and failure to use its best efforts to provide sales services and assistance to EMP.

32. It would be unjust and inequitable to allow Defendant Lupton Associates to retain the monies paid by EMP or to pay future commissions which have not resulted from sale services and assistance of Lupton Associates.

### V.   THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty - Against Alan Lupton II

33. All of the previous allegations are incorporated as if fully set forth herein.

34. In 2021 a publicly traded company (due to confidentiality obligations, identified as the "Potential Buyer") executed a letter of intent with EMP for the purchase of all of the stock of EMP and subsequently the parties drafted a definitive purchase agreememt. During due diligence, the Potential Buyer determined the terms of the Lupton Agreement between EMP and Lupton Associates were onerous, contrary to customary market terms and unacceptable.

35. One of the Potential Buyer's conditions for the purchase of the stock of EMP was that the Lupton Agreement between EMP and Lupton Associates either be terminated or renegotiated. That condition was communicated to Alan Lupton II. To that end, the officers of

EMP attempted to renegotiate the terms of the Lupton Agreement with Alan Lupton II. Alan Lupton II refused to renegotiate the terms of the Lupton Agreement.

36. EMP is a closely held corporation. Seven of the eight shareholders of EMP voted in favor of the sale, however, Alan Lupton II never tendered his vote or otherwise confirmed his support of the sale. The Potential Buyer required the affirmative support of all the shareholders and, accordingly, the sale failed, and the transaction never occurred.

37. Plaintiffs David P. Morris and David J. Wolenski are shareholders of EMP and have been shareholders at all times relevant to this action.

38. At all times Alan Lupton II owed fiduciary duties to EMP and its shareholders.

39. All during the time of the negotiation with the Potential Buyer for the purchase of the stock of EMP, Alan Lupton II was an 8.9% shareholder of EMP. At the same time Alan Lupton II was a principal stockholder, officer, and director of Lupton Associates. In these positions he had a direct conflict of interest as a shareholder of EMP.

40. In failing to negotiate in good faith either a renegotiation or termination of the terms of the Lupton Agreement with EMP, he breached his fiduciary duties, including the duty to act in good faith and to deal fairly, to the other shareholders of EMP and to EMP.

41. As a direct and proximate result of his breach of fiduciary duties, Plaintiffs have incurred damages in an amount to be proven at trial.

## VI.   FOURTH CLAIM FOR RELIEF
### Breach of Duty of Loyalty - Against Alan Lupton II

42. All of the previous allegations are incorporated as if fully set forth herein.

43. At all times Alan Lupton II owed a duty of loyalty to EMP and its shareholders.

44. All during the time of the negotiation with the Potential Buyer for the purchase of the stock of EMP, Alan Lupton II was an 8.9% shareholder of EMP. At the same time Alan Lupton II was a principal stockholder, officer, and director of Lupton Associates. In these positions he had a direct conflict of interest as a shareholder of EMP.

45. In failing to negotiate in good faith, either a renegotiation or termination of the terms of the Lupton Agreement with EMP, he breached his duty of loyalty to the other shareholders of EMP and to EMP. Lupton breached his duty of loyalty by failing to place the success and interests of EMP above his own business and personal interests.

46. As a direct and proximate result of his breach of duty of loyalty Plaintiffs have incurred damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs pray this Honorable Court will enter judgment in their favor and against the Defendants on the claims set forth above, to award compensatory and consequential damages in an amount to be proven at trial, together with prejudgment and post judgment interest, attorney's fees and costs, and such other and further relief as the Court shall deem just and proper.

Respectfully submitted this 29th day of March, 2022.

**ROBINSON WATERS & O'DORISIO, P.C.**

*/s/Anthony L. Leffert*
Anthony L. Leffert, #12375
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
(303) 297-2750 (f)
aleffert@rwolaw.com
*Attorneys for Plaintiffs.*

Plaintiffs' Addresses:

Electro-Mechanical Products, Inc.
897 Tabor Street
Lakewood, CO, 80401

David P. Morris
2326 Cherry Street
Denver, CO, 80207

David J. Wolenski
5328 W. Burgundy Place
Littleton, CO, 80123

## Verification

STATE OF COLORADO    )
                                            )
COUNTY OF Jefferson  )

I, David J. Wolenski, verify that the foregoing is true and correct to the best of my knowledge and belief.

_____
Printed: David J. Wolenski, President
On behalf of Electro-Mechanical Products, Inc.

Christina Guida
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID# 20154033451
MY COMMISSION EXPIRES 08/24/2023

Acknowledged, subscribed, and sworn to before me this 28 day of March, 2022.

8/24/2023
My commission expires

_____
Notary Public Christina Guida