# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SKC

ELECTRO-MECHANICAL PRODUCTS, INC.,
a Colorado corporation, DAVID P. MORRIS, an
individual, and DAVID J. WOLENSKI, an individual,

        Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York
corporation, and ALAN LUPTON II, an individual.

        Defendants.

## SCHEDULING ORDER

**1.**     **DATE OF CONFERENCE AND APPEARANCES OF COUNSEL**

The Scheduling Conference is scheduled for July 6, 2022 at 11:00am. The following counsel will appear on behalf of the parties:

A.     Electro-Mechanical Products, Inc., David P. Morris and David J. Wolenski ("Plaintiffs")

    **ROBINSON WATERS & O'DORISIO, P.C.**
    Anthony L. Leffert, Esq.
    1099 18th Street, Suite 2600
    Denver, Colorado 80202
    (303) 297-2600
    aleffert@rwolaw.com

B.     Alan Lupton Associates Inc. and Alan Lupton II ("Defendants")

    **MOYE WHITE LLP**
    William F. Jones, Esq.
    Jennifer Knight Lang, Esq.
    16 Market Square, 6th Floor
    1400 16th Street

Denver, CO 80202-1486
Telephone: (303) 292-2900
billy.jones@moyewhite.com
jennifer.lang@moyewhite.com

## 2. STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction based on diversity jurisdiction as the matter in controversy exceeds $75,000 and the Plaintiffs include a Colorado corporation with its principal place of business located in Colorado, and two citizens of, and domiciled in, the state of Colorado, while the Defendants include a New York corporation and a citizen of, and domiciled in, the state of New York.

## 3. STATEMENT OF CLAIMS AND DEFENSES

*A. Plaintiffs' Statement:*

1. EMP is a leading manufacturer of precision machined components, thermal management solutions, and mechanical and electrical sub-assemblies used by technology–driven industries worldwide. For more than 50 years, EMP and its predecessors have provided innovative manufacturing solutions for the semiconductor, medical, laser, aerospace, commercial and hi–tech industries.

2. Lupton Associates provides engineered products to contract manufacturers. Lupton Associates also provides sales representative services.

3. Alan Lupton II is believed to be a shareholder and officer of Lupton Associates.

4. On November 1, 1989, EMP and Lupton Associates entered into a contract ("the Contract") whereby Lupton Associates agreed to provide its best efforts to promote, develop and extend the sales of EMP's services and products to original equipment manufacturers or other

contract manufacturers.  In exchange for Lupton Associates' services, the Parties agreed that EMP would pay Lupton Associates 5% of net sales resulting from orders received and accepted by EMP as produced by Lupton Associates.

5. On March 8, 2000, EMP and Lupton Associates executed an amendment ("the Amendment") to the Contract. The Amendment provides that Lupton Associates agreed to be the exclusive sales representative for the territory which includes the states of New York, Vermont, New Hampshire, Maine, Connecticut, Massachusetts, Rhode Island, Pennsylvania, New Jersey, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia, Colorado, and Wyoming.

6. Paragraph four of the Amendment provides as follows:

> "'Cause' for termination pursuant to Paragraph 8 of the Sales Agreement is defined as material breach of the Sales Agreement or material nonperformance under the Sales Agreement, in either case continuing more than 30 days after written notice specifying such cause and demanding its cure."

7. Paragraph 10 of the Amendment provides as follows:

> "All contrary provisions notwithstanding, the Sales Agreement may not be terminated by EMP (except for Cause), nor may EMP elect not to renew it under Paragraph 7 or 9 of the Sales Agreement, so long as Alan Lupton or any other shareholder in Lupton Associates or family member (meaning parent, grandparent, descendant, sibling or the spouse of Alan Lupton or any such person) thereof or employee of Lupton Associates owns stock in EMP."

8. Paragraph 13 of the Amendment provides that all other provisions of the Contract shall remain in full force and effect other than as set forth in the Amendment. Collectively, the Contract and the Amendment are the "Lupton Agreement."

9. Paragraph one of the Contract provides that in addition to Lupton Associates using its best efforts to promote, develop and extend the sales of EMP, it will not directly or indirectly

solicit orders for or sell any products competitive with EMP's products without EMP's written consent.  Contrary to this provision, Lupton Associates has marketed a company called PGM Corp. ("PGM"), located in Rochester, NY. PGM's website indicates that it is "a full-service precision manufacturing corporation specializing in precision CNC machining, turning, grinding and assembly." Upon information and belief, Lupton Associates is providing sales support and services for PGM, and PGM is a direct competitor with EMP. EMP has not consented to Lupton Associates' representation of PGM.

10. During the early years of the Contract, Lupton Associates provided adequate sales services and assistance to EMP and provided quotes for new customers to buy EMP's products.

11. In recent years, and in particular the last 2-3 years, Lupton Associates has significantly underperformed and not performed its sales services and assistance to EMP.  In a number of the defined territories for which Lupton Associates is to be the exclusive sales representative of EMP, there has been no contact, or virtually no contact, with the sales representative for that state and, further, no quotes, or virtually no quotes, generated from the vast majority of these territories.  Even when a sales representative was involved in the early sales process, their assistance substantially decreased or ceased over time.

12. One of the customers is located in the United States and in Mainland China, among other countries (due to confidentiality obligations, identified as the "Customer").  In or about 2008, conflicts and problems arose between Lupton Associates' sales representative Harlan (Rusty) Munn, the Customer and EMP regarding sales made to the Customer.  EMP requested that Mr. Munn no longer be the sales representative for the Customer because of the conflicts.  In or about 2009, he left the employment of Lupton Associates.  Lupton Associates did not provide an

acceptable proposal for the assignment of a new sales representative to promote the sales of EMP. By that time, the purchasing was sourced primarily in Mainland China, and Lupton Associates had no experience selling in Mainland China, and since then no sales representative has been assigned to promote the sales of EMP to this Customer. Lupton Associates has not assisted with quotes, sales, or servicing to this Customer since approximately 2009.

13. With the passage of time, and the fact that Lupton Associates has not interacted directly or indirectly with the Customer for at least 12 years, the sales resulting from orders received and accepted by EMP as produced by Lupton Associates reflect products that have largely reached end-of-life and are no longer being sold to the Customer. In their place, the vast majority of products currently being delivered to the Customer were sold by EMP without any assistance from Lupton Associates.

14. The parties orally, and through course of conduct, agreed to reduce the 5% commission to a 2.5% commission for any commissionable international sales.

15. EMP has served its notice of breach and demanded cure of Lupton Associates material nonperformance. Lupton Associates has not cured its breach of the contract.

16. In 2021, a publicly traded company (due to confidentiality obligations, identified as the "Potential Buyer") executed a letter of intent with EMP for the purchase of all the stock of EMP and subsequently the parties drafted a definitive purchase agreement. During due diligence, the Potential Buyer determined the terms of the Lupton Agreement between EMP and Lupton Associates were onerous, contrary to customary market terms and unacceptable. One of the Potential Buyer's conditions for the purchase of the stock of EMP was that the Lupton Agreement either be terminated or renegotiated. That condition was communicated to Alan Lupton II. To that

end, the officers of EMP attempted to renegotiate the terms of the Lupton Agreement. Alan Lupton refused to participate in any negotiations.

17. EMP is a closely held corporation. Seven of the eight shareholders of EMP voted in favor of the sale, however, Alan Lupton II never tendered his vote or otherwise confirmed his support of the sale. The Potential Buyer required the affirmative support of all the shareholders and, accordingly, the sale failed, and the transaction never occurred.

18. At all times Alan Lupton II owed fiduciary duties to EMP and its shareholders. In failing to participate in good faith either a renegotiation or termination of the terms of the Lupton Agreement with EMP, he breached his fiduciary duties, including the duty to act in good faith and to deal fairly, to the other shareholders of EMP and to EMP.

19. Plaintiff asserts claims for breach of contract and unjust enrichment against Lupton Associates and breaches of fiduciary duty and duty of loyalty against Alan Lupton individually.

20. Plaintiff and Third-Party Defendants deny Defendants' Counterclaims and deny that they are entitled to any relief or damages.

**B.     *Defendants' Statement:***

This case involves the attempts by the Plaintiffs EMP, Morris, and Wolenski to manufacture a contractual breach where none exists. The Plaintiffs' course of action and this lawsuit itself actually have nothing to do with the contract between EMP and Lupton Associates. Instead, EMP, Morris and Wolenski want to sell EMP's stock to a third-party buyer. While attempting to do so, EMP, Morris and Wolenski learned that EMP's clear contractual obligations to Lupton Associates created an obstacle to a sale at a price that Morris and Wolenski wanted. Having discovered that EMP's clear contractual obligations to Lupton Associates either

complicate or eliminate the possibility of the sale they desire, EMP, Morris and Wolenski decided to "fix" their problem by terminating the contract – irrespective of the fact that there was no basis to do so. This conduct runs contrary to EMP's clear contractual obligations, violates the duty of good faith and fair dealing and is otherwise wrongful. More importantly, the improper termination of the contract caused and continues to cause substantial monetary damages to Lupton Associates. Lupton Associates and Alan Lupton II deny that Plaintiffs are entitled to the relief requested. Lupton Associates asserts counterclaims against EMP for breach of contract for past and future commissions, breach of the implied covenant of good faith and fair dealing, and knowing failure to pay sales commissions in violation of New York Consolidated Laws, Labor Law - LAB § 191-a, *et seq*., and against Morris and Wolenski for intentional interference with contract and civil conspiracy.

## 4.   UNDISPUTED FACTS

A.   On November 1, 1989, EMP and Lupton Associates entered into a Contract.

B.   On March 8, 2020, EMP and Lupton Associates executed an Amendment to the Contract.

## 5.   COMPUTATION OF DAMAGES

*A. Plaintiffs:*

Plaintiffs seek damages for breach of contract and breaches of fiduciary duty. Plaintiffs are unable to calculate the full amount of their damages at this time.

*B. Defendants:*

Lupton Associates seeks damages for breach of contract for unpaid commissions and seeks double damages and attorney fees for violation of LAB § 191-a, *et seq*. The specific damages calculation cannot be ascertained at this time and may rely on expert testimony to establish.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

A. Date of Rule 26(f) meeting: <u>June 13, 2022.</u>

B. Names of each participant and each party represented: <u>Anthony L. Leffert representing the Plaintiffs. William F. Jones and Jennifer Knight Lang, representing Defendants.</u>

C. Statement as to when Rule 26(a)(1) disclosures were made or will be made: <u>All Parties will make their Rule 26(a)(1) disclosures within 30 days after the Parties' Rule 26(f) conference.</u>  **Parties shall exchange initial disclosures on or before July 27, 2022.**

D. Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1): <u>None at this time.</u>

E. Statement concerning any agreements to conduct informal discovery: <u>None</u>.

F. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system: <u>The Parties will endeavor to use a uniform numbering system to ensure that exhibit numbers are not repeated.</u>

G. Statement as to whether the Parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form: <u>The Parties believe that the claims and defenses will involve a moderate amount of electronically stored information. The Parties have taken the following steps with respect to such information:</u>

       The Parties have been advised by their respective counsel that they are to preserve and maintain any materials, including all documents and records in hard copy and electronic form, which in any way may be relevant or relate to the matters at issue in this lawsuit.

       The Parties will provide electronic versions of their discovery where feasible, each with an identifiable bates label.

       The Parties' counsel plan to engage in discussions in order to avoid discovery disputes relating to electronic discovery.

       The Parties plan to utilize their internal resources and services of their counsel to facilitate discovery of electronically stored information. The Parties plan to produce documents in readable electronic form to the extent possible to limit associated discovery costs.

H.    The Parties have discussed the possibility of an early resolution, however, all parties agree that it is very unlikely an early resolution can be reached. The Parties believe that it will be necessary to conduct discovery before any settlement discussions could take place.

### 7.    CONSENT

All parties <u>do not consent</u> to the exercise of jurisdiction of a magistrate judge.

### 8.    DISCOVERY LIMITATIONS

A.    Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules: <u>No modification</u>. **Each side may take 10 depositions and may serve 25 interrogatories including discreet subparts.**

B. Limitations which any party proposes on the length of depositions: No modification from Fed. R. Civ. P. 30(d)(1), which limits each deposition to one day of seven (7) hours.

C. Limitations which any party proposes on the number of requests for production and/or requests for admission: No modification. **Each side is limited to 25 requests for production and 25 requests for admission.**

D. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions: February 13, 2023.

E. Other Planning or Discovery Orders: None.

## 9. CASE PLAN AND SCHEDULE

A. Deadline for Joinder of Parties and Amendment of Pleadings: December 15, 2022.

B. Discovery Cut-Off:

   1. Close of Fact Discovery: March 15, 2023.

   2. Close of Expert Discovery: April 17, 2023.

C. Dispositive Motion Deadline: May 15, 2023.

   1. Oppositions to Dispositive Motion Deadline: May 31, 2023.

   2. Replies to Dispositive Motion Deadline: June 15, 2023.

D. Expert Witness Disclosure:

   1. The Parties shall identify anticipated fields of expert testimony, if any.

      a. Plaintiffs: Plaintiffs believe that they may be endorsing expert witnesses in the fields of forensic accounting and damages, fiduciary duties and outside sales services, and any experts required to rebut Defendants' experts.

    b. <u>Defendants</u>:  Defendants anticipate endorsing the following expert witnesses: a forensic accountant and damages expert, an industry expert regarding sales contracts and commissions, and any experts required to rebut Plaintiffs' experts.

 2. Limitations that the Parties propose on the use or number of expert witnesses: <u>Maximum three per side.</u>

 3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: <u>December 1, 2022.</u>

 4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:  <u>February 7, 2023.</u>

 5. **Deadline for filing Rule 702 Motions challenging experts: March 9, 2023**

E. Identification of Persons to be Deposed:

 1. <u>Plaintiffs' Identification:</u> The Plaintiffs will seek to conduct the depositions of Alan Lupton, II, certain Lupton Associates sales representatives to be identified, certain EMP customers to be identified, and Steven Bronson.

 2. <u>Defendants' Identification</u>:  David P. Morris, David J. Wolenski, representatives of EMP, accounting personnel of EMP, represetatives of Interlink.

### 10. <u>DATES FOR FURTHER CONFERENCE</u>

A. **Joint Status Report shall be filed no later than September 29, 2022.  Counsel shall refer to this Court's practice standards for specifics.**

B.  A final pretrial conference will be held in this case on **August 2, 2022 at 10:00 a.m.** A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

A.  Identify those discovery or other scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agrement:  None.

B.  Anticipated length of trial to the Court: Seven (7) days.

C.  Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301: None.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

All parties <u>have not</u> consented to the exercise of jurisdiciton of a magistrate judge.

DATED at Denver, Colorado, this 6th day of July, 2022.

BY THE COURT:

*s/ S. Kato Crews*

APPROVED:
**ROBINSON WATERS & O'DORISIO, P.C.**

*/s/ Anthony L. Leffert*
Anthony L. Leffert, #12375
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
aleffert@rwolaw.com

**MOYE WHITE LLP**

*/s/ William F. Jones*
William F. Jones, #35294
Jennifer Knight Lang, #50034
16 Market Square, 6th Floor
1400 16th Street
Denver, CO 80202-1486
Telephone: (303) 292-2900
billy.jones@moyewhite.com
jennifer.lang@moyewhite.com