IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00763-PAB-SKC

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado corporation,
DAVID P. MORRIS, an individual, and
DAVID J. WOLENSKI, an individual,

      Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation, and
ALAN LUPTON II, an individual,

      Defendants.

---

**ORDER**

---

This matter comes before the Court on defendant Alan Lupton II's Motion to

Dismiss and Memorandum in Support Thereof [Docket No. 17].  Defendant Alan Lupton

II seeks an order dismissing plaintiffs' third and fourth causes of action for failure to

state a claim upon which relief can be granted and for lack of standing.  *See generally*

Docket No. 17.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND[1]**

Plaintiffs' third and fourth causes of action arise from Mr. Lupton's failure to

approve the sale of Electro-Mechanical Products, Inc.'s ("EMP") stock to an interested

buyer.  Docket No. 7 at 7-9, ¶¶ 33-46.  EMP is a closely-held corporation, of which Mr.

---

[1] The facts below are taken from plaintiffs' amended complaint, Docket No. 7, and are
presumed to be true, unless otherwise noted, for purposes of ruling on defendant's
motion to dismiss.

Lupton was an 8.9% shareholder at the time of the potential sale.  *Id.* at 8, ¶¶ 36, 39.
Mr. Lupton is a principal shareholder, officer, and director of Lupton Associates, Inc.
("Lupton Associates").  *Id.*, ¶ 39.  On November 1, 1989, EMP and Lupton Associates
entered into a contract whereby Lupton Associates agreed to provide its best efforts to
promote, develop, and extend the sales of EMP's services and products to original
equipment manufacturers or other contract manufacturers.  *Id.* at 3, ¶ 11.  In exchange
for Lupton Associates' services, the parties agreed that EMP would pay Lupton
Associates 5% of net sales resulting from orders received and accepted by EMP as
produced by Lupton Associates.  *Id.*  On March 8, 2000, EMP and Lupton Associates
amended the contract.  *Id.* at 3-4, ¶ 13.  The amendment provided that "the Sales
Agreement may not be terminated by EMP (except for Cause), nor may EMP elect not
to renew . . . so long as Alan Lupton or any other shareholder in Lupton Associates or
family member . . . thereof or employee of Lupton Associates owns stock in EMP."  *Id.*
at 4, ¶ 15.  The Court will refer to the contract between EMP and Lupton Associates and
the amendment to the contract collectively as the "Lupton Agreement."

In 2021, a publicly traded company ("Potential Buyer") executed a letter of intent
with EMP for the purchase of all of EMP's stock.  *Id.* at 7, ¶ 34.  One of Potential Buyer's
conditions for the purchase was the termination or renegotiation of the Lupton
Agreement.  *Id.* at 8, ¶ 35.  Mr. Lupton refused to renegotiate the terms of the Lupton
Agreement.  *Id.*  Potential Buyer also required the "affirmative support" of all of EMP's
shareholders to execute the sale.  *Id.*, ¶ 36.  Although seven of EMP's eight
shareholders voted in favor of the sale, Mr. Lupton never tendered his vote or otherwise
confirmed his support of the sale.  *Id.*  Accordingly, the sale failed.  *Id.*

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Id.* at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alterations omitted).

## III.  ANALYSIS

Plaintiffs bring two claims against Mr. Lupton: breach of fiduciary duty and breach of the duty of loyalty. Docket No. 7 at 7-9, ¶¶ 33-46. Plaintiffs allege that Mr. Lupton breached his duties to EMP and EMP's other shareholders by failing to renegotiate the Lupton Agreement and by failing to vote in favor of the sale of EMP to Potential Buyer. Docket No. 21 at 8.

Mr. Lupton argues that plaintiffs' claims against him should be dismissed because he did not owe fiduciary duties to EMP or its other shareholders. Docket No. 17 at 3-6. To prove a breach of fiduciary duty,[2] a plaintiff must demonstrate that (1)

---

[2] Plaintiffs' theory supporting their claim for breach of the duty of loyalty is that Mr. Lupton, by virtue of his position as a shareholder, had a duty to renegotiate the terms of the Lupton Agreement. Docket No. 7 at 9, ¶ 45. Plaintiffs' claim for breach of fiduciary duties rests on the same theory. *Compare id. with id.* at 8, ¶ 40. Because plaintiffs allege that both the duty of loyalty and fiduciary duties arise from the same

defendant owed plaintiff fiduciary duties, (2) defendant breached those duties, and (3) damages resulted from the breach.  *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1080 (D. Colo. 1997) (applying Colorado law).

Plaintiffs claim that EMP is a closely held corporation.  Docket No. 7 at 8, ¶ 36. Furthermore, the parties agree that Mr. Lupton was a minority stockholder of EMP, owing 8.9% of the company's shares.  *Id.*, ¶ 39; Docket No. 17 at 5.  Plaintiffs believe that they have sufficiently pled that Mr. Lupton owed EMP and EMP's other shareholders fiduciary duties because, "[i]n closely held corporations, shareholders owe each other fiduciary duties akin to the fiduciary duties in partnerships."  Docket No. 21 at 4.  Plaintiffs cite *River Mgmt. Corp. v. Lodge Properties Inc.,* 829 P.2d 398 (Colo. App. 1991), for the proposition that shareholders in a closely held corporation owe each other fiduciary duties regardless of whether they are controlling or minority shareholders. Docket No. 21 at 4-5.  The shareholders' agreement in *River Mgmt.* specified that it was governed under New York law, which is the law that the Colorado Court of Appeals quotes for the proposition that the relationship between shareholders is akin to that between partners in a close corporation.  *River Mgmt.*, 829 P.2d at 401.  *River Mgmt.* is therefore not controlling authority for a partner-like duty applying to minority shareholders because plaintiffs and Mr. Lupton agree that Colorado law applies to the relationship between EMP's shareholders.  *See Grynberg v. Total S.A.,* 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

---

circumstances, the Court will address the duty of loyalty through its discussion of whether Mr. Lupton had any fiduciary duties to EMP or the other shareholders.

Plaintiffs also cite *Combs v. PriceWaterhouse Coopers LLP,* 382 F.3d 1196 (10th Cir. 2004), a case addressing, among other issues, whether a minority shareholder in a closely held corporation had individual standing to sue.  Docket No. 21 at 4.  In *Combs,* the Tenth Circuit declined to grant the stockholder-plaintiff individual standing to sue, but noted that Colorado courts had imposed partnership-like fiduciary duties on shareholders in some cases concerning closely held corporations.  382 F. 3d at 1202 (citing *Van Schaack Holdings v. Van Schaack,* 867 P.2d 892, 897 (Colo. 1994) ("it is widely recognized that the fiduciary duty imposed on corporate directors and officers dealing with minority shareholders is enhanced in the context of closed corporations."); *Pueblo Bancorporation v. Lindoe, Inc.,* 37 P.3d 492, 499 (Colo. App. 2001), *aff'd* 63 P.3d 353 (Colo. 2003) ("In a closely held corporation, the relationship between directors and shareholders is treated like a relationship between partners."); and *Colt v. Mt. Princeton Trout Club, Inc.,* 78 P.3d 1115, 1119 (Colo. App. 2003) (same)).  However, the cases cited by the Tenth Circuit discuss the duties imposed on corporate directors and controlling shareholders in their dealings with minority shareholders, and do not shed light on whether, under Colorado law, minority shareholders owe fiduciary duties in return.

Colorado caselaw is clear that corporate directors and majority shareholders of close corporations owe fiduciary duties to minority shareholders.  *See, e.g., Van Schaack,* 867 P.2d at 897 (holding that corporate directors and officers of close corporations owe minority shareholders heightened fiduciary duties); *Pueblo Bancorporation*, 37 P.3d at 499 (holding that corporate directors "owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith,

5

and cannot use their power to harm the other shareholders") (citation omitted); *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002) (holding that corporate directors and controlling shareholders have a fiduciary duty to remaining shareholders); *Polk v. Hegert Land & Cattle Co.,* 5 P.3d 402, 405 (Colo. App. 2000) ("The officers, directors, and controlling shareholders of a corporation have a fiduciary duty to act in good faith and in a manner they reasonably believe to be in the best interests of the corporation and all of its shareholders.") (citing *Michaelson v. Michaelson*, 939 P.2d 835 (Colo. 1997)).

However, plaintiffs concede that "no Colorado case [has] directly involved a question of whether minority shareholders in a closely held corporation owe fiduciary duties."  Docket No. 21 at 4.  Mr. Lupton argues that Colorado state court precedent does not require the Court to conclude that minority shareholders owe fiduciary duties because "[t]he basis for finding such a duty on the part of a shareholder in a closely held corporation is its ability, by virtue of actual control of corporate processes, to make decisions that are oppressive to the minority shareholders' interests."  Docket No 17 at 4.  Mr. Lupton's position finds support in Colorado caselaw.  *See, e.g., Colt,* 78 P.3d at 1119 (holding that a controlling shareholder's actions that were illegal, oppressive, and fraudulent also constituted a breach of his fiduciary duties to the minority shareholders); *Polk,* 5 P.3d at 404-05 ("In the context of a close corporation, oppressive conduct of those in control is closely related to breach of the fiduciary duty owed to minority shareholders.") (citation omitted); *see also Van Schaack,* 867 P.2d at 897 (holding that corporate directors owe minority shareholders heightened fiduciary duties in order to

equalize the minority shareholders' bargaining position and permit minority shareholders to exercise informed judgment) (citations omitted).

A case from the North Carolina Supreme Court analyzes many of the issues involved in this case. In *Corwin v. British Am. Tobacco PLC*, 821 S.E.2d 729 (N.C. 2018), Reynolds American, Inc. ("Reynolds"), the second largest tobacco company in the United States at the time, purchased Lorillard, Inc., the third largest tobacco company at the time*. Id.* at 732. The board of directors of Reynolds unanimously approved the transaction. *Id.* at 733. British American Tobacco PLC ("BAT") owned 42% of the stock of Reynolds. *Id*. at 731. Robert Corwin, a minority stockholder in Reynolds, filed suit against BAT, Reynolds, and a group of Reynolds' directors alleging, among other things, that BAT, although not a majority stockholder of Reynolds, was a controlling shareholder of Reynolds and, as a result, owed fiduciary duties to plaintiff. *Id.* at 733. Plaintiff alleged that BAT's control over Reynolds allowed BAT to negotiate benefits for itself that were not shared with other Reynolds stockholders. *Id*. Reviewing the adequacy of plaintiff's allegations on a motion to dismiss, the court held that, because BAT was not a majority or controlling shareholder, it did not owe fiduciary duties to the other shareholders. *Id.* at 743.

In reaching its conclusion, the court noted that, under North Carolina law, it is "the fact of control of the common property held and exercised . . . that creates the fiduciary obligation on the part of the majority stockholders in a corporation for the minority holders." *Id*. at 737 (quoting *Gaines v. Long Mfg. Co.*, 67 S.E.2d 350, 353 (N.C. 1951)). Although the court had never held that a minority shareholder owed fiduciary duties to other stockholders, the court noted that it had also never held that a

minority stockholder cannot owe fiduciary duties to other stockholders.  *Id*.  The court

then considered Delaware law.  *Id.*  In Delaware, a minority stockholder can owe

fiduciary duties to other stockholders, but only if the minority stockholder is a

"controlling" stockholder by virtue of it exercising "domination . . . through actual control

of corporate conduct."  *Id*. (citing *In re Morton's Rest. Grp., Inc. Shareholder Litig*., 74

A.3d 656, 664 (Del. Ch. 2013)).  "This inquiry focuses on actual control over *the board*

*of directors*."  *Id*.  Under Delaware law, an allegation that a minority shareholder merely

possessed power or had leverage over the board of directors is insufficient.  *Id*.  at 738

(citing *In re Sea-Land Corp. Shareholder Litig*., 1988 WL 49126, at *3 (Del. Ch. May 13,

1988)).  Moreover, in terms of adequate allegations of control, the court noted that,

under Delaware law, "[u]nexercised contractual rights alone, such as board veto power,

do not equate to actual control over the board."  *Id*. (citing *Williamson v. Cox Commc'ns,*

*Inc*., 2006 WL 1586375, at *5 (Del. Ch. June 5, 2006)).  "Merely being able to stop a

transaction does not give a minority stockholder the same level of power that a majority

stockholder would have, because a majority stockholder would have the power both to

stop a transaction *and to make it happen*."  *Id.* at 740 (citing *Gaines*, 67 S.E.2d at 353).

"Even a stockholder who exercises its contractual rights to further its own goals 'is

simply exercising [its] own property rights, not that of others, and is no fiduciary.'"  *Id*. at

738 (quoting *Thermopylae Cap. Partners, L.P. v. Simbol, Inc*., 2016 WL 368170, at *14

(Del. Ch. Jan. 29, 2016)).

The *Corwin* court determined that, "[e]ven if we agreed with Delaware courts that

a minority stockholder may owe fiduciary duties to other stockholders based on its

exercising actual control over the board of directors, the complaint in this case would

still fail to state a claim upon which relief can be granted because the Complaint does not adequately allege that BAT exercised actual control over the Reynolds board." *Id*. at 737.  Thus, the court held that, "[b]ecause BAT was not a majority or controlling stockholder, it did not owe fiduciary duties to the other Reynolds stockholders." *Id*. at 743.

As in *Corwin*, the Court does not need to predict that the Colorado Supreme Court would adopt the position of Delaware courts that, under certain circumstances, a minority shareholder owes fiduciary duties to other shareholders.  Rather, it is sufficient for the Court to predict that the Colorado Supreme Court would not find that a minority shareholder who did not exercise control over the corporation and who is alleged to have acted in his own contractual interests to the detriment of other shareholders owed fiduciary duties to other shareholders.

Here, the complaint does not allege that Mr. Lupton, despite his minority shareholder status, had the ability to control corporate processes and thereby control the corporation.  To the contrary, the complaint's allegations indicate that Mr. Lupton was only able to prevent the sale to Potential Buyer because of a condition imposed by Potential Buyer, not because of a right given to him by the corporation.  Moreover, the fact that Mr. Lupton was the principal stockholder, officer, and director of Lupton Associates did not create a fiduciary duty, or a conflict of interest, requiring Mr. Lupton to renegotiate the terms of the Lupton Agreement or vote in favor of the sale.  The allegations of the complaint simply state that Mr. Lupton acted in his economic or contractual self-interest when he refused to approve the sale.  However, he had no fiduciary duty to act against his economic self-interest given that there are no

allegations that he controlled the board of directors, assuming that EMP had one, or controlled the other shareholders such that he could direct the business of the corporation.  As a result, the Court agrees with Mr. Lupton that the third and fourth claims fail to state a claim against him.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that defendant Alan Lupton II's Motion to Dismiss [Docket No. 17] is **GRANTED.**  It is further

**ORDERED** that plaintiffs' third and fourth claims, asserted against Mr. Lupton, are **DISMISSED with prejudice**.  It is further

**ORDERED** that defendant Alan Lupton II is dismissed from the case.


DATED March 23, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge