**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00763-PAB-SKC

ELECTRO-MECHANICAL PRODUCTS, INC.,
a Colorado corporation, DAVID P. MORRIS, an
individual, and DAVID J. WOLENSKI, an individual,

     Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York
corporation, and ALAN LUPTON II, an individual.

     Defendants.

**PLAINTIFFS' MOTION TO IMPOSE CONTEMPT SANCTIONS AGAINST THIRD-PARTY VIASAT SERVICES HOLDING CO.**

Plaintiffs Electro-Mechanical Products, Inc., David P. Morris, and David J. Wolenski ("EMP"), by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., submit the within Motion to Impose Contempt Sanctions Against Third-Party Viasat Services Holding Co. and in support thereof state as follows:

**CERTIFICATE OF CONFERRAL**

The undersigned certifies that Plaintiffs' counsel, Carl A. Hjort, III, conferred with counsel for Viasat Services Holding Co. ("Viasat"), Patrick Fitch, via telephone on April 14, 2023 regarding the relief sought in this Motion. Counsel for Viasat indicated that he would respond with his client's position relative to answering the subpoena by the close of business on Thursday April 20, 2023, but no response has been received as of the filing of this motion. Prior to this telephone

1

call, Anthony L. Leffert exchanged numerous emails with Mr. Fitch attempting to get Viasat to comply with its obligation to produce the documents requested in the subpoena.

I.   **Introduction**

On March 31, 2023, EMP served a Subpoena to Produce Documents ("the Subpoena") on Viasat. Viasat has produced nothing in response to this Subpoena and has indicated, through counsel, that it does not intend to produce any of the requested information. The Court should impose contempt sanctions on Viasat for its willful disregard of a proper subpoena.

This case involves claims for breach of contract between EMP and Alan Lupton Associates Inc. ("Lupton Associates"). One of the terms of this contract states "[Lupton Associates] shall not directly or indirectly solicit orders for or sell any products competitive with [EMP's] products without its written consent." EMP has learned, recently during discovery, that Lupton Associates has been soliciting orders for and selling parts to a competitor of EMP and believes the parts could be made by EMP. Specifically, Lupton Associates has been selling what EMP believes to be parts from a manufacturer named PGM Corp. ("PGM") to Viasat. EMP's Subpoena to Viasat requested "[d]ocuments and records reflecting Viasat's purchase of any parts or assemblies from any manufacturer represented by Alan Lupton Associates, Inc., including what parts and assemblies were purchased and the sales price for the purchase" and "[d]ocuments and records reflecting Viasat's purchase of any parts or assemblies purchased from PGM Corp., including what parts and assemblies were purchased and the sales price for the purchase."

While EMP has obtained some limited information on the relevant sales from PGM for the period 2020-21, what is particularly needed from Viasat are the engineering drawings of the parts that were made for Viasat by PGM since 2016. These drawings would, by common industry

2

practice, be part of any request for quotation, revision change/change order or purchase order for these parts. These Viasat drawings are vital to EMP's case because a review of these drawings will determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's products. For the avoidance of doubt, the engineering drawings being requested are those drawings prepared by Viasat that are inclusive of all requisite detail required for a contract manufacturer to produce the part, and containing all part dimensions, raw material selections, feature tolerances, GD&T callouts, post-processing requirements (e.g., plating, brazing, grinding, painting, heat treating, etc.), and design notes, etc.

The sales figures are also an element of EMP's damages on its claim of breach of contract. Additionally, EMP seeks purchase records from Viasat for all the Lupton Associates-brokered purchases Viasat has made to identify any other manufacturers Lupton Associates has represented to Viasat and confirm the sales numbers of such products for the past three years.

In response to the Subpoena, Viasat contends that they have given Lupton Associates permission to produce documents responsive to the Subpoena to EMP, and that discharges their obligation under the Subpoena. Lupton Associates, for its part, refuses to produce any drawings or documents that would identify the parts sold to Viasat, claiming they do not have any drawings. EMP now moves the Court for contempt sanctions to compel Viasat to produce the requested purchase data including the drawings.

## II.     Factual Background

In December of 1989, EMP and Lupton Associates entered into a sales agreement, wherein Lupton Associates agreed to use its best efforts to sell EMP's products. This agreement also requires that "[Lupton Associates] shall not directly or indirectly solicit orders for or sell any

products competitive with [EMP's] products without its written consent." *See* ECF Doc. #2-2, p.1 ¶ 1. By March of 2022, EMP had discovered that Lupton Associates was representing Rochester-based PGM Corp., a precision machining company that makes products competitive to EMP's products. *See* ECF Doc. #2-2, p. 2.

Through discovery, EMP has learned that one of the customers PGM has supplied parts to, through representation by Lupton Associates, is Viasat. On March 31, 2023,[1] EMP served its Subpoena on Viasat to produce "[d]ocuments and records reflecting Viasat's purchase of any parts or assemblies from any manufacturer represented by Alan Lupton Associates, Inc., including what parts and assemblies were purchased and the sales price for the purchase." *See* Exhibit 1 – the Subpoena. From the outset, Viasat has resisted responding to the Subpoena, claiming that their compliance would be unduly burdensome because the requested documents could be obtained from Lupton Associates and that the admissibility of Viasat's documents might be in doubt. *See* Exhibit 2 - Emails from Viasat Counsel. Further, Viasat has claimed that they authorized Lupton Associates to produce the requested documents to EMP, but Lupton Associates has repeatedly refused, claiming that they do not have such documents. Counsel for EMP have made numerous requests to counsel for Viasat to provide these drawings and the Lupton Associates-brokered sales data but have received absolutely no cooperation from Viasat.

### III.     Legal Standard

"The power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). "Civil contempts provide a remedy for a party who has

---

[1] EMP first served this Subpoena on March 14, 2023, at Viasat's offices but Viasat resisted on the grounds that EMP had not served its statutory agent with that first subpoena. EMP subsequently re-served the Subpoena on Viasat's registered agent on March 31, 2023.

been injured by the violation of a court order." *Hyde Constr. Co. v. Koehring Co.*, 388 F.2d 501, 511 (10th Cir. 1968). Liability for civil contempt must be proven by clear and convincing evidence. *F.T.C. v. Kuykendall*, 371 F.3d 745, 756 (10th Cir. 2004). Specifically, the party seeking contempt must prove "(1) that a valid court order existed, (2) that the defendant[s] had knowledge of the order, and (3) that the defendant[s] disobeyed the order." *Id.* at 756-57 (citation omitted). Civil contempt proceedings need not occur in an "independent civil action" and "may proceed in a 'more summary fashion.'" *Id.* at 756 (citation omitted).

"Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: '(1) to compel or coerce obedience to a court order ...; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance.'" *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (citation omitted). "Where the purpose of the sanction is 'coercive,' the court must consider 'the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Id.* (citation omitted). "[I]f a fine is imposed for compensatory purposes, the amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy." *Id.* (citation omitted).

**IV.    Argument**

It is unquestionable that the elements of contempt have been shown in this case. A valid court order, in the form of the Subpoena, exists. The Subpoena has been correctly served on Viasat's registered agent, and Viasat has never claimed that the Subpoena was improperly issued. Viasat is well-aware of the Subpoena and has been aware of it for over a month now. Counsel for EMP have pressed counsel for Viasat, both over email and over the phone, numerous times to

5

comply with the Subpoena, and yet Viasat has repeatedly resisted providing documents in response to the Subpoena thereby willfully disobeying this Court's subpoena powers.

Viasat's only response to this Subpoena has been that it is unduly burdensome, and to claim that EMP should obtain these documents from Lupton Associates. This argument is incorrect for several reasons. First, Lupton Associates has refused to produce any of these documents, and it is unknown if Lupton Associates actually has these documents to produce. Viasat unquestionably has these documents which describe parts they themselves designed and have purchased from Lupton Associates-represented manufacturer PGM. Second, the documents requested in the Subpoena are narrowly tailored, and not overly broad. From the documents received from PGM[2], EMP believes that the scope of the products purchased from PGM amount to approximately thirty-five (35) different parts or assemblies (as determined from a 2020-21 disclosure by PGM; other years may contain additional part numbers). Producing drawings of these thirty-five products, drawings which Viasat would have created, and unquestionably has, is not an overly burdensome exercise. This production will not be thousands of pages long. Moreover, EMP has already agreed to treat these documents as confidential pursuant to the Protective Order entered in this case. Further, there is no competitive advantage to be gained by EMP in viewing these drawings, because they are custom-made products for Viasat, and they have no other use.

Viasat's production of purchase data from other Lupton Associates-brokered manufacturers is similarly not overly burdensome. EMP identified one company, C&M Manufacturing Co., that it specifically believes may have supplied parts to Viasat through a Lupton

---

[2] The documents received from PGM are not sufficient to allow EMP to determine whether the Viasat parts could be made by EMP. The PGM documents merely list a part number and a very brief description of each product, and it is impossible to tell with particularity what the described product is. A review of the drawing for each product would reveal whether the subject products are in fact "competitive" with EMP's products.

Associates-brokered deal, and assuming the volumes of those transactions are similar to the ones associated with PGM, the amount of data would be relatively small and easy to produce. To the extent there are other Lupton Associates-brokered manufacturers providing parts to Viasat, EMP believes that producing the purchase documentation will consist of searching Viasat's computerized records. Counsel for Viasat has never articulated a reason that producing these documents would be a particular challenge for Viasat.

EMP has expended a significant amount of time and resources in trying to gain compliance with the Subpoena from Viasat. Even though this Court could award to EMP a fine commensurate with EMP's actual damages in connection with compelling compliance with the Subpoena, EMP at this time will be satisfied with coerced obedience with the Subpoena, and the prompt production of the documents requested. In view of the analysis above, Viasat is unquestionably in contempt for refusing to respond to the Subpoena, and its arguments that responding to the Subpoena would be unduly burdensome are baseless. For these reasons, the Court should compel Viasat's immediate compliance with the Subpoena.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court GRANT this motion to impose contempt sanctions against Viasat Services Holding Co.

Respectfully submitted this 24th day of April, 2023.

**ROBINSON WATERS & O'DORISIO, P.C.**

*/s/ Anthony L. Leffert*
Anthony L. Leffert, #12375
Carl A. Hjort III, #42108
aleffert@rwolaw.com
chjort@rwolaw.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April 2023 a true and correct copy of the foregoing was delivered via CM/ECF electronic service and/or email addressed to the following:

**MOYE WHITE, LLP**
William F. Jones, #35294
Jennifer Knight Lang, #50034
Patrick R. Akers, #54803
16 Market Square, 6th Floor
1400 16th Street
Denver, CO 80202-1486
billy.jones@moyewhite.com
jennifer.lang@moyewhite.com
patrick.akers@moyewhite.com
*Attorneys for Defendants*

**SHERIDAN ROSS PC**
Patrick A. Fitch
1560 Broadway, Suite 1200
Denver, Colorado 80202-5145
pfitch@sheridanross.com
*Attorneys for Viasat Services Holding Co.*

*/s/ Nina Olson*
Nina Olson, Paralegal