IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SKC

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado corporation,
DAVID P. MORRIS, an individual, and
DAVID J. WOLENSKI, an individual,

      Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation, and
ALAN LUPTON II, an individual,

      Defendants.

## JOINT SUBMISSION ON DISCOVERY DISPUTE

Pursuant to the applicable practice standards, the parties herein Plaintiff Electro-Mechanical Products, Inc. ("EMP") and Defendant Alan Lupton Associates, Inc. ("Lupton") submit the following brief statement of positions in anticipation of the arguments regarding the same on Monday, May 1, 2023 at 9:30 a.m.

### Discovery Request and Response

17. Produce, in native form, whether written or electronic including any attachments, all copies of all communications, requests for quotes and invoices regarding sales made to Viasat by C&M Precision Tech and PGM Corp.

**RESPONSE: Lupton objects to RFP No. 17 on the grounds that Lupton is subject to confidentiality and non-disclosure obligations under an agreement with Viasat. Lupton will alert Viasat to this request pursuant to its agreement and legal obligations.**

**Plaintiff EMP's Statement of Position**

This discovery dispute is over the production of engineered drawings of the parts which Lupton has brokered for sale between PGM and Viasat and the sales price related to these parts. These drawings would be included in the quote for these parts because the drawings are necessary for the manufacturer, PGM, to determine what is being made and how to price it. Thus, these drawings are clearly within the scope of RFP 17. EMP has attempted to get these drawings from both Lupton and Viasat, but both have pointed the finger at each other and said that the other party should produce them. Viasat has refused to produce any documents from a subpoena sent to them and has stated that Lupton has all the responsive documents, and therefore it would be unduly burdensome for Viasat to produce these documents. Lupton claims that they do not have these drawings. The parties have conferred by email, over the phone and in person numerous times, but there is an impasse as to the production of these drawings.

The drawings are essential to EMP's case because they will reveal whether the parts that Lupton brokers from PGM to Viasat are "competitive" with EMP's products. It is a breach of the contract between EMP and Lupton for Lupton to broker competitive parts from manufacturers other than EMP. Lupton alleges that drawings are not relevant to this competitiveness question, because a twenty-three year old contract amendment defines competitiveness, but EMP contends that he parties course of dealing over the past twenty-three years shows that a part which EMP can produce is to be considered competitive. The only way EMP can determine if the PGM parts are competitive is to see the drawings for these parts and compare them to EMP's manufacturing capabilities.

Lupton further argues that since EMP has not produced a final damages calculation, EMP

should not receive these drawings. This fails to account for the fact that EMP requires these drawings to classify the parts as competitive or non-competitive and thereby finalize the damages calculation based on the sales price for theses parts. Lupton cannot argue that EMP should present damages calculations and then withhold the documents necessary to make those calculations. Issues of the confidentiality and non-disclosure agreements between Lupton and Viasat are irrelevant to this dispute, because EMP will treat the drawings as confidential pursuant to the Protective Order in this case and because these parts are Viasat specific parts, there is no competitive advantage to gained by EMP in seeing these drawings.

To the extent the Court wishes to discuss the potential quashing of the subpoena to Viasat, EMP's position is that Lupton lacks standing to quash that subpoena. Further, the subpoena was timely because the discovery cutoff is only applicable between the parties, and subpoenas on non-parties can be served after the discovery cutoff.

### **Defendant Lupton's Statement of Position**

Lupton is a party to a confidentiality and non-disclosure agreement with ViaSat. Lupton notified ViaSat of this request for production on multiple occasions. After providing the response to RFP 17 listed above, there were multiple conversations and conferrals by and between counsel for EMP and counsel for Lupton, in person, on the phone, and over email, about the specific documents sought by EMP under this particular Request.

In conversations with counsel for ViaSat and with counsel for Plaintiff Electro-Mechanical Products Inc. ("EMP"), all parties understood that EMP sought sales figures for sales from PGM, another third-party, to ViaSat, and ViaSat agreed to allow Lupton to disclose those sales amounts. Pursuant to that consent from ViaSat, Lupton supplemented its response to

**Error! Unknown document property name.**           3

provide the sales numbers that were requested by producing a spreadsheet marked ALA_ 103583-103618.

In subsequent communications, counsel for Lupton later understood from counsel for EMP that EMP wanted Lupton to produce the engineering drawings for all products manufactured by PGM for ViaSat. Lupton does not have these engineering drawings, and thus Lupton cannot produce them. The work that PGM does for ViaSat is subject to ITAR security protocols such that these drawings are not available for Lupton to produce. In multiple conferrals, this was the only documentation the EMP said it wanted in response to this Request, and counsel for Lupton informed counsel for EMP that Lupton did not have these items to produce.

EMP's actions also appear to dovetail with the contempt motion now filed by EMP against ViaSat on its subpoena. This subpoena should be quashed on multiple grounds. First, it was untimely, issued the day before discovery closed, served weeks after discovery closed with a response date a month after discovery closed. Second, it is immaterial and irrelevant. Under the applicable contract's definition of "competitive," the only relevant inquiry is the nature of PGM's business, not any product made for ViaSat or any other end user. Third, EMP has no damages in this case. EMP disclosed no damages, produced no calculation, designated no expert or provided no information for contract damages during the entirety of discovery. It is improper and prejudicial to allow EMP to concoct damages where none exist after discovery has already closed.

DATED: April 28, 2023

| | |
|---|---|
| **MOYE WHITE LLP** | **ROBINSON WATERS & O'DORISIO, P.C.** |
| */s/ William F. Jones* | */s/ Anthony L. Leffert* |
| William F. Jones, #35294 | Anthony L. Leffert, #12375 |
| Jennifer Knight Lang, #50034 | Carl A. Hjort III, #42108 |
| Patrick R. Akers, #54803 | 1099 18th Street, Suite 2600 |
| 16 Market Square, 6th Floor | Denver, CO 80202 |
| 1400 16th Street | (303) 297-2600 |
| Denver, CO 80202-1486 | aleffert@rwolaw.com |
| Telephone: (303) 292-2900 | chjort@rwolaw.com |
| billy.jones@moyewhite.com | |
| jennifer.lang@moyewhite.com | |
| patrick.akers@moyewhite.com | |