**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00763-PAB-SKC

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado corporation,
DAVID P. MORRIS, an individual, and
DAVID J. WOLENSKI, an individual,

      Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation, and
ALAN LUPTON II, an individual,

      Defendants.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      Alan Lupton Associates Inc. ("**ALA**"), by and through undersigned counsel, moves (the "**Motion**") for summary judgment on Electro-Mechanical Products, Inc.'s ("**EMP**") two remaining claims for breach of contract and unjust enrichment, and states as follows:

### CERTIFICATE OF CONFERRAL

      Pursuant to D.C.Colo.L.CivR 7.1, ALA's counsel conferred with EMP's counsel, and EMP opposes the relief requested herein.

### INTRODUCTION

      Despite engaging in extensive discovery over the life of this fourteen-month-old case, EMP still cannot establish its contract claims against ALA. EMP cannot show that ALA breached the contract's best efforts clause or noncompete clause, or that it is entitled to any damages. EMP has no evidence showing that ALA did not use best efforts, as measured by its own capabilities (as required under New York law), and not some "most exceptional efforts" standard or a "scorecard"

unilaterally conjured up by EMP thirty-two years after the parties executed the contract. Nor can EMP show that the alleged competitors are, in fact, competitors. Additionally, EMP has not—and cannot—describe or compute its alleged damages to this day. Even if EMP disclosed its forward-looking damages, any damages calculation would necessarily require expert testimony, which EMP has failed to obtain.

EMP cannot prove its case, and based on its eleventh-hour attempt to reopen discovery to obtain information "to calculate its damages in this case" and to "determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's parts," EMP acknowledges that it has no evidence to prevail on its remaining claims. Accordingly, the Court should grant summary judgment in favor of ALA on the last two remaining claims for breach of contract (Count I) and, because its claims are premised on an express contract, unjust enrichment (Count II).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.      Parties and the Contract.

1.      EMP is a general machine shop that sells production machine parts to customers. *See* Contract, <u>Exhibit A</u> at 3; Lupton Deposition Transcript Excerpts, <u>Exhibit B</u> at 15:18–17:6.

2.      EMP is owned by a number of shareholders, including David Morris (42%), who is EMP's president; David Wolenski (23%), who is EMP's vice president; and Alan Lupton (9%), who owns ALA. *See* Ex. B at 25:19–23; Morris Deposition Transcript Excerpts, <u>Exhibit C</u> at 151:9–11; Wolenski Deposition Transcript Excerpts, <u>Exhibit D</u> at 36:21–24.

3.      ALA acted as EMP's exclusive sales representative in certain territories for over thirty years, and performed its services out of New York. *See* Ex. A at 1, 4–5; Ex. B at 171:8–11, 172:14–17.

4.      The parties' relationship is governed by that certain Contract dated November 1, 1989 between EMP and ALA (as amended, the "**Contract**"). *See generally* Ex. A.

5.      The Contract contains two clauses relevant to this action—the best efforts clause and noncompete clause:

> Second party [ALA] to use its best efforts to promote, develop and extend the sales of the first party's [EMP] services and products during the contract term or any extension, and in furtherance thereof, shall not directly or indirectly solicit orders for or sell any products competitive with the first party's products without its written consent.

Ex. A at 1, § 1.

6.      The best efforts clause contains no objective criteria or guidelines to assess ALA's best efforts. *See generally id.*

7.      The noncompete clause was amended in 2000 to define "competitive" as "the products of a general-purpose production machining job shop." *Id.* at 5, § 2.

## II.     EMP and ALA's Relationship Sours.

8.      Around August 4, 2021, an outside entity, Interlink Electronics, Inc. ("**Interlink**"), sought to purchase EMP. *See* Ex. C at 163:5–21.

9.      Pursuant to the Interlink deal, EMP had to renegotiate or terminate the Contract. *See* Ex. D at 126:3–9.

10.     EMP and ALA did not reach a resolution on amending the Contract, and the Interlink deal did not come to fruition. *See* EMP Shareholder Letter, <u>Exhibit E</u>.

11.     Shortly thereafter, EMP purported to terminate the Contract for cause, maintaining that ALA breached the Contract's best efforts clause and noncompete clause. *See* Cure Letter, Exhibit F at 1–2; Termination Letter, Exhibit G at 1.

**A.     EMP claims ALA did not use best efforts, as measured by a "scorecard" unilaterally created by EMP.**

12.     EMP acknowledges that the Contract's best efforts clause does not contain objective criteria or guidelines to measure best efforts. *See* Ex. C at 7:14–8:3, 23:24–24:16, 89:14–21, 109:11–14, 111:12–112:5, 198:22–13, 202:13–17.

13.     Around 2021, EMP unilaterally created a "scorecard" to measure ALA's performance. *See* Ex. B at 117:18–20; Ex. D at 84:7–13, 85:7–9, 89:23–90:2.

14.     The scorecard examined ALA's sales, win rates (i.e., "how many parts did [EMP] quote versus how many [EMP] want[ed]"), and contacts. *See* Ex. C at 80:17–81:10, 103:25–4.

15.     These metrics are not identified in the Contract. *See id.* at 82:23–83:6.

16.     ALA had no control over win rates. *See id.* at 87:21–88:5 ("Q: So all you did was like, We gave a quote and then we counted how many quotes we got, we won on? A: Correct. Q: And the determination as to whether or not you did or didn't get your quote was entirely dependent on what EMP chose to quote for the job? A: Correct.").

17.     EMP did not establish a threshold to measure whether ALA's win rates satisfied best efforts. *See id.* at 83:25–84:9 ("Q: What is the win rate percentage that you believe constitutes best efforts versus not best efforts? A: I don't know. Q: Okay. How close or far away was the win rate Lupton had from the win rate that you subjectively believed constituted appropriate best efforts? A: Something above one percent."); *see also id.* at 96:17–24.

18.     ALA did not agree to use the scorecard to measure best efforts. *See id.* at 83:21–24, 84:12–23, 90:6–91:2.

19.     EMP and ALA did not amend the Contract to incorporate the scorecard. *See id.* at 83:17–20, 135:7–18; Ex. D at 88:24–89:10, 90:24–91:5, 202:25–203:6.

20.     EMP terminated the Contract, in part, because ALA did not use best efforts, as measured by the scorecards. *See* Ex. F at 1; Ex. G at 1.

**B.      EMP claims that ALA breached the Contract's noncompete clause.**

21.     EMP alleges that ALA breached the noncompete clause by soliciting or selling the products of its competitors, PGM Corp. ("**PGM**") and C&M Machine Products, Inc. ("**C&M**"),[1] to Viasat, Inc. ("**Viasat**") and MKS Instruments Inc. ("**MKS**"), respectively. *See* Ex. C at 13:13–15:6; Ex. F at 2.

22.     EMP has maintained that PGM is a competitor since, at least, March 23, 2022. *See* Ex. F at 2.

23.     EMP has maintained that C&M is a competitor since, at least, January 18, 2023. *See* Ex. C at 13:13–15:6.

24.     EMP has identified no other competitors other than PGM and C&M. *See* Ex. D at 183:9–184:13.

---

[1] EMP sought, but has yet to obtain, leave to amend its complaint to add allegations that ALA breached the Contract by selling C&M's products to MKS. *See* Proposed Second Am. Verified Compl., Feb. 2, 2023, ECF No. 37-2; Docket. These allegations were not in the Amended Complaint. *See generally* Am. Compl. ALA opposed such relief as futile, because EMP failed to provide written notice and a thirty-day cure period of the alleged breach, as required under the Contract. *See* Resp. Opp'n Pls.' Mot. Leave File Second Am. Verified Compl. 2–3, Feb. 23, 2023, ECF No. 40 (citing Ex. A at 5–6, § 4).

25.     EMP has not identified any specific product that is allegedly competitive. *See* Ex. C at 11:20–23, 14:18–15:2.

26.     PGM is not a general-purpose production machining job shop. *See* Hockenberger Deposition Transcript Excerpts, Exhibit H at 52:13–15 ("Q: Am I correct that PGM is not a general-purpose production machining job shop? A: Correct."); September 26, 2012 PGM Emails, Exhibit I at 1 (Viasat rejecting EMP's products and characterizing EMP's work as "high school machine shop" quality).

27.     EMP cannot state whether C&M is a general-purpose production machining job shop. *See* Ex. D at 186:7–10.

28.     EMP terminated the Contract, in part, because ALA solicited and sold PGM's allegedly competitive products. *See* Ex. F at 2; Ex. G at 1.

**III.     EMP's Failure to Calculate Damages.**

29.     EMP asserts two claims against ALA in this action: (1) breach of the Contract's best efforts clause and noncompete clause, and (2) unjust enrichment. *See* First Am. Verified Compl. ("**Am. Compl.**") 6–7, Apr. 18, 2023, ECF No. 7.

30.     As a result of the alleged breaches, ALA "caused [compensatory and consequential] damages and lost profits to EMP and has caused [ALA] to be overcompensated for services it failed to perform." *Id.* at 6, 9.

31.     On July 6, 2022, Plaintiffs claimed it was "unable to calculate the full amount of their damages at this time." Scheduling Order, July 6, 2022, ECF No. 29.

32.     In its July 27, 2022 *Initial Disclosures Pursuant to F.R.C.P. 26(a)(1)*, EMP describes and computes its damages as follows: "Plaintiffs' investigation of their damages is not

yet complete and at this time Plaintiffs are unable to determine the full amount of their damages." Akers Declaration, <u>Exhibit J</u> at ¶ 4, Ex. J-1 at 15.

33.     To date, EMP never supplemented its initial disclosures to identify or calculate its alleged damages. *See id.* ¶ 5; *see generally* Ex. J-1.

34.     EMP also did not identify or calculate its alleged damages in connection with written discovery responses. *See generally id.* ¶ 6, Ex. J-2.

35.     Neither Mr. Morris nor Mr. Wolenski could identify EMP's alleged damages during their depositions. *See* Ex. C at 138:7–11 ("Q: You mentioned also damages. What damages, if any, can you identify for me that EMP has suffered from it terminating Lupton's contract? A: I don't know."); Ex. D at 144:6–145:5 ("Q: Can you identify for me, by category or amount, damages that you or Mr. Morris, if you're aware, or EMP are seeking against Mr. Lupton or his company? A: Not at this time. . . . Q: What other categories, outside of that one,[2] are you aware of that would be included in damages that you'd be seeking in damages against Mr. Lupton or his company? A: I don't presently know. And we'll wait to see how discovery plays out, or we go between now and trial.").

36.     Although EMP "believe[d] that [it] may be endorsing [an] expert witness in the field[] of forensic accounting and damages," EMP only retained two expert witnesses: (1) Joseph V. Gregory, an affirmative expert witness retained to determine whether ALA used its best efforts[3]; and (2) Gary M. Schwartz, a rebuttal expert witness retained to rebut the opinions of ALA's

---

[2] Mr. Wolenski identifies a category of damages related to EBITDA. *See* Ex. D at 144:11–22. However, this category relates to claims against Mr. Lupton, individually, which the Court dismissed on March 23, 2023. *See* Order, Mar. 23, 2023, ECF No. 42.

[3] ALA has moved to exclude Mr. Gregory's testimony in its entirety. *See* Mot. Exclude Expert Test. Gregory, Apr. 28, 2023, ECF No. 50.

forensic accountant, who opined on improperly withheld commissions owed to ALA. *See* Scheduling Order 10; *see* Gregory Report, <u>Exhibit K</u> at 1[4]; Schwartz Report, <u>Exhibit L</u> at 3–4; *see also* Gregory Deposition Transcript Excerpts, <u>Exhibit M</u> at 10:1–10, 26:6–11 (applying standard of best efforts that is of the "highest degree possible").

37.    Neither Mr. Gregory nor Mr. Schwartz offered an opinion on EMP's alleged damages. *See generally* Exs. K, L.

38.    To date, and well past the March 15, 2023 fact discovery cutoff deadline, EMP still cannot identify or calculate its damages:

> In order to calculate its damages in this case, EMP requires sales data and drawings of the parts that were made for Viasat by PGM, and the parts C&M made for MKS. The drawings are vital to EMP's case because a review of these drawings will determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's parts. Additionally, EMP seeks purchase records from Viasat for all the Lupton Associates-brokered purchases Viasat has made to identify any other manufacturers Lupton Associates has represented to Viasat and confirm the sales numbers provided by PGM.

Pls.' Mot. Reopen Disc. 3, May 11, 2023, ECF No. 58; Scheduling Order 10.

## LAW AND ARGUMENT

### I.    Standard of Review

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the

---

[4] Exhibit K does not contain Attachments 1–3, which have no bearing on this Motion.

nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* A movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). The nonmovant must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his or her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## II.   ALA Is Entitled to Summary Judgment on EMP's Breach of Contract Claim (Count I).

### A.   EMP cannot establish that ALA breached the Contract.

EMP maintains that ALA breached the Contract's best efforts clause and noncompete clause. *See* Am. Compl. ¶ 25. However, EMP has no evidence showing ALA breached either of these clauses.

9

      **1.**      **EMP cannot show that ALA breached the best efforts clause.**

ALA's best efforts are measured against its own capabilities, and not some "most exceptional efforts" standard or some standard unilaterally created by EMP thirty-two years after the parties executed the Contract. Because the only best-efforts-related evidence proffered by EMP goes to these inapplicable standards, EMP cannot prove that ALA breached the best efforts clause.

It is well-settled that the terms of a contract define a party's best efforts. "Under New York law, 'when called upon to construe a clause in a contract expressly providing that a party is to apply his best efforts, a clear set of guidelines against which to measure a party's best efforts is essential to the enforcement of such a clause.'" *Pure Power Boot Cap, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 516 (S.D.N.Y. 2011) (quoting *Mocca Lounge, Inc. v. Misak*, 462 N.Y.S.2d 704, 706–07 (App. Div. 1983)).

Where no clear set of guidelines exist, best efforts is measured against the party's own capabilities and prior sales and marketing of other similar products. *See Bloor v. Falstaff Brewing Corp.*, 454 F. Supp. 258, 266–67 (S.D.N.Y. 1978) ("It is obvious that any determination of the best efforts achievable by Falstaff must take into account Falstaff's abilities and the opportunities which it created or faced; Falstaff did not contract to promote Ballantine at the level or degree that Anheuser-Busch or Schlitz might have done. It did, however, contract to merchandise Ballantine products in good faith and to the extent of its own total capabilities . . . ."), *aff'd*, 601 F.2d 609 (2d Cir. 1979); *see also Holland Loader Co. v. FLSmidth A/S*, 313 F. Supp. 3d 447, 470–71 (S.D.N.Y. 2018) ("New York case law suggest[s] that a 'best efforts' clause imposes an obligation to act with good faith in light of one's own capabilities . . . ."); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS)(THK), 2011 U.S. Dist. LEXIS 105320, at *6 (S.D.N.Y. Sept. 15, 2011)

("Courts generally interpret a 'best efforts' to require the promisor to 'act with good faith in light of one's own capabilities.'" (citation omitted)).

"A court must interpret and give effect to an express best efforts clause just as it would any other contractual provision," which is to "ascertain the intention of the parties at the time they entered into the contract." *Maestro v. Chelsea SPE LLC v. Pradera Realty Inc.*, 954 N.Y.S.2d 819, 825 (Sup. Ct. 2012) (quoting *Evans v. Famous Music Corp.*, 807 N.E.2d 869, 458 (N.Y. 2004)). A trier of fact may not incorporate a post-hoc standard, as this would "impermissibly make a new contract for the parties rather than to enforce a bargain the parties themselves had reached." *Pure Power Boot Camp*, 813 F. Supp. 2d at 516 (quoting *Mocca Lounge*, 462 N.Y.S.2d at 707); *see also Luitpold Pharms., Inc. v. ED. Geistlich Sohne A.G. Fur Chemische Industrie*, No. No. 11-cv-681 (KBF), 2015 U.S. Dist. LEXIS 123591, at *20 (S.D.N.Y. Sept. 16, 2015).

Here, the sole provision relating to the best efforts clause is found in the original 1989 Contract: "Second party [ALA] to use its best efforts to promote, develop and extend the sales of the first party's [EMP] services and products during the contract term or any extension." Ex. A, § 1. The Contract contains no objective criteria or guidelines by which the parties would assess ALA's best efforts. *See generally id.* EMP does not dispute this fact. *See, e.g.*, Ex. C at 109:11–14, 111:12–112:5. Because the Contract contains no objective criteria or guidelines, ALA's best efforts are judged by its own capabilities. *Bloor*, 454 F. Supp. at 266–67. EMP has no evidence showing that ALA failed to use best efforts, as judged by its own capabilities. *Id.* All of EMP's best-efforts-related evidence concern two legal theories that have no applicability to this analysis.

First, EMP improperly states that ALA's best efforts is judged by comparing its performance to metrics on a certain "scorecard." The parties agree that the Contract does not

contain objective criteria or guidelines. *See, e.g.*, Ex. C at 109:11–14, 111:12–112:5. However, EMP purports to measure ALA's best efforts using a scorecard it unilaterally created and subjectively applied in 2021, thirty-two years after the parties first executed the Contract. *See* Ex. B at 117:18–20; Ex. C at 83:25–84:9, 96:17–24; Ex. D at 84:7–13, 85:7–9; 89:23–90:2. The scorecards were not socialized or approved by ALA, nor were they incorporated in any Contract amendment. *See* Ex. C at 83:17–24, 84:12–23, 90:6–91:2, 135:7–18; Ex. D at 88:24–89:10, 90:24–91:5, 202:25–203:6.[5] As a result of ALA allegedly failing to meet EMP's subjective standards, EMP claims that ALA did not use best efforts, and terminated the Contract for cause. *See* Ex. F at 1–2; Ex. G at 1. However, the scorecards have no bearing on ALA's best efforts. "A court must interpret and give effect to an express best efforts clause just as it would any other contractual provision," which is to "ascertain the intention of the parties ***at the time they entered into the contract***." *Maestro*, 954 N.Y.S.2d at 825 (emphasis added). At the time the parties executed the Contract, the scorecards did not exist. *Compare* Ex. A at 1 *with* Ex. D at 84:7–13, 85:7–9, 89:23–90:2. EMP is effectively trying to rewrite the terms of the contract by unilaterally defining a contract term post hoc. *See* Ex. C at 198:22–199:13; *see also Lawrence M. Kamhi, M.D., P.C. v. E. Coast Pain Mgmt., P.C.*, 112 N.Y.S.3d 189, 191 (App. Div. 2019) (describing as "[f]undamental" the principle that one party cannot alter the terms of contract without "mutual assent"). Because ALA's best efforts are measured by its own capabilities, EMP cannot use the scorecards to establish breach of the Contract's best efforts clause.

Second, EMP seeks to establish that ALA breached the best efforts clause by way of Mr. George's expert testimony. However, Mr. George applied a heightened standards that has no

---

[5] Notably, the parties defined a number of Contract terms in 2000. *See* Ex. A at 5–6.

relation to the Contract. Rather than assess ALA's best efforts based on its "own capabilities," as required under New York law, EMP seeks to introduce expert testimony to establish that best efforts means "most exceptional efforts." *See Holland Loader*, 313 F. Supp. 3d at 471; Ex. M at 10:1–10; *id.* at 26:6–11 (applying standard of best efforts that is of the "highest degree possible"). Mr. George's testimony has no bearing on the best efforts issue. Even if EMP's expert had applied an ***objective*** standard of best efforts, as opposed to some ***golden*** standard for best efforts (i.e., "most exceptional efforts"), EMP still could not establish that ALA breached the best efforts clause, because the benchmark by which to assess ALA's best efforts is its own capabilities. *See Bloor*, 454 F. Supp. at 266–67. Accordingly, Mr. George's testimony does not evidence that ALA failed to use best efforts.

EMP relies exclusively on the scorecards and Mr. George's expert testimony to establish that ALA breached the Contract's best efforts clause. Because this evidence does not inform whether ALA used its best efforts, as assessed by its own capabilities, EMP cannot establish that ALA breached the best efforts clause.

### 2. EMP cannot show that ALA breached the noncompete clause.

Under the Contract, ALA "shall not directly or indirectly solicit orders for or sell any products ***competitive*** with the first party's products without its written consent." Ex. A at 1, § 1 (emphasis added). The parties defined "competitive" as "products of a general-purpose production machining job shop." *Id.* at 5, § 2.

EMP maintains that ALA breached the noncompete clause because ALA solicited or sold the products of competitors PGM and C&M to Viasat and MKS, respectively. Ex. C at 13:13–

15:6; Ex. F; *see also* Am. Compl. ¶¶ 18–19. Aside from PGM and C&M, EMP identified no other competitors. *See* Ex. D at 183:9–184:13.

EMP cannot prove that ALA breached the noncompete clause by soliciting or selling PGM's and C&M's products, because EMP has no evidence that PGM or C&M are "general-purpose production machining job shop[s]." Ex. A at 5, § 2. PGM has stated it is not a "general-purpose production machining job shop," and Viasat rejected EMP's products, characterizing EMP's work as "high school machine shop" quality. *See* Ex. H at 52:13–15; Ex. I at 1. Moreover, EMP cannot state whether C&M is an actual competitor. *See* Ex. D at 186:7–10. Even assuming PGM and C&M were competitors, which they are not, EMP has no evidence identifying which specific products were competitive or whether those products were "products of a general-purpose production machining job shop."[6] Ex. C at 11:20–23, 14:18–15:2; Pls.' Mot. Reopen Disc. 3 (acknowledging EMP cannot identify any alleged competitive products, seeking to reopen discovery to obtain "drawings of the parts that were made for Viasat by PGM, and the parts C&M made for MKS"). Because EMP has no evidence establishing that ALA solicited or sold the products of PGM, C&M, or any other competitor, the Court should grant summary judgment on EMP's breach of contract claim related to the noncompete clause.

---

[6] Because the Contract defined "competitive" by the competitor, and not the product, ALA maintains the noncompete inquiry turns on whether the alleged competitor is a "general-purpose production machining job shop." *See* Ex. A at 5, § 2. For this reason (in addition to others), ALA moved to quash EMP's subpoena to Viasat. *See* Mot. Quash Pl.'s Subpoena Third Party Viasat 4–5, Apr. 28, 2023, ECF No. 48.

**B.** **EMP has failed to identify and cannot establish damages under the Contract.**

    **1.** **The Court should preclude EMP from presenting evidence on damages, because EMP has failed to disclose its alleged damages.**

EMP's failure to disclose damages at the summary judgment stage is fatal. "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1); *see Smith v. Aurora Pub. Sch.*, 318 F.R.D. 429, 432 (D. Colo. 2016) (imposing Rule 37(c) sanctions where "summary judgment proceedings forced counsel to finally focus on the merits of the case and prompted further investigation" that resulted in untimely disclosure of witnesses); *Stevens v. Novartis Pharms. Corp.*, No. 12-1414-EFM, 2013 U.S. Dist. LEXIS 190959, at *7–8 (D. Kan. May 29, 2013) (finding plaintiff failed to disclose damages under Rule 26(a), and stating that, absent providing defendant with supporting documents, plaintiff "risk[ed] being precluded by Rule 37(c) from presenting at trial or on summary judgment any evidence related to his damages allegedly arising from Zometa® infusions").

Here, EMP has never disclosed its alleged damages at any point in this action. EMP could not describe or compute its alleged damages in its initial disclosures, which EMP has not supplemented to date. *See* Ex. J ¶¶ 4–5, Ex. J-1. Nor has EMP identified any of its alleged damages in connection with written discovery responses. *See id.* ¶ 6, K-2. EMP's two principals could not identify any alleged damages at their depositions. *See* Ex. C at 138:7–11; Ex. D at 144:6–10, 144:23–145:5. And although EMP contemplated obtaining an expert in the field of forensic accounting and damages, EMP obtained no such expert to opine on damages. *See* Scheduling

Order 10; *see generally* Exs. K, L. At this juncture, EMP admits that it has no alleged damages to disclose, seeking leave to reopen discovery to obtain "sales data and drawing on the parties that were made for Viasat by PGM, and the parts C&M made for KMS" so that EMP can "calculate its damages in this case." Pls.' Mot. Reopen Disc. 3.

Because EMP has failed to disclose its alleged damages throughout the entirety of this fourteen-month-old case, the Court should preclude EMP from presenting evidence of damages at this stage. *See* Docket. Without evidence of its compensatory and consequential damages, EMP cannot maintain a breach of contract claim. Accordingly, the Court should grant summary judgment in ALA's favor.

### 2.    Even if EMP identified its alleged damages, EMP has no evidence to support damages.

EMP has no evidence establishing any entitlement to damages. Although it is unclear what damages EMP seeks, EMP alleges that ALA "has caused [1] [compensatory and consequential] damages and lost profits to EMP and has caused [2] Lupton Associates to be overcompensated for services it failed to perform." Am. Compl. 6, 9. Stated differently, EMP appears to seek damages for business losses and to recoup overpayments made to ALA under the Contract. EMP can establish neither of these damages.

### a.    EMP cannot establish damages for business losses, nor could it do so without expert testimony.

EMP has no evidence supporting damages for business losses. EMP seeks damages based on the theory that, had ALA exerted more effort (i.e., not breached the best efforts clause) or presented the sales opportunities that ALA allegedly gave to EMP's competitors (i.e., not breached

the noncompete clause), EMP would not have suffered damages. *See* Am. Compl. 6–7, 9; *see also* Ex. F at 1–2; Ex. G at 1. This argument fails for two reasons.

First, EMP has not established—and cannot establish—a damages amount related to business losses. EMP has no evidence showing that ALA's efforts would have generated more sales opportunities, that EMP could act on those opportunities, and that the potential unknown customers would have actually selected EMP for those opportunities; even then, EMP cannot establish that any additional revenue would not be subsumed by additional expenses. *See* Ex. C at 129:24–130:9 (recognizing that certain opportunities would require EMP to "make significant capital expenditures"); Ex. D at 10:11–22 (acknowledging that customers can ask EMP to "deploy significant capital to expanding [its] production"); *id.* at 220:8–221:5 (noting opportunity to engage in joint venture with existing customer, but stating opportunity untenable because EMP doesn't "have the capital"). EMP has no evidence establishing a dollar amount on these speculative damages.

Second, even if EMP could articulate an actual dollar amount, EMP has failed to designate an expert witness to establish that ALA's acts or omissions caused the EMP's alleged business losses. To determine whether expert testimony is required to prove causation or damages, a court "engages in a 'common-sense inquiry into whether a juror would be able to understand certain evidence without specialized knowledge.'" *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, No. 17-cv-00029-STV, 2019 U.S. Dist. LEXIS 99867, at *21–22 (D. Colo. June 12, 2019) (quoting *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014)); *see also RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-01301-PAB-GPG, 2020 U.S. Dist. LEXIS 189842, at *21 (D. Colo. Oct. 13, 2020). Here, expert testimony is needed to demonstrate how

ALA's acts and omissions caused EMP's alleged damages, and EMP has failed to designate a retained or non-retained expert witness.

To establish damages, EMP must show that ALA's acts or omissions are what caused the long chain of events that resulted in EMP's alleged damages. This is not a case where EMP can establish each link in the chain of events by reference to specific documents. *See, e.g.*, *Ins. Co. of Greater N.Y. v. Fire Fighter Sales & Serv. Co.*, 120 F. Supp. 3d 449, 461 (W.D. Pa. 2015) (stating expert testimony unnecessary where plaintiff could use "documentation of repair costs, estimates, expenses, and any other relevant evidence"). EMP must prove, at a minimum, that ***unknown*** potential customers would have actually selected EMP for sales opportunities, and that EMP had the ***future*** ability (*i.e.*, assets, labor, capital, etc.) to take on those opportunities. *See* Ex. C at 129:24–130:9; Ex. D at 10:11–22, 220:8–221:5. Absent expert testimony, EMP's alleged damages cannot be reasonably calculated and are speculative. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-01301-PAB-GPG, 2021 U.S. Dist. LEXIS 179461, at *34 (D. Colo. Oct. 13, 2020) (granting summary judgment on breach of fiduciary duty claim, because plaintiffs could not establish defendants caused damages beyond "mere possibility and speculation"); *see also Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 340–41 (10th Cir. 2020) (affirming district court and holding that business owners could not establish lost profits without expert testimony). EMP's failure to designate an expert witness to establish damages is fatal to its breach of contract claim. *See Preventive Energy Sols., LLC v. nCap Ventures 5, LLC*, 2019 U.S. Dist. LEXIS 111922, at *6 (D. Utah July 3, 2019) (stating summary judgment appropriate where court found that expert testimony required, but no expert had been designated (citing *Harvey v. United States*, 685 F.3d 939, 950–51 (10th Cir. 2012))).

**b.      EMP cannot show that ALA was overcompensated for services it failed to perform.**

Under the Contract, EMP was required to pay ALA a percentage of net sales resulting from orders received and accepted by EMP from customers in ALA's exclusive territory (excluding certain house accounts). *See* Ex. A at 1, 3–8. Although the Contract required ALA to use best efforts to identify potential customers, once EMP received and accepted orders from those customers, the Contract imposed no other condition precedent to EMP paying the sales commissions. *See id.*; *see also* Ex. C at 63:9–12. Therefore, EMP cannot recoup any sales commissions from ALA for alleged "services it failed to perform." Am. Compl. 6. Even if EMP could, EMP has no evidence showing that it overpaid ALA for the services ALA provided.

Because EMP cannot establish any entitlement to damages from ALA, the Court should dismiss EMP's breach of contract claim.

**C.      EMP Cannot Prevail on Its Unjust Enrichment Claim (Count II).**

EMP's unjust enrichment claim must be dismissed because the claim arises from ALA's alleged breach of the Contract. The doctrine of unjust enrichment invokes an "obligation imposed by equity to prevent injustice, in *the absence of an actual agreement between the parties concerned*." *IDT Corp. v Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (emphasis added). "Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *Id.*; *see also Goldman v Metropolitan Life Ins.*, 841 N.E.2d 742, 746 (N.Y. 2005). Only where the contract does not cover the dispute in issue may a plaintiff proceed upon a quasi-contract theory of unjust enrichment. *IIG Capital LLC v Archipelago, L.L.C.*, 36 A.D.3d 401, 405 (N.Y. App. Div. 2007); *see Cox v NAP Constr. Co.*, 891 N.E.2d 271, 278

(N.Y. 2008) ("[A] party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter.").

Here, it is undisputed that the parties entered into a valid and enforceable contract. Moreover, it is clear from the allegations in the operative pleading that EMP's unjust enrichment claim arises from ALA's alleged breach of the Contract. EMP alleges "Defendant Lupton Associates has been unjustly enriched and received the benefit at Plaintiff EMP's expense ***by the material nonperformance under the Lupton Agreement*** and failure to use its best efforts to provide sales services and assistance to EMP." Am. Compl. ¶ 31 (emphasis added). Because EMP's unjust enrichment claim is premised on the Contract, EMP cannot recover on a quasi-contract theory. Accordingly, the Court should grant summary judgment on EMP's unjust enrichment claim in favor of ALA.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion, and grant summary judgment on EMP's claims for breach of contract (Count I) and unjust enrichment (Count II).

Dated: May 15, 2023

*/s/ Patrick R. Akers*
William F. Jones (35294)
Jennifer Knight Lang (50034)
Patrick R. Akers (54803)
Moye White LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202
(303) 292-2900
(303) 292-4510 (facsimile)
billy.jones@moyewhite.com
jennifer.lang@moyewhite.com
patrick.akers@moyewhite.com

*Attorneys for Alan Lupton Associates Inc.*

20

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 15, 2023, a copy of the foregoing *Defendant's Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Patrick R. Akers*
Patrick R. Akers (54803)

*Attorney for Alan Lupton Associates Inc.*