# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC.,
DAVID P. MORRIS, and
DAVID J. WOLENSKI,

      Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC.,

      Defendant.

---

## ORDER ON PLAINTIFFS' MOTIONS TO COMPEL SUBPOENAS TO NON-PARTIES VIASAT SERVICES HOLDING COMPANY AND PGM CORP., RESETTING FINAL PRETRIAL CONFERENCE AND SETTING OTHER DEADLINES

---

This matter is before this court on the motions of Plaintiffs Electro-Mechanical Products, Inc., David P. Morris, and David J. Wolenski (collectively referred to as "EMP" or Plaintiffs) to compel their subpoenas respectively to non-parties ViaSat Services Holding Company ("ViaSat") (ECF No. 44) and PGM Corp. (ECF No. 94). Both motions are opposed and fully briefed. The undersigned Magistrate Judge considers the motions pursuant to 28 U.S.C. § 636(b)(1)(A) and the Memoranda dated April 28, 2023, and August 11, 2023. ECF Nos. 49, 95. *See also* Order Referring Case, ECF No. 14. As follows, the court grants in part and denies in part each of the motions.

## BACKGROUND

As the court recently noted in its order entered on July 28, 2023, (ECF No. 93, "July 28

Order"), EMP filed this diversity action on March 28, 2022. ECF No. 2. The case arises from a written contract for sales and marketing services between EMP and Defendant Alan Lupton Associates ("ALA"), dating from 1989 and as amended in March 2000. ECF No. 84-1 (referred to hereafter as the "Amended Contract," attached to the second amended complaint, "SAC"). EMP alleges ALA breached the Amended Contract by marketing products for two competitors of EMP, PGM Corp. ("PGM") and C&M Machine Products, Inc. t/a C&M Precision Tech ("C&M Precision"). SAC ¶¶ 17, 18. EMP sues ALA for breach of contract and unjust enrichment.[1]

### I.    EMP's Subpoena to ViaSat

On March 20 and 31, 2023, EMP served ViaSat a subpoena duces tecum. ECF No. 44-1 (the "ViaSat Subpoena").[2] The ViaSat Subpoena requests three categories of documents:

1. Documents and records reflecting ViaSat's purchase of any parts or assemblies from any manufacturer represented by Alan Lupton Associates, Inc., including what parts and assemblies were purchased and the sales price for the purchase.
2. Documents and records reflecting ViaSat's purchase of any parts or assemblies purchased from PGM Corp., including what parts and assemblies were purchased and the sales price for the purchase.
3. Documents and records reflecting ViaSat's purchase of any parts or assemblies purchased from C & M Manufacturing Company, including what parts and assemblies were purchased and the sales price for the purchase.

ViaSat Subpoena at 4. EMP asserts that it conferred with ViaSat several times, and although

---

[1] Plaintiffs' claims against Mr. Alan Lupton have been dismissed with prejudice. ECF No. 42. Thus, ALA is the only remaining Defendant.

[2] As will be discussed further below, while EMP's complaint identifies the ALA customer as ViaSat, Inc., EMP issued the Subpoena to ViaSat Services Holding Company. This order refers to the latter as "ViaSat," and the former as "ViaSat, Inc."

ViaSat authorized others (ALA, for one) to produce ViaSat sales information, it ultimately objected to producing any documents itself in part because the discovery cutoff had passed.

On April 24, 2023, EMP filed its motion to compel the ViaSat Subpoena. ECF No. 44. This motion originally sought contempt sanctions against ViaSat, but the July 28 Order denies sanctions and deems the motion as one to compel. July 28 Order at 16. In the motion, EMP argues that ViaSat's engineering drawings:

> [a]re vital to EMP's case because a review of these drawings will determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's products. For the avoidance of doubt, the engineering drawings being requested are those drawings being prepared by ViaSat that are inclusive of all requisite detail required for a contract manufacturer to produce the part, and containing all part dimensions, raw material selections, feature tolerances, GD&T callouts, post-processing requirements (e.g., plating, brazing, grinding, painting, heat treating, etc.), and design notes, etc.

ECF No. 44 at 3. EMP also argues that the requested sales information is:

> an element of EMP's damages on its claim of breach of contract. Additionally, EMP seeks purchase records from ViaSat for all the Lupton Associates-brokered purchases ViaSat has made to identify any other manufacturers Lupton Associates has represented to ViaSat and confirm the sales numbers of such products for the past three years.

*Id.*

ViaSat successfully sought an extension of its deadline to respond until after the court ruled on a related motion by ALA to quash the ViaSat Subpoena.

In the July 28 Order, the court denied ALA's motion to quash and granted EMP's related request to reopen discovery for the limited purpose of EMP pursuing the ViaSat Subpoena (and as will be discussed below, the PGM Subpoena), "as narrowed by EMP in conferral and the briefs." July 28 Order at 14. Based on the record at the time, it appeared EMP had narrowed the

3

ViaSat Subpoena to (a) engineering drawings of the parts that ALA marketed to ViaSat, and (b) sales information as to parts ViaSat purchased through ALA, i.e., prices and quantities. *Id.* at 5 (citing ECF No. 78 at 4).

The court having denied ALA's motion to quash, ViaSat timely responded to EMP's motion to compel. ECF No. 96 ("ViaSat Resp.," filed as Level 1 Restricted; ECF No. 123, public version). With its Response, ViaSat submits three declarations in support, respectively from Colin Ward (ECF No. 97, Level 1 Restricted; ECF No. 124, public version); Elizabeth Knott (ECF No. 98); and Patrick Fitch (ECF No. 99). Mr. Ward is in-house counsel for ViaSat; Ms. Knott works in ViaSat's international export control and compliance department; and Mr. Fitch is outside counsel representing ViaSat with respect to EMP's subpoena.

ViaSat opposes the motion on several grounds. It argues (1) EMP subpoenaed the wrong ViaSat entity, as the only company with possession, custody or control of responsive documents is actually ViaSat's parent, ViaSat, Inc.;[3] (2) ViaSat, Inc. nonetheless "in good faith complied with the subpoena by facilitating the production of the relevant records actually sought by Plaintiffs;" (3) EMP's motion seeks "production of technical blueprints and diagrams that Plaintiffs never requested in the subpoena;" and (4) the ViaSat Subpoena is "unduly burdensome and minimally probative because Plaintiffs seek highly sensitive documents for disclosure to their employees involved in competing business activities without regard for nonparty ViaSat, Inc.'s trade secrets, obligations to third parties, or government-imposed limits on their

---

[3] ViaSat notes that as its name suggests, it is only a holding company. Its parent, ViaSat, Inc., is in the global business of "satellite and aerospace technology." ViaSat Resp. at 2. The parent entity "sources the manufacture of parts for its products from a carefully selected set of partners, including PGM and C & M." *Id.*

disclosure." ViaSat Resp. at 4.

Regarding the confidentiality issue, ViaSat argues all of the drawings in question would require ViaSat to first notify its customers under confidentiality agreements, as the drawings are the customers' trade secret or competitively sensitive information. Many of the drawings are also subject to International Traffic in Arms Regulations ("ITAR," 22 C.F.R. §§ 120-130). Under the ITAR, ViaSat is responsible—on pain of civil penalties and criminal liability—for ensuring that information subject to these regulations is not disclosed to foreign persons, whether intentionally or inadvertently. ViaSat Resp. at 12; Knott Decl. ¶ 7. ViaSat also argues that the engineering drawings are too competitively sensitive to allow the principals of EMP (Mr. Morris and Mr. Wolenski, both of whom are named Plaintiffs) to access these documents, even subject to the Protective Order in this case. ViaSat argues that once Mr. Morris and/or Mr. Wolenski were to review the drawings, they would be able to make "copycat" parts for competitors of ViaSat. ViaSat notes that in conferral, it suggested that EMP instead retain an independent expert to review the drawings subject to the Protective Order. EMP did not do so.

EMP replies that ViaSat (1) did not object that EMP had subpoenaed the wrong corporate entity prior to filing its response; (2) only agreed to produce (or have ALA and other persons produce) part of the requested sales information and did not fully comply with the ViaSat Subpoena; (3) reads the ViaSat Subpoena's categories unduly narrowly because EMP never agreed to accept just the commissions reports or sales reports, and (in EMP's view) the July 28 Order already found the ViaSat Subpoena encompassed not only the sales information but also the engineering drawings; and (4) premises its assertions of undue burden and minimal relevance on the original scope of the ViaSat Subpoena, which the July 28 Order already narrowed. ECF

No. 101 at 1-2 ("EMP Reply to ViaSat").

EMP further argues that it did not retain an outside expert to review the requested drawings because Mr. Morris and Mr. Wolenski are mechanical engineers and able to determine from the drawings whether EMP could make the parts. EMP Reply to ViaSat at 5. EMP further argues that ViaSat has not shown the ITAR restrictions apply to EMP, Mr. Morris or Mr. Wolenski. EMP argues that the Protective Order already prohibits Plaintiffs from using any knowledge of these parts outside of this litigation. EMP also downplays any possibility of copycat parts arising from Mr. Morris or Mr. Wolenski reviewing ViaSat's drawings.

## II.    EMP's Subpoena to PGM

On January 11, 2023, EMP served PGM a subpoena for deposition and documents. ECF No. 94-2 (the "PGM Subpoena").[4] The PGM Subpoena originally requested five categories of documents:

1. All facts, documents, witnesses, and communications concerning the business relationship between PGM Corp. and Alan Lupton Associates Inc.

2. All facts, documents, witnesses, and communications regarding sales made by PGM Corp. which resulted from the sales efforts of Alan Lupton Associates Inc.

3. A complete identification and description of all products sold by PGM Corp. to its customers.

4. A complete identification and description of all manufacturing processes used by PGM Corp. to manufacture products for sales to their customers.

5. A complete identification and description of all products manufactured and sold by PGM Corp. to their customers.

---

[4] EMP and PGM appear to assert this subpoena was served in December 2022. The return of service included with the PGM Subpoena states that it was served January 11, 2023. ECF No. 94-2 at 2.

PGM Subpoena at 7. PGM objected on essentially the same grounds as ViaSat. The July 28 Order noted that in conferral, EMP narrowed the PGM Subpoena to "engineering drawings and complete sales data." *See* July 28 Order at 8, 14.

At the corporate deposition of PGM in January 2023, PGM's representative (corporate vice president Todd Hockenberger) produced a two-page document identifying customers to whom it made sales that were marketed or brokered by ALA. This document does not appear to be in the record. On March 16, 2023, PGM produced a ten-page spreadsheet or tabular document identifying its sales to ViaSat, Inc. ECF No. 115-3 (redacted version of Ex. C to Wells Dec.); *see also* ECF Nos. 107-4, 108-4 (unredacted; the briefs to which these copies are attached were stricken for non-compliance with the court's rules). The table includes the specific dates, quantities, and prices of PGM's sales to ViaSat in 2021 and 2022. However, the parts are identified only by part number and relatively generic names such as "Cover Switch." *See, e.g.,* ECF No. 107-4 at 3.

Consistent with the July 28 Order, in its motion to compel PGM's compliance, EMP seeks engineering drawings and sales information as to PGM's four current customers whom PGM identified as marketed or brokered by ALA. Those customers include ViaSat. ECF No. 94 at 3, 5.

In response, PGM opposes any further production related to the PGM Subpoena on grounds similar to ViaSat. PGM provides two declarations in support, one from its corporate vice president, Todd Hockenberger (ECF No. 114) and the other from its counsel of record in this case, John Wells. ECF No. 115. PGM argues that the sales information it has already produced is all that should be required from it. ECF No. 113 ("PGM Resp.") at 2, 5, 14-15. PGM opposes

producing any further information because (1) PGM has nondisclosure agreements with its customers that apply to all of the engineering drawings; (2) the ITAR apply to all or most of the engineering drawings; (3) the engineering drawings are proprietary, trade secret information of PGM and its customers that couldn't be removed from the minds of EMP personnel once they review these documents, and EMP is a competitor or would-be competitor; and (4) EMP's current demands exceed the scope of the PGM Subpoena and are irrelevant to EMP's case. PGM Resp. at 4-14. PGM requests its attorney fees and expenses. *Id.* at 15.

EMP replies that PGM did not timely provide written objections to the PGM Subpoena, and therefore it has waived all objections it now raises. EMP argues that it "agreed to limit the scope of the production to engineering drawings associated with all parts manufactured by PGM which were sold to customers of PGM utilizing ALA's sales efforts, and to receive all sales figures associated with those sales." *Id.* at 3. But PGM has not fully complied as to either category of documents. As to the sales figures, the table of PGM's 2021 and 2022 sales to ViaSat does not suffice because it "does not adequately identify the parts to allow EMP to determine which parts were sold or if EMP could manufacture the parts." ECF No. 125 ("EMP Reply to PGM") at 2. As to the engineering drawings, EMP disputes that confidentiality is ever a reason to quash a subpoena, and vigorously disputes that the drawings would enable EMP to make copycat parts. EMP argues that to be able to make the parts would require knowing PGM's manufacturing process, which information EMP is not seeking. *Id*. at 5.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 45 both authorizes and circumscribes the scope of subpoenas. "A[n] … attorney responsible for issuing and serving a subpoena must take

reasonable steps to avoid imposing undue burden … on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction… on a[n]… attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). "A person commanded to produce documents or tangible things … may serve on the … attorney designated in the subpoena a written objection." *Id.,* Rule 45(d)(2)(B). If a subpoena recipient serves an objection, then "on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. … These acts may be required only as directed in the order." *Id.,* Rule 45(d)(2)(B)(i), (ii) (in relevant part).[5]

"[T]he court … must quash or modify a subpoena that … subjects a person to undue burden." *Id.,* Rule 45(d)(3)(A)(iv). In addition, "[t]o protect a person subject to or affected by a subpoena, the court … may, on motion, quash or modify the subpoena if it requires: disclosing a trade secret or other confidential . . . commercial information." *Id.,* Rule 45(d)(3)(B)(i).[6] The court "may, instead of quashing or modifying a subpoena, order . . . production under specified conditions if the serving party: shows a substantial need for the . . . material that cannot be otherwise met without undue hardship." *Id.*, Rule 45(d)(3)(C)(i).

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)." *GSL Grp. Inc. v. Travelers Indem. Co.*, No. 1:18-cv-00746-MSK-SKC, 2020 WL 12813087, at *2 (D. Colo. May 27, 2020) (citing 9A Wright & Miller, Federal Practice and

---

[5] In this case, the email correspondence attached to EMP's motion reflects that ViaSat objected in writing to the Subpoena. ECF No. 44-2 at 3.

[6] This aspect of Rule 45 "corresponds to Rule 26(c)(7)," Fed. R. Civ. P. 45, 1991 Advisory Committee Note to Rule 45(c), a rule discussed further below.

Procedure § 2452 (3d ed. 2008)); *see also Wang v. All. for Sustainable Energy, LLC,* No. 20-cv-03780-NYW, 2022 WL 1500779, at *2 (D. Colo. May 12, 2022) (same). "[A] subpoena is bound by the same [Rule 26] standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case." *Oransky v. Martin Marietta Materials, Inc.*, No. 18-cv-00266-MSK-NRN, 2018 WL 11514384, at *1 (D. Colo. Sept. 7, 2018).

Federal Rule of Civil Procedure 26(b)(1) sets forth the familiar standard for the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case,* considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Thus, Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.

In considering proportionality, this court "weighs the importance of the discovery to the issues at stake …, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 282 (D. Colo. 2022) (citing Fed. R. Civ. P. 26(b)(1)).

"The court 'must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that'. . . the proposed discovery is outside the scope permitted by Rule

26(b)(1)." *JL v. Regis Univ.*, No. 21-cv-00580-DDD-NYW, 2022 WL 1443059, at *2 (D. Colo. May 6, 2022) (quoting Fed. R. Civ. P. 26(b)(2)(C)). The court must also limit discovery for several other reasons listed in Rule 26(b)(2)(C), including when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient [or] less burdensome." Fed. R. Civ. P. 26(b)(2)(C)(i). "Factors considered in determining whether a subpoena is unduly burdensome include non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request. The party seeking to quash the subpoena bears the burden of proving that it is unduly burdensome." *Oransky*, 2018 WL 11514384, at *1.

Rule 26(c)(7) allows the court "for good cause, [to] …: protect a … person …. [by] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c) and (c)(7). "The burden is on the party resisting discovery or dissemination to establish that the information sought should be subject to additional protection. To meet this burden, the moving party must set forth specific facts showing good cause, not simply conclusory statements." *Netquote, Inc. v. Byrd*, No. 07-cv-00630-DME-MEH, 2007 WL 2438947, at *1 (D. Colo. Aug. 23, 2007) (internal citation omitted).

Finally, "[d]iscovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023) (brackets and internal quotation marks omitted, citing *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *see also S.E.C. v. Merrill Scott*

*& Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

## ANALYSIS

I.     *Unredacted Sales Data*

     A.     *ViaSat*

EMP shows in the Motion (and its prior motion to reopen discovery) that the sales data it requests from ViaSat is relevant. Specifically, ViaSat's sales that ALA marketed for competitors of EMP are relevant to EMP's damages from ALA's alleged breach of the Amended Contract. ViaSat does not appear to dispute that the requested information is also proportional to the needs of the case.

In response, ViaSat argues that only the non-subpoenaed *parent company* of the subpoenaed ViaSat entity has possession, custody or control of the documents containing the requested sales data. ViaSat Resp. at 5-6. In particular, ViaSat submits a declaration from its in-house counsel, Colin Ward, who states several facts supporting that ViaSat is a separate, wholly owned subsidiary of ViaSat, Inc. ECF No. 97. Mr. Ward further states that ViaSat "does not have the right or ability to obtain confidential business records from ViaSat, Inc. in the normal course of business." ECF No. 97 ¶ 9. This assertion matters because if ViaSat does have a right or ability to obtain the documents from its parent then ViaSat can be compelled to produce them as within its "control." *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476-77 (D. Colo. 2007); *Grays v. Auto Mart USA, LLC*, No. 18-cv-01761-MSK-NYW, 2019 WL 13167572, at *4 (D. Colo. Oct. 25, 2019) (applying *Tomlinson* in construing possession, custody or control for purposes of a subpoena); *Chi v. Weyerhauser Co.,* No. 17-cv-02230-PAB-MEH, 2018 WL 11431662, at *3 (D.

Colo. Aug. 17, 2018) (applying same standard to subpoena).

EMP replies that ViaSat waived this objection by not timely raising it within fourteen days of service of the Subpoena under Rule 45(d)(2)(B). EMP notes that ViaSat never raised the issue of which corporate entity or entities had possession, custody or control until ViaSat filed its response.

"Ordinarily, the failure to lodge a timely objection under the Rule 45(d)(2)(B) will constitute a waiver of any objection to production of the designated documents." *Miller v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02230-NYW, 2019 WL 13200057, at *2 (D. Colo. June 3, 2019) (citing *inter alia* Wright & Miller, Federal Practice and Procedure § 2463 at 481 (3d ed. 2008)). Even if ViaSat had filed a motion to quash or for protective order, "the Tenth Circuit holds that a Rule 26(c) motion is timely only if it is made within the timeframe for responding to the subpoena under Rule 45, either fourteen days from service or when compliance is required." *Id.* (citing cases). Thus, "[f]ailing to lodge a timely objection to a Rule 45 subpoena operates as a waiver of any challenge to production absent unusual circumstances or good cause." *Id.* at *3.

In this case, ViaSat does not show unusual circumstances or good cause for failing to timely raise the possession, custody or control objection. It argues that it did not raise this contention earlier because it was attempting to avoid the need for a motion and briefing on the Subpoena. However, ViaSat could have both timely raised in writing this objection—which would have permitted EMP to seek leave to subpoena ViaSat's parent—and still cooperated with EMP. The court finds that ViaSat waived the possession, custody and control objection.

The court also finds that even if ViaSat had not waived the objection, ViaSat's earlier cooperation in authorizing other entities to produce the requested sales information shows that

ViaSat's parent is willing to have ViaSat's counsel act on its behalf with respect to the Subpoena. The court finds that with respect to the Subpoena in this case, ViaSat has the right or ability to obtain the requested sales information from its parent.

Next, EMP has shown that ViaSat did not produce the complete sales information requested in the Subpoena. Namely, the Subpoena requests "what parts and assemblies [ViaSat] purchased [from ALA, PGM Corp., and C & M Manufacturing Company] and the sales price for the purchase." Subpoena at 4. As noted above, EMP seeks this information for the past three years. Motion at 3. EMP asserts that although ViaSat authorized ALA and others to produce the commission or sales reports for their sales with ViaSat, ALA produced those documents only as to PGM Corp's sales to ViaSat, and only after redacting the identity of the parts in question. Motion at 2 (asserting EMP received "some limited information on the relevant sales from PGM for the period 2020-21"); Reply at 2 (the identity of the parts was redacted).

EMP also asserts that despite receiving some of the requested ViaSat sales information from ALA, PGM and another non-party (Benchmark), EMP still does not have the complete, unredacted sales information. Indeed, ViaSat's declaration from Mr. Fitch says that he *understands* these other entities produced complete commission reports, but he does not declare on personal knowledge that this is so.[7] Nor do ViaSat's other declarants. ViaSat points to ALA's statement that it produced "the sales numbers that were requested by producing a spreadsheet marked ALA_103583-103618." Resp. at 6 (citing ECF No. 52 at 3). However, the filing in question does not attach the referenced spreadsheet, and it does not appear to be in the record. At

---

[7] The briefing and correspondence indicate continuing communication difficulties between counsel for EMP, ALA, and ViaSat have clouded these issues.

the very least, the current briefing does not point to where the spreadsheet was filed, if at all. Again, EMP asserts that ALA redacted the identity of the parts. On the current record, the court concludes that ViaSat has not produced (or authorized others to produce) all of the sales data that the ViaSat Subpoena requests.

ViaSat further argues undue burden because EMP should have fully pursued the complete sales information from ALA first, and only if unavailable from ALA should EMP have subpoenaed the information from ViaSat. "[C]ourts may refuse discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action." Resp. at 7 (quoting *Al Muderis v. Hernandez,* No. 1:20-mc-00090-RM, 2021 WL 119348, at *2, *5 (D. Colo. Jan. 13, 2021), and collecting out-of-circuit cases). In *Al Muderis*, the court found undue burden in a subpoena to a non-party hospital seeking invoices for its purchases of certain devices, when that information "could be more readily obtained from Defendants [who were the device distributors] in the underlying suit." *Id.* at *3. Nonetheless, the court ordered the subpoenaed person to provide an affidavit that it had offered, "identifying which vendors it purchases certain … devices from and the brand of those devices." *Id.*

In this case, it appears ViaSat is correct that EMP did not pursue the complete ViaSat sales information from ALA. EMP issued a request for production (no. 17) to ALA for the information and obtained an informal discovery conference with Magistrate Judge S. Kato Crews on that discovery request. ECF No. 52 (May 1, 2023 minutes). However, in the parties' informal discovery statement for that conference, EMP identified only the engineering drawings as at issue. *Id.* EMP did not mention having received only incomplete sales information from ALA.

However, given the unique circumstances here, the court does not find that EMP had to

first exhaust its request for production to ALA before seeking the sales information from ViaSat. The discovery conference with Judge Crews does not appear to have been recorded. This case was reassigned to the undersigned magistrate judge just hours after that conference. ECF No. 53. At the time, this court had not yet posted discovery dispute procedures, and it may have been unclear to EMP how to address the sales information issue with the court. More importantly, the ViaSat Subpoena is centered on *ViaSat's* purchases. Thus, although it would have been better practice for EMP to timely pursue the ViaSat sales information from ALA, the subpoena does not ask ViaSat for information that is only tangential for ViaSat.

As for ViaSat or ViaSat, Inc.'s assertion of confidentiality in the sales information, ViaSat, Inc. "confirmed [designation of this information as] 'Confidential' [under the Protective Order] was sufficient" to protect that confidentiality. ECF No. 96 at 6 n.1. ViaSat can protect any competitively-sensitive information contained in the sales information by designating it under the Protective Order. The court therefore finds that ViaSat has not shown good cause to quash or modify the subpoena with respect to the confidential sales information.

Accordingly, the court GRANTS the Motion IN PART. ViaSat shall produce unredacted sales data (quantities, prices, dates, and identification of the parts) for the parts that ALA marketed or brokered to it, or that ViaSat purchased from PGM or C&M Precision, for the past three years measured from March 31, 2023 (the last date that EMP served the ViaSat Subpoena). ViaSat may designate all such information as Confidential under the Protective Order. The parts shall be identified sufficiently to allow EMP to understand what the parts are, such as by part numbers with a catalog or other document identifying the parts by part number.

> B.   PGM

As to the sales data that EMP requests from PGM, for the same reasons as with ViaSat's sales data, EMP has shown relevance. PGM does not appear to dispute proportionality.

With respect to PGM's objections, EMP argues PGM waived all objections by not timely providing them under Rule 45(d)(2)(B). Because EMP did not raise this issue until its Reply, EMP waived this argument. *See, e.g., Tuft v. Indem. Insur. Co. of N. Am.,* No. 19-cv-01827-REB-KLM, 2021 WL 1041801, at *2 n.3 (citing *United States v. Leffler,* 942 F.3d 1192, 1197-98 (10th Cir. 2019)).

Yet, PGM's objections to producing further sales data do not win the day. Although its productions in January 2023 and March 2023 provide some of the requested information, as noted above, those documents do not sufficiently identify the parts in question. PGM also apparently did not produce any sales data as to its three other customers marketed by ALA. EMP's lack of objection until April 26, 2023, to the incomplete production does not show that EMP waived the right to file a motion to compel full compliance with the PGM Subpoena. Rule 45 does not set a time limit for moving to compel a subpoena; rather, it provides for such a motion "[a]t any time, on notice to the commanded person." Fed. R. Civ. P. 45(d)(2)(B)(i). Presumably, such a motion must be filed within the discovery cutoff, but as noted above, the court granted EMP's motion for a limited extension of that deadline in order to pursue the subpoenas now at issue.[8]

---

[8] It would have been better practice for EMP to pursue the missing sales information from PGM sooner, but at least under the circumstances that EMP described in its motion to reopen, its failure to do so did not waive the right to seek full compliance from PGM.

PGM objects that its sales data is confidential (PGM Resp. at 8), but it does not show that the Protective Order would be inadequate as to this information. Rather, PGM appears to assert the Protective Order is inadequate only concerning the engineering drawings. *Id*. at 9-10. It does not explain why it is likely to suffer harm if EMP employees or officers review PGM's sales data subject to the restrictions of the Protective Order. *Id.;* ECF No. 114 (Hockenberger Dec.); ECF No. 115 (Wells Dec.).

In short, EMP has shown that the sales data it requests from PGM is relevant and proportional to the case. PGM has not shown untimeliness, undue burden, or confidentiality that would support quashing or modifying the PGM Subpoena as to the sales information. The motion to compel PGM is granted in part, to the extent that PGM shall produce complete, unredacted sales data as to the four current customers that were marketed or brokered by ALA, for the three years preceding January 11, 2023. PGM shall also provide a document (whether a part list, catalog, or otherwise) that describes the parts sufficiently for EMP to understand the types of parts. PGM may designate all of this information under the Protective Order.

### C. *Additional Issues with Respect to ViaSat and PGM Sales Data*

Finally, the court notes that EMP did not focus much attention on the sales data in its motions. The briefing accordingly does not make clear at least two issues.

First, as to PGM's sales to ViaSat, EMP does not need the same sales data twice. EMP does not appear to address this issue. It does not suggest that either PGM or ViaSat failed to maintain a complete set of responsive information, and it does not identify which of the two entities the court should require to produce this sales data. Because it appears that ultimately it is ViaSat who must approve PGM's disclosure of these sales, the court will require *ViaSat* to

produce the complete sales data for the parts that PGM sold to it, marketed or brokered by ALA. PGM is required to produce the complete sales information as to its other three current customers obtained through ALA's marketing or brokering.[9]

Second, it is unclear to the court whether PGM or ViaSat would consider their sales prices to be competitively sensitive information that EMP's decision makers would be unable to segregate from their competitive decisions—when the parts associated with those prices are identified sufficiently. Counsel shall promptly confer whether the Protective Order should be amended to provide a second tier of higher protection (attorney's eyes only, etc.) for the PGM and ViaSat prices, and if so, submit a proposed, amended protective order.

## II.    Engineering Drawings from ViaSat and PGM

However, the court denies the motions to the extent EMP seeks engineering drawings from ViaSat and PGM.

As a preliminary issue, EMP argues the July 28 Order already found that engineering drawings are within the scope of the Subpoenas, and thus neither ViaSat nor PGM can argue to the contrary. This is incorrect. The July 28 Order stated only that it appeared EMP had narrowed the Subpoenas—in conferral or briefs—to engineering drawings and sales data, found the documents that EMP was seeking from ViaSat were encompassed within the broader categories of the PGM Subpoena, and found EMP had shown relevance.[10] At the time, the court did not

---

[9] However, ViaSat and PGM are free instead to agree that *PGM* should produce the sales data for the parts PGM sold to ViaSat. That may be more efficient, since PGM already produced the document disclosing those sales in March 2023 (but lacking the identification of the parts).

[10] Unlike the ViaSat Subpoena, the PGM Subpoena included a category seeking "[a] complete identification and description of all products sold by PGM Corp. to its customers."

have the benefit of ViaSat's or PGM's views. The July 28 Order did not preclude ViaSat or PGM from arguing—or this court from finding—that in broadly requesting all documents that "reflect" ViaSat's purchases of parts, or a "complete identification and description of all products" PGM sold, the Subpoenas do not adequately specify engineering drawings as among those documents requested. *See, e.g., Wang*, 2022 WL 1500779, at *5 ("discovery requests using language such as 'relating to' or 'all documents' are typically considered overbroad"). However, the court need not decide this issue because the court concludes the Subpoenas should not be compelled as to engineering drawings for other reasons.

Assuming without deciding that the Subpoenas properly encompass engineering drawings, ViaSat shows undue burden in the quantity of different parts and vendors involved. ViaSat shows undue burden in the quantity of parts for which it would need to notify its contract partners of the disclosure. It argues that the ViaSat Subpoena seeks detailed engineering drawings for at least 134 different parts or assemblies, all of which are subject to various nondisclosure agreements between ViaSat and its various customers who ordered these parts or assemblies. Resp. at 1. ViaSat submits declarations to support that before it could produce the drawings, it would have to notify the government and customers, each of whom could object to producing their drawings even subject to the Protective Order. ViaSat contends that EMP competes with several of those customers, and as discussed further below, disclosure of this information to Mr. Morris or Mr. Wolenski (even subject to the Protective Order) may be objectionable to them. EMP would like to review these drawings to determine whether it was capable of manufacturing them (for purposes of calculating damages in this case), but it has not shown that requiring a non-party to go through a notification process as to 134 parts or

assemblies is proportional to EMP's need. While this level of notification and production could be required of a party, "discovery from third-parties in particular must, under most circumstances, be closely regulated." *Wang*, 2022 WL 1500779, at *2. The Subpoena's request for such a large number of engineering drawings involving non-parties is such a circumstance. The court therefore finds the requested production would impose an undue burden on ViaSat. *See id.* at *5 (declining to require further compliance with a subpoena because it would not be proportional to the party's need for the discovery).[11]

More importantly, ViaSat and PGM both respectively show a potential for competitive harm to themselves and their contract parties that outweighs EMP's need for these documents. EMP does not appear to dispute that the engineering drawings are trade secret or competitively sensitive not only to ViaSat and PGM but also to their respective customers. *See, e.g.,* EMP Reply to ViaSat at 2, 7-8; EMP Reply to PGM at 3, 5-7.

With respect to trade secrets and other competitively sensitive information, "the Court must balance the requesting party's need for discovery against the resisting party's claimed harm that will result from disclosure." *BIAX Corp. v. Nvidia Corp.*, No. 09-CV-01257-PAB-MEH, 2009 WL 3202367, at *2 (D. Colo. Oct. 5, 2009) (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d 323, 325 (10th Cir. 1981)). The entry of a protective order is left to the

---

[11] PGM's ten pages of sales to ViaSat (ECF Nos. 107-4 and 108-4)—combined with its assertion that three other customers are also responsive to EMP's request—shows a burden. It is less clear whether that burden is *undue*. PGM does not appear to state how many different parts are at issue. In its reply briefs, EMP assumes that all 134 parts that ViaSat mentions are from PGM (*see* Reply to PGM at 7), but this is not plain to the court. In addition to requesting the parts that ViaSat purchased from PGM, the ViaSat Subpoena also requests the parts that ViaSat bought from C&M Precision, and from anyone else who was brokered or marketed by ALA.

sound discretion of the court. *See Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).

As noted, ViaSat and PGM argue that Plaintiffs' (namely, Mr. Morris and Mr. Wolenski's) review of the engineering drawings would enable EMP to design and manufacture "copycat" parts. ViaSat Resp. at 13; PGM Resp. at 10. Mr. Morris and Mr. Wolenski are mechanical engineers by training, and they are executive officers of EMP. *See, e.g.,* ECF No. 84-2 (EMP letter to ALA attached to Am. Complt. Signed by Mr. Morris as CEO and Mr. Wolenski as President).

Although EMP argues there is no reason to believe either Mr. Morris or Mr. Wolenski would violate the Protective Order (i.e., disclose or use the drawings outside this litigation), and EMP also argues that Mr. Morris and Mr. Wolenski are not directly responsible for design and manufacture, this does not address the potential harm that ViaSat and PGM identify. Namely, Mr. Morris and Mr. Wolenski are competitive decision makers, and once they review the engineering drawings, they would not be able to separate that knowledge from the competitive decisions they make for EMP's business. *See, e.g., BIAX Corp.*, 2009 WL 3202367, at *2-3 (granting protective order that prohibited disclosure of defendant's confidential information to the plaintiff's competitive decision-makers). When a party's competitive decision-makers are involved:

> courts must balance the risk of inadvertent disclosure to competitors against the risk of prejudice to the other party's ability to prosecute or defend the present action. When balancing these risks, courts should consider whether the prohibited individual "would be virtually unable to compartmentalize the information and not use the information to seek to gain an unfair competitive advantage."

*Compass Mins. Am. Inc. v. Gaia Enters., Inc.*, No. 16-cv-2175-JAR-TJJ, 2017 WL 3498900, at

\*3 (D. Kan. Aug. 16, 2017) (notes omitted, citing *inter alia MGP Ingredients, Inc. v. Mars, Inc.,*

245 F.R.D. 497, 501 (D. Kan. 2007)).

Here, EMP argues that adding an attorneys' eyes only provision to the Protective Order

would not be feasible because it is Mr. Morris and Mr. Wolenski who need to review the

engineering drawings. EMP did not retain an outside expert for this purpose. As such, even if the

court amends the Protective Order to provide an attorney's eyes only tier, there is no point to

compelling ViaSat or PGM to produce the engineering drawings. EMP has no outside counsel or

expert to review attorney's eyes only documents. EMP's motions to compel the engineering

drawings from PGM and ViaSat are accordingly denied.[12]

EMP argues to the contrary that confidentiality is not a basis for modifying or quashing a

subpoena, citing *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.,* No. 11-cv-

01611-MSK-CBS, 2014 WL 1257762, at \*22 (D. Co. Mar. 27, 2014), and *Stewart v. Mitchell*

*Transport,* No. 01-2546-JWL, 2002 WL 1558210, at \*5 (D. Kan. July 11, 2002). But neither of

those cases address a proposed disclosure of a non-party's trade secrets to a competitive decision

maker. Indeed, in *Western Convenience*, the court had entered a two-tier protective order to

prevent such disclosure of "extremely sensitive information" to the parties' employees, while

still permitting disclosure to counsel. 2014 WL 1257762, at \*3. *Stewart*, meanwhile, did not

involve competitively sensitive information at all, but medical and other personal information of

an individual. 2002 WL 1558210, at \*6.[13]

---

[12] In light of this ruling, the court does not need to reach ViaSat's arguments based on the ITAR.
[13] Given that EMP's primary focus is the engineering drawings, the sales information standing

In short, ViaSat and PGM have shown the motions to compel should be denied as to engineering drawings.

**CONCLUSION**

Consistent with the foregoing, EMP's motion (ECF No. 44) to compel the *ViaSat Subpoena* is GRANTED IN PART and DENIED IN PART. ViaSat shall produce unredacted sales volumes and prices for the parts and assemblies that ALA marketed or brokered, or that ViaSat bought from PGM and C&M Precision, for the past three years measured from March 31, 2023. The production shall sufficiently identify the parts in question to allow EMP to understand what the parts are.

EMP's motion (ECF No. 94) to compel the *PGM Subpoena* is GRANTED IN PART and DENIED IN PART. PGM shall produce unredacted sales volumes and prices for parts and assemblies that ALA marketed or brokered, *excluding its sales to ViaSat*, for the past three years measured from January 13, 2023. The production shall sufficiently identify the parts in question to allow EMP to understand what the parts are.

The court denies PGM's request for attorney fees and expenses, as PGM does not provide any argument or details in support. *See, e.g., S. Denver Anesthesiologists, PC v. Oblachinski,* No. 06-cv-02425-REB-BNB, 2007 WL 2255123, at *1 (D. Colo. Aug. 3, 2007). To the extent PGM

---

alone may have somewhat less relevance. However, ViaSat does not appear to argue that the sales information standing alone would lack all relevance whatsoever. PGM meanwhile argues irrelevance of *all* the documents that EMP seeks, but the July 28 Order already addresses why the same arguments are unpersuasive. July 28 Order at 14 (noting the court will not adopt one side's unilateral view of the other's claims for purposes of determining relevance). Accordingly, the court concludes the motions to compel should be granted to the extent of the sales information.

impliedly seeks attorney fees and expenses pursuant to Rule 45(d)(1)—for undue burden imposed by the PGM Subpoena—because EMP narrowed the PGM Subpoena in conferral, it did not impose an undue burden. The court is also granting EMP's motion to compel in part, and PGM does not argue that being required to file the response as to the denied portion (i.e., the engineering drawings) in itself was an undue burden.

Counsel shall confer promptly whether (1) the Protective Order should be amended to provide a higher tier of protection (such as attorney's eyes only) to address ViaSat or PGM's sales prices associated with sufficiently identified parts; and (2) the amount of time ViaSat and PGM will respectively need to produce the information that this order compels. Counsel shall file a status report (or reports) and, if necessary, a proposed amended protective order by **October 6, 2023**.

In addition, to ensure the compelled productions are complete in sufficient time for the parties to review them before submitting their proposed final pretrial order, the final pretrial conference set for **October 19, 2023, at 9:00 a.m.** is CONVERTED to a **telephone status conference**. Counsel for PGM, ViaSat, and the parties shall attend by calling 571-353-2301, Guest meeting ID- 868150043. All attendees shall please mute their phone when not speaking and not use speaker phone. If the status report(s) indicate there is no need for the status conference, it will be vacated.[14]

---

[14] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver

Finally, the final pretrial conference is RESET to **November 9, 2023, at 9:00 a.m.** in Courtroom C-205 before the undersigned magistrate judge. The proposed final pretrial order is due by **November 2, 2023.**

DATED:  September 21, 2023                          BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").