IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado corporation,
DAVID P. MORRIS, an individual, and
DAVID J. WOLENSKI, an individual,

      Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation,

      Defendant.

---

**ORDER**

---

      This matter comes before the Court on Plaintiffs' Motion for Judgment on the Pleadings Dismissing the Fourth, Fifth, and Sixth Claims for Relief of Alan Lupton Associates Inc.'s Counterclaims [Docket No. 22].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I.  BACKGROUND[1]**

      The counterclaims at issue arise out of a contractual dispute between Electro-Mechanical Products, Inc. ("EMP") and Alan Lupton Associates, Inc. ("Lupton Associates").  EMP is a manufacturer of machine components that relies on commissioned sales agents to sell its products to commercial accounts.  Docket No. 16 at 3, ¶ 8.  Lupton Associates is a commission sales company.  *Id.*, ¶ 9.  In 1989, EMP

---

      [1] The facts below are taken from the answer and counterclaims filed by defendant Alan Lupton Associates, Inc., Docket No. 16, and are presumed to be true, unless otherwise noted, for purposes of ruling on plaintiffs' motion.

and Lupton Associates entered into a contract under which Lupton Associates would find customers and sell EMP's products in several states and EMP would pay Lupton Associates a 5% commission on all sales to accounts that Lupton Associates brought to EMP. *Id.*, ¶ 10. In 2000, EMP and Lupton Associates agreed to an amendment of the original contract ("Amended Sales Contract"). *Id.*, ¶ 12. The Amended Sales Contract provided that "the Sales Agreement may not be terminated by EMP (except for Cause) nor may EMP elect not to renew it . . . so long as Alan Lupton [Sr.] or any other shareholder in Lupton Associates or family member . . . thereof or employee of Lupton Associates owns stock in EMP." *Id.* at 4, ¶ 16. Alan Lupton's son, Alan Lupton II, owns stock in EMP. *Id.* at 3-4, ¶ 13. The Amended Sales Contract defines "Cause" as a "material breach of the Sales Agreement or material nonperformance under the Sales Agreement." *Id.* at 5, ¶ 19. If EMP terminates the Amended Sales Contract under any circumstance other than for Cause, Lupton Associates is entitled to a 5% commission on "all parts or programs on which Lupton Associates was entitled to commission at the time of the notice of termination or nonrenewal, and all parts of programs on which sale begin after such notice but as a result of Lupton Associates' prior activities or services." *Id.,* ¶ 17. If EMP terminates the contract for Cause, Lupton Associates is entitled to a 5% commission only on orders received through 60 days following the termination. *Id.*, ¶ 20.

Plaintiffs David P. Morris and David J. Wolenski are officers and shareholders of EMP. *Id.* at 2, ¶¶ 3-4. In 2021, Mr. Morris and Mr. Wolenski identified a third-party company ("Potential Buyer") that was interested in a buyout of EMP. *Id.* at 6, ¶¶ 24-26. Potential Buyer informed Mr. Morris, Mr. Wolenski, and EMP that it would not purchase

EMP at the price that Mr. Morris and Mr. Wolenski wanted unless the contract between Lupton Associates and EMP was renegotiated or terminated.  *Id.*, at 7, ¶ 28.  Lupton Associates claims that, as a result, "EMP, Morris, and Wolenski decided to eliminate the troublesome contractual obligation" to Lupton Associates.  *Id.*, ¶ 32.  Terminating the Amended Sales Contract without cause would not solve the Potential Buyer's reticence because it would have obligated EMP to continue to pay Lupton Associates commission, so EMP, Mr. Morris, and Mr. Wolenski "hatched a plan to attempt to terminate the Amended Sales Contract for 'cause.'"  *Id.* at 7-8, ¶¶ 33-34.  Lupton Associates alleges that no sufficient justification existed to terminate the Amended Sales Contract for cause.  *Id.* at 8, ¶ 35.

On March 23, 2022, EMP sent a "Default Letter" to Lupton Associates claiming that Lupton Associates was in default on the Amended Sales Contract and demanding a "cure" within 30 days.  *Id.*, ¶ 37.  Lupton Associates responded that the allegations in the Default Letter were faulty and "point[ed] out the circumstances with Potential Buyer that were creating the improper and wrongful attempt to terminate EMP's legitimate and ongoing contractual obligations."  *Id.* at 9, ¶ 41.  On April 25, 2022, Mr. Morris, Mr. Wolenski, and EMP sent a "Termination Letter" to Lupton Associates stating that the Amended Sales Contract was terminated for cause.  *Id.*, ¶ 42.

Lupton Associates claims that EMP, through the actions of Mr. Morris and Mr. Wolenski, breached its obligations to Lupton Associates by improperly and falsely claiming that Lupton Associates breached the Amended Sales Contract and by wrongfully purporting to terminate the Amended Sales Contract.  *Id.*, ¶ 45.  Lupton Associates claims that EMP is further violating the Amended Sales Contract by refusing

to communicate and continuing to accept orders from accounts for which Lupton Associates would be owed commissions.  *Id.*, ¶ 46.

Lupton Associates brings six counterclaims against Mr. Morris, Mr. Wolenski, and EMP: (1) and (2) breach of contract asserted against EMP; (3) breach of the implied duty of good faith and fair dealing asserted against EMP; (4) knowing failure to pay sales commissions under New York consolidated laws, Labor Law- Lab  § 191 asserted against EMP; (5) intentional interference with a contract asserted against Mr. Morris and Mr. Wolenski; and (6) civil conspiracy asserted against Mr. Morris and Mr. Wolenski.  *Id.* at 10-16, ¶¶ 48-91.  Plaintiffs seek judgment on the pleadings for Lupton Associates' fourth, fifth, and sixth counterclaims.  Docket No. 22 at 1.

## II.  LEGAL STANDARD

The Court reviews a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) much as it does a motion to dismiss pursuant to Rule 12(b)(6). *See Adams v. Jones*, 577 F. App'x 778, 781-82 (10th Cir. 2014) (unpublished) ("We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion.") (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond St. Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013) (unpublished)).  The Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  *Id*. at 782.  To prevail, the moving party must show that "no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."

*United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

A "motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d ed. Apr. 2023); *see also Park Univ. Enters.*, 442 F.3d at 1244 ("Judgment on the pleadings should not be granted unless the moving party clearly establishes that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." (quotation marks and citation omitted)). A party may raise arguments that could be made in a motion under Rule 12(b)(6) in a motion under Rule 12(c). Fed. R. Civ. P. 12(h)(2).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not the facts themselves be plausible." *RE/MAX, LLC. v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzalez*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement needs only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff must provide "supporting factual averments" with his allegations. *Cory v. Allstate Insurance*, 583 F.3d 1240, 1244 (10th

Cir. 2009) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  The Court need not accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

 "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –  but it has not shown –  that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d  at 1286 (alteration marks omitted).

## III.  ANALYSIS

### A.  Knowing Failure to Pay Sales Commissions Under New York Law

New York Labor Law § 191 regulates the compensation of "sales representatives" who solicit wholesale orders on behalf of "principal[s]" and are paid by commission.  N.Y. Labor Law § 191-a(a), (c)-(d) (McKinney 1988).  The law mandates that contracts between sales representatives and principals must be in writing and

requires principals to pay sales representatives no more than five days after they have earned their commission.  *Id.,* § 191-b-1, 3.  If the principal does not timely pay a sales representative, it is liable to the sales representative for double damages.  *Id.*, § 191-c3.  Lupton Associates alleges that it is a "sales representative" and EMP is a "principal" and therefore EMP's failure to pay commissions that it owes to Lupton Associates violates § 191.  Docket No. 16 at 13-14, ¶¶ 73, 75-76.  Accordingly, Lupton Associates alleges that it is "entitled to double damages for all past and future commissions owed" under § 191 as well as costs and attorney's fees.  *Id.* at 14, ¶ 77.

Plaintiffs claim that EMP is not liable to Lupton Associates under § 191 because EMP is not a "principal" and Lupton Associates is not a "sales representative" within the meaning of the statute.[2]  Docket No. 22 at 5, 7-8.  Section 191-a defines a "principal" as "a person or company engaged in the business of manufacturing, and who: (1) [m]anufactures, produces, imports, or distributes a product for wholesale; (2) [c]ontracts with a sales representative to solicit orders for the product; and (3) [c]ompensates the sales representative in whole or in part by commissions."  N.Y. Labor Law § 191-a(c).

Plaintiffs claim that EMP is not a "principal" because it manufactures component parts for sale to equipment manufacturers, not products for resale at the retail level.  Docket No. 22 at 7.  Lupton Associates argues that a manufacturer who sells

---

[2] Plaintiffs' motion states that plaintiffs "reserve their right to argue that New York law does not apply to Lupton Associates' claim for unpaid sales commissions."  Docket No. 22 at 5 n.1.  Nevertheless, the parties' arguments concerning Lupton Associates' fourth counterclaim are based on the premise that New York law applies to this counterclaim.  Therefore, for purposes of ruling on plaintiffs' motion, the Court will operate under the same premise.  See *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

component parts can be a "principal" under § 191.  Docket No. 24 at 5.  The courts that have interpreted § 191's definition of a "principal" have not addressed the issue of whether a manufacturer of component parts can be considered a "principal."[3]  *See, e.g., McGovern Consulting, LLC v. Newstex, LLC,* 2014 WL 939294, at *2-3 (N.Y. Sup. Ct. Mar. 7, 2014) (holding that § 191 applies only to companies dealing in tangible, manufactured objects rather than services); *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 63-64 (S.D.N.Y. 2010) (holding that a company that was in the business of hardware and software sales and technical support was not a "principal" under § 191); *Szafran v. Sandata Technologies, Inc.*, 452 F. App'x 41, 44 (2nd Cir. 2011) (unpublished) (holding that § 191 did not apply to a "service provider" that did not manufacture, import, or distribute products for wholesale).

Plaintiffs argue that the inclusion of the term "wholesale" in § 191 indicates that a manufacturer of component parts is not a "principal" under the statute.  Docket No. 22 at 6-7; Docket No. 27 at 2-4; *see* N.Y. Labor Law § 191-a(c)(1) (defining a "principal" as a manufacturer who "[m]anufactures, produces, imports, or distributes a product for wholesale.").  Plaintiffs argue that "wholesale" means the sale of goods to a retailer for resale.  Docket No. 22 at 6.  Lupton Associates argues that the term "wholesale" should not be construed so narrowly, claiming that "wholesale" can refer to the sale of

---

[3] Lupton Associates claims that *Polyfusion Electronics, Inc. v. Promark Electronics, Inc.,* 108 A.D. 3d 1186 (N.Y. App. Div. 2013), applied § 191 to a claim involving the sale of electronic components to equipment manufacturers.  Docket No. 24 at 5-6.  The case describes the plaintiff as "a contract electronics manufacturer" and states that "the record establishes that plaintiff was a 'principal' . . . for purposes of the statute," but it provides no further analysis about the nature of plaintiff's business. *Polyfusion Electronics*, 108 A.D. 3d at 1186-87.  Accordingly, this opinion offers no guidance as to whether a components manufacturer may be a "principal" as defined by § 191.

component parts that are incorporated into other products for resale.  Docket No. 24 at

4-5.  Based on its interpretation of "wholesale," Lupton Associates argues that the

manufacturer of component parts could be a "principal" under § 191.  *Id.*  There is no

caselaw establishing whether the definition of "product[s] for wholesale" as used in

§ 191 includes component parts.  *See* N.Y. Labor Law § 191-a(c)(1).  Accordingly,

whether component parts can be "product[s] for wholesale" under the statute is a matter

of statutory interpretation.

Dictionaries define "wholesale" as "the sale of commodities in quantity usually for

resale (as by a retail merchant)," *wholesale, Merriam-Webster, www.merriam-*

*webster.com/dictionary/wholesale*, and the sale of goods "in large quantities and at low

prices, typically . . . to be sold on by retailers at a profit."  *Wholesale, Oxford English*

*Dictionary, doi.org/10.1093/OED/9545606614.*  These definitions do not refer to the

retailers changing the products or utilizing them as component parts.  Rather, these

definitions suggest that a "product for wholesale" refers to a finished product that is to

be sold at retail.

The legislative history of § 191 also indicates that a component part is not

"product for wholesale" within the meaning of the statute.[4]  The memoranda in support

---

[4] Courts are encouraged to review legislative history when construing New York
statutes.  *See Sprint Comms. Co., L.P. v. City of New York Dept. of Finance*, 152
A.D.3d 184, 189 (N.Y. App. Div. 2017) ("Although the language of the respective
statutes appears at first glance to be unambiguous, it is nevertheless appropriate to
review the legislative history behind their adoption."); *see also New York State Bankers*
*Ass'n v. Albright,* 38 N.Y.2d 430, 434 (N.Y. 1975) ("While the statutes may appear
literally 'unambiguous' on their face, the absence of ambiguity facially is never
conclusive.  Sound principles of statutory interpretation generally require examination of
a statute's legislative history and context to determine its meaning and scope.").  The
court in *McGovern Consulting* consulted a memorandum supporting introduction of the

of the bill that became § 191 indicate that the purpose behind the law was to ensure that sales representatives receive their due commission for sales of manufactured goods. Memorandum in Support of Legislation, Bill Jacket, L 1987, ch 451, at 9; Memorandum of Support, Bill Jacket, L 1987, ch 451, at 10.[5]  Each memorandum includes the following paragraph:

> It has been the history, especially in the garment industry, that manufacturers do not enter into written contracts when they engage the services of sales representatives.  These sales representatives are responsible for displaying and selling the manufacturer's product to the retail stores and are generally paid solely on a commission basis.  As a result of there being a lack of a signed document, sales representatives are often not receiving their due commission.  In addition, any proceeding the sales representative might bring to recover his or her commission is unduly burdened by the lack of a written document.

Memorandum in Support of Legislation, Bill Jacket, L 1987, ch 451, at 9; *see also* Memorandum of Support, Bill Jacket, L 1987, ch 451, at 10.

This legislative history suggests that § 191 was motivated by the plight of sales representatives in the garment industry and was intended to prevent clothing manufacturers from failing to pay the commissions owed to sales representatives who sold manufactured garments to retail stores.  Given this context, it is likely that "product[s] for wholesale" in § 191 means products sold to a retailer for resale, not products sold as component parts.  Accordingly, a manufacturer of component parts does not "[m]anufacture[ ], . . . a product for wholesale" within the meaning of § 191 and

---

bill into the New York legislature to interpret § 191.  *McGovern Consulting*, 2014 WL 939294, at *2-3.

[5] The bill jacket for the bill that became § 191, which includes the memoranda cited above, has been digitized by the New York State Library and is available at nysl.ptfs.com/aw-server/rest/product/purl/NYSL/i/196e3b6e-f86c-4516-baf2-7a644ed3b1da.

is thus not a "principal" under § 191.  *See* N.Y. Labor Law § 191-a(c).  Therefore, based on the allegations in the counterclaim, EMP is not a "principal" under § 191.

Plaintiffs also argue that Lupton Associates' claim under § 191 should be dismissed because Lupton Associates is not a "sales representative" under the statute. Docket No. 22 at 8.  Section 191-a(d) defines a "sales representative" as "a person or entity who solicits orders in New York state and is . . . an independent contractor, but does not include one who places orders for his own account for resale."  N.Y. Labor Law § 191-a(d).  Plaintiffs claim that Lupton Associates has failed to allege that it is a sales representative under § 191-a(d) because "Lupton Associates does not allege that its employees were in New York when they solicited the orders for which Lupton Associates was allegedly not paid a commission."  Docket No. 22 at 8.

Whether Lupton Associates is a sales representative depends on whether its employees were located in New York when they solicited orders from customers, rather than on whether the customers were located in New York when the customers placed the orders.  *See Kaye v. Artmatic Corp.,* 625 N.Y.S.2d 216, 217 (N.Y. App. Div. 1995) ("[T]he statute should be interpreted with an emphasis placed on the [sic] whether [the alleged sales representative] solicited orders from New York and not upon the location of the customers."); *Gould Paper Corp v. Madisen Corp.*, 614 F. Supp. 2d. 485, 491 (S.D.N.Y. 2009) (holding that having customers in New York was insufficient to demonstrate that a defendant was a sales representative under the statute; but instead a party "must have actually solicited orders in New York" to qualify as a sales representative).  Accordingly, Lupton Associates' allegation that it completed sales "to customers located in, or operating out of New York," Docket No. 16 at 13, ¶ 72, alone, is

insufficient to establish that Lupton Associates is a "sales representative" under § 191. Although Lupton Associates alleges that it is a New York corporation with a principal place of business in New York, it does not allege that the employees who solicited orders for EMP were located in New York.  Docket No. 16.  Therefore, based on the allegations in the counterclaim, Lupton Associates has failed to allege that it is a "sales representative" under § 191.  *See* N.Y. Labor Law § 191-a(d).

Accordingly, Lupton Associates has failed to allege that EMP is a principal and Lupton Associates is a sales representative within the meaning of § 191.  The Court will dismiss Lupton Associates' fourth claim for relief.

## B.  Intentional Interference With Contract

To state a counterclaim for intentional interference with contract, Lupton Associates must allege that Mr. Morris and Mr. Wolenski "intentionally and improperly interfere[d] in the performance of a contract."[6]  *See W.O. Brisben Companies, Inc. v. Krystkowiak,* 66 P.3d 133, 136 (Colo. App. 2002), *aff'd on other grounds*, 90 P.3d 859 (Colo. 2004).  Lupton Associates bases its claim for interference on the allegation that Mr. Morris and Mr. Wolenski improperly caused EMP to terminate the Amended Sale Contract with Lupton Associates.  Docket No. 16 at 15, ¶¶ 84-85.  Plaintiffs respond that Mr. Morris and Mr. Wolenski cannot be liable for interference with the contract because they were corporate officers acting, in part, to serve EMP's interests.  Docket No. 22 at 10.

---

[6] The parties' arguments concerning Lupton Associates' fifth and sixth counterclaim are based on the premise that Colorado law applies.  Therefore, the Court will operate under the same premise.  See *Grynberg*, 538 F.3d at 1346 ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Under Colorado law, a corporate agent who, "while acting within the scope of official duties, causes his or her principal to breach a contract generally will not be held liable for tortious interference with that contract." *W.O. Brisben Companies*, 66 P.3d at 136. The agent will not be liable if he or she "acted, in part at least, to serve the corporation's interests," as opposed to if "the agent was motivated out of personal animus towards one or both of the contracting parties." *Id.* (internal quotations omitted). "[A]n agent acts improperly only when he or she is motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties." *Id.* at 137.

Lupton Associates argues that the alleged interference by Mr. Morris and Mr. Wolenski was improper because it "was designed primarily to benefit them individually by means of personal gain with no reasonable benefit to EMP," arguing that the transaction with Potential Buyer "was a stock sale, that . . . served only the financial gain of the stockholders." Docket No. 24 at 7. However, nowhere in the answer and counterclaims does Lupton Associates allege that Mr. Morris and Mr. Wolenski were motivated solely by the desire to harm Lupton Associates or interfere in its contract with EMP. This omission is fatal to Lupton Associates' claim for interference with a contract by corporate officers. *See W.O. Brisben Companies,* 66 P.3d at 137.

Moreover, Lupton Associates' counterclaims allege that "EMP, Morris, and Wolenski . . . wanted to sell to Potential Buyer," and that "EMP, Morris, and Wolenski decided to eliminate the troublesome contractual obligation" between EMP and Lupton Associates. Docket No. 16 at 7, ¶¶ 31-32. These statements indicate that EMP, Mr. Morris, and Mr. Wolenski were united in their motivation to sell EMP stock to Potential

Buyer and terminate the Amended Sale Contract, contrary to Lupton Associates' argument that the officers' alleged interference with the contract did not serve EMP's interests.[7]  The Court will dismiss Lupton Associates' fifth counterclaim against Mr. Morris and Mr. Wolenski.

### C.  Civil Conspiracy

"[C]onspiracy 'is a derivative cause of action that is not actionable per se.'"  *Fine v. Tumpkin*, 330 F. Supp. 3d 1246, 1257 (D. Colo. 2018) (quoting Double *Oak Const., L.L.C. v. Cornerstone Development Intern., L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) *overruled on other grounds by L.H.M. Corp., TCD v. Martinez*, 499 P.3d 1050 (Colo. 2021)) (applying Colorado law.  A civil conspiracy claim may not be sustained where the acts underlying the alleged conspiracy do not constitute a cause of action.  *Id.* Here, Lupton Associates' claim for civil conspiracy against Mr. Morris and Mr. Wolenski are based on the allegation that Mr. Morris and Mr. Wolenski improperly caused EMP to terminate its contract with Lupton Associates.  Docket No. 16 at 15, ¶¶ 88-89.  As stated above, Lupton Associates has failed to state a claim for tortious interference.  Thus, Lupton Associates has likewise failed to state a claim for civil conspiracy.

## IV. CONCLUSION

Therefore, it is

---

[7] Lupton Associates also argues that "the transaction with the Potential Buyer was a *stock sale*[ ] that did not serve to benefit EMP at all, but instead served only the financial gain of the stockholders selling their stock."  Docket No. 24 at 7.  This argument would have the Court ignore the corporate form for closely held companies and presume that actions taken by principals who are shareholders were done in the interest of themselves, not the company.  The Court declines to do so.

ORDERED that Plaintiffs' Motion for Judgment on the Pleadings Dismissing the Fourth, Fifth, and Sixth Claims for Relief of Alan Lupton Associates Inc.'s Counterclaims [Docket No. 22] is **GRANTED**.  It is further

ORDERED that defendant Alan Lupton Associates' fourth, fifth, and sixth counterclaims are **DISMISSED**.

DATED September 26, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge