**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC.,
a Colorado corporation, DAVID P. MORRIS, an
individual, and DAVID J. WOLENSKI, an individual,

       Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York
corporation,
       Defendant.

---

**PLAINTIFFS' LIMITED OBJECTION TO THE MAGISTRATE JUDGE'S ORDER ON PLAINTIFFS' MOTIONS TO COMPEL SUBPOENAS TO NON-PARTIES VIASAT SERVICES HOLDING COMPANY AND PGM CORP. (ECF #127)**

---

Plaintiffs Electro-Mechanical Products, Inc., David P. Morris, and David J. Wolenski ("EMP"), by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., pursuant to Fed. R. Civ. P. 72(a), (b) and 28 U.S.C. §§ 636(b)(1)(A), (B), hereby file this limited objection to Magistrate Judge Prose's September 21, 2023 Order and state and allege the following:

**I.  Introduction.**

On September 21, 2023 United States Magistrate Judge Susan Prose issued an order on Plaintiffs' Motions to Compel Subpoenas to Non-Parties Viasat Services Holding Company and PGM Corp. (ECF #127). Magistrate Judge Prose's Order is detailed, and she carefully considered a number of complicated legal issues in ruling on the Motions. Through subpoenas to Viasat Services Holding Company ("Viasat") and PGM Corp. ("PGM") EMP has sought engineering

1

drawings and sales records for parts made by PGM and sold to Viasat and other customers of PGM.

This case involves claims for breach of contract between EMP and Alan Lupton Associates, Inc. ("ALA"). One of the terms of this contract states "[ALA] shall not directly or indirectly solicit orders for or sell any products competitive with [EMP's] products without its written consent." EMP learned, during discovery, that ALA has been soliciting orders for and selling parts to a competitor of EMP, PGM, and believes the parts could be made by EMP. Specifically, ALA has been selling parts made by PGM to Viasat, as well as parts that PGM made for Benchmark, Jabil, Nypro, and others. EMP's subpoena to Viasat requested "[d]ocuments and records reflecting Viasat's purchase of any parts or assemblies from any manufacturer represented by Alan Lupton Associates, Inc., including what parts and assemblies were purchased and the sales price for the purchase" and "[d]ocuments and records reflecting Viasat's purchase of any parts or assemblies purchased from PGM Corp., including what parts and assemblies were purchased and the sales price for the purchase."

The drawings were requested so that EMP could review the drawings to determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's products. Because these are custom made parts using highly technical precision machining, EMP sought drawings with all requisite detail required for a contract manufacturer to produce the part, and containing all part dimensions, raw material selections, feature tolerances, post-processing requirements (e.g., plating, brazing, grinding, painting, heat treating, etc.), and design notes, etc. The sales figures are also an element of EMP's damages on its claim of breach of contract.

In order to investigate the ALA/PGM relationship, EMP sent a subpoena to PGM requiring production of documents pertaining to all PGM products sold to customers brokered (sold, caused to be sold, or otherwise earned a commission) by ALA. In response to this subpoena, PGM produced a two-page document, that purports to show sales to the ALA-brokered customers with very limited information about those parts.

## II.   Limited Objection to Magistrate Judge Prose's Order.

In the Order of September 21, 2023, Magistrate Judge Prose has granted the Plaintiffs Motions to Compel subpoenas to Viasat and PGM and ordered them to produce the sales information for parts manufactured by PGM and sold to Viasat and other PGM customers that ALA marketed to or brokered for the past three (3) years. Magistrate Judge Prose further ordered that Viasat and PGM shall produce an identification of the parts sold by PGM to Viasat and other customers sufficiently to allow EMP to understand what the parts are. Specifically, the Court found:

> Accordingly, the court GRANTS the Motion IN PART. Viasat shall produce unredacted sales data (quantities, prices, dates, and identification of the parts) for the parts that ALA marketed or brokered to it, or that Viasat purchased from PGM or C&M Precision, for the past three years measured from March 31, 2023 (the last date that EMP served the Viasat Subpoena). Viasat may designate all such information as Confidential under the Protective Order. The parts shall be identified sufficiently to allow EMP to understand what the parts are, such as by part numbers with a catalog or other document identifying the parts by part number.

ECF 127 at 16.

With respect to PGM, the Court held:

> In short, EMP has shown that the sales data it requests from PGM is relevant and proportional to the case. PGM has not shown untimeliness, undue burden, or confidentiality that would support quashing or modifying the PGM Subpoena as to the sales information. The motion to compel PGM is granted in part, to the extent that PGM shall produce complete, unredacted sales data as to the four current

3

customers that were marketed or brokered by ALA, for the three years preceding January 11, 2023. PGM shall also provide a document (whether a part list, catalog, or otherwise) that describes the parts sufficiently for EMP to understand the types of parts. PGM may designate all of this information under the Protective Order.

ECF 127 at 18.

Importantly, in ruling on the Motions to Compel and reviewing the limited information that was originally provided by PGM (*See*, PGM's productions filed under seal as Exhibit 1 and Exhibit 2), Magistrate Judge Prose found, **"As to the sales figures, the table of PGM's 2021 and 2022 sales to Viasat does not suffice because it does not adequately identify the parts to allow EMP to determine which parts were sold or if EMP could manufacture the parts."** (emphasis added). ECF 127 at 8. Further, "[y]et, PGM's objections to producing further sales data do not win the day. Although its productions in January 2023 and March 2023 provide some of the requested information, as noted above, those documents do not sufficiently identify the parts in question." ECF 127 at 17. While Magistrate Judge Prose's Order requires both PGM and Viasat to provide a document that describes the parts sufficiently for EMP to understand the types of parts, she does not specify the level of detail necessary for EMP's engineers to make a determination as to whether they could manufacture the parts. As noted above, the parts in question are custom parts and not the type that would be found in catalogs. They are highly technical, precision machine made parts designed by and for specific customers. EMP's engineers need detailed descriptions so they can adequately assess whether EMP is capable of manufacturing the parts and, if so, the corresponding sales would be a significant portion of EMP's damages in this case. Magistrate Judge Prose's Order clearly shows that a general description of a part without any specific detail does not sufficiently identify the parts in question.

EMP files this limited objection to Magistrate Judge Prose's Order based upon the fact that the Order does not sufficiently identify how PGM and Viasat are to identify the parts in question so that EMP can know exactly what they are and whether or not they can manufacture those parts. A discovery dispute has arisen between the Plaintiffs and PGM and between the Plaintiffs and Viasat. To date, PGM has not produced any records pursuant to Magistrate Judge Prose's order. Viasat has produced some records which reflect purchases of parts from PGM, however, these documents only generally describe the parts in question such as "cover," "access-test connector", "spring finger", "hardware", "antenna" etc. *See*, Viasat's production filed under seal as Exhibit 3 and Exhibit 4[1]. These part descriptions are not sufficient to allow EMP's engineers to make a determination as to whether these parts could have been made by EMP and thus constitute a violation of the ALA contract with EMP. Through discussions with counsel for Viasat and through e-mail correspondence, Viasat has refused to produce any additional description of the parts. In an effort to try to resolve this discovery dispute undersigned counsel has sent an e-mail to counsel for PGM and Viasat requesting a limited amount of information for the parts in question.

EMP is requesting the following descriptions for the parts:

1. **Material** – include specific alloy.
2. **Approximate Dimensions** – if the dimensions of the part can be reasonably expressed in terms of length, width, and height, then report those dimensions accordingly. For shapes that are circular, report largest diameter down to smallest diameter.

---

[1] The sales records of Viasat show over $9 million in sales.

3. **Tightest Tolerance** – identify the tightest tolerance called out in the engineering drawings, and the type of feature to which that tolerance applies (e.g., length, diameter, flatness, etc.).

4. **Precision Grinding** – whether the part requires *precision* grinding and, specifically, how this attribute is called out on the drawing (e.g., by way of a finish requirement, or numerically as a minimum profilometer reading).

Neither Viasat nor PGM are willing to provide this information. Providing these part descriptions does not implicate any of the concerns noted by the Court in the denial of EMP's request for engineering drawings. The Court found that it would be unduly burdensome on Viasat to have to secure the permission of its customers to provide the engineering drawings of 134 different parts or assemblies. Viasat will not have to secure such permission to provide the very basic identifying information set forth above, and thus the concerns of undue burden are inapplicable to these descriptions. Moreover, no competitive harm will come to Viasat or PGM by providing these basic descriptions. These basic descriptors will in no way allow EMP to actually produce the parts or to incorporate so-called trade secret information into EMP's own products.

Instead, these basic descriptors will allow EMP to determine, for each part, if it falls within the scope of EMP's manufacturing capabilities, thereby making it a competitive product under the terms of the agreement with ALA. These basic descriptors will confirm to EMP if a product is made from a material that EMP works with, is dimensionally compatible with EMP's equipment, has tolerances that EMP can meet and provide, and that the product does not require any special processes that are outside of EMP's expertise. Assuming all those elements are met, then the product would be something EMP could produce, and a competitive product. Critically, however,

none of this information would allow EMP to actually manufacture the products or assemblies because the precise details required for manufacturing will not be disclosed. The Court should grant this request, since the concerns advanced by Viasat and PGM about undue burden and alleged competitive disadvantage are not applicable to these basic descriptors.

Plaintiffs are requesting that this Court modify Magistrate Judge Prose's Order with respect to her order regarding the identification of the parts and order that the descriptions set forth above be provided by PGM and Viasat for each part sold/brokered by ALA.

Respectfully submitted this 5th day of October, 2023.

        **ROBINSON WATERS & O'DORISIO, P.C.**

        */s/ Anthony L. Leffert*
        Anthony L. Leffert, #12375
        Carl A. Hjort III, #42108
        1099 18th Street, Suite 2600
        Denver, CO 80202
        (303) 297-2600
        (303) 297-2750 (f)
        aleffert@rwolaw.com
        chjort@rwolaw.com
        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023 a true and correct copy of the foregoing was delivered via CM/ECF electronic service to the following:

**MOYE WHITE, LLP**
William F. Jones, #35294
Jennifer Knight Lang, #50034
Patrick R. Akers, #54803
16 Market Square, 6th Floor
1400 16th Street
Denver, CO 80202-1486
billy.jones@moyewhite.com
jennifer.lang@moyewhite.com
patrick.akers@moyewhite.com
*Attorneys for Defendants*

**SHERIDAN ROSS, PC**
Patrick A. Fitch
1560 Broadway, Suite 1200
Denver, Colorado 80202-5145
pfitch@sheridanross.com
*Attorneys for Viasat Services Holding Co.*

**LACY KATZEN, LLP**
John M. Wells
Jennifer L. Chadwick
600 Bausch & Lomb
Rochester, NY 14604
jwells@lacykatzen.com
jchadwick@lacykatzen.com
*Attorneys for PGM Corp.*

*/s/ Nina Olson*
Nina Olson, Paralegal