IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC.,
a Colorado corporation, DAVID P. MORRIS, an
individual, and DAVID J. WOLENSKI, an individual,

        Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation,

        Defendant.

**NONPARTY VIASAT SERVICES HOLDING COMPANY'S RESPONSE TO PLAINTIFFS' LIMITED OBJECTION TO THE MAGISTRATE JUDGE'S ORDER ON PLAINTIFFS' MOTIONS TO COMPEL SUBPOENAS TO NON-PARTIES VIASAT SERVICES HOLDING COMPANY AND PGM CORP. (ECF NO. 127) (ECF NO. 131)**

Nonparty Viasat Services Holding Company ("Viasat"), by and through its undersigned counsel, provides the following response to Plaintiffs Electro-Mechanical Products, Inc., David P. Morris, and David J. Wolenski's ("EMP") Limited Objection to Magistrate Judge Prose's Order on Plaintiffs' Motion to Compel (ECF No. 127) (ECF No. 131).

EMP presents no actionable objections under Fed. R. Civ. P. 72, ignoring the heightened standard of review in favor of generalized and non-cognizable grievances. EMP identifies no portion of the Magistrate Judge's Order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). EMP instead asks this Court to interpret part of the Order that needs no interpretation, and despite the Magistrate Judge having set a hearing on compliance with the Order for October 19. ECF No. 127 at 25.

On the merits, EMP improperly sought nonparty Viasat's proprietary and trade secret manufacturing schematics and blueprints regarding various critical national security products that Viasat, Inc. manufactures for its government customers, including battlefield radios used by U.S. Armed Forces and the communications equipment installed on Air Force One and similar government VIP aircraft. Critically, EMP has **consented** to the Magistrate Judge's Order denying its request for these materials, as EMP did not object to this part of the Order. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). And nonparty Viasat has produced all of its information responsive to any reasonable interpretation of the scope of EMP's underlying subpoena and the Magistrate Judge's Order. Yet EMP asks this Court to reinterpret the Magistrate Judge's Order compelling the production of sales data to somehow encompass the production of the same types of highly technical manufacturing details the Magistrate Judge properly held EMP is not entitled to receive. EMP's request should be denied.

**1.     Plaintiffs Ignore the Legal Standard for Challenging the Magistrate Judge's Order**

EMP's Limited Objection provides no basis to alter the Magistrate Judge's Order. Rule 72(a) covers objections to non-dispositive matters like the discovery order at issue. It states: "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is ***clearly erroneous or*** is ***contrary to law***." Fed. R. Civ. P. 72(a) (emphases added).[1]

EMP does not mention the applicable standard of review anywhere in its Limited Objection or identify any specific instances of clear error or findings contrary to law. Nor could it have, as

---

[1] This contrasts with Rule 72(b), which governs dispositive motions and instructs that "[t]he district judge must determine ***de novo*** any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b) (emphasis added). While EMP claims it brought its Limited Objection under Rules 72(a) *and* (b), only Rule 72(a) applies and the heightened "is clearly erroneous or is contrary to law" standard governs its Limited Objection.

the Limited Objection cites no precedent in this Court or elsewhere that would call the Magistrate Judge's findings into question. EMP does not even use the words "error" or "law" anywhere, much less perform the analysis needed to justify modifying the Magistrate Judge's Order. The focus of EMP's Limited Objection is, instead, that it believes the Order leaves open to interpretation the level of detail required in the ordered production of sales data. *See* ECF No. 131 at 4-5. EMP complains that "the Order does not sufficiently identify how PGM and Viasat are to identify the parts in question" but does not argue that this ambiguity constitutes clear error or a finding contrary to law. It does not. The Court should set aside EMP's Limited Objection and let the Order stand.

**2.   EMP's Objection Contradicts Its Acceptance of the Order's Denial of Its Efforts to Compel Viasat's Proprietary and Trade Secret Manufacturing Specifications**

The Order giving rise to the Limited Objection here arose out of a document subpoena issued by EMP to nonparty Viasat and another nonparty, PGM. EMP's subpoena to Viasat requested "[d]ocuments and records ***reflecting ViaSat's purchase of any parts or assemblies*** from any manufacturer represented by Alan Lupton Associates, Inc. [/ PGM Corp. / C & M Manufacturing Company], including ***what parts and assemblies were purchased and the sales price for the purchase***." ECF No. 127 at 2; ECF No. 131 at 2 (emphases added). EMP's underlying Motion to Compel sought from nonparty Viasat (1) unredacted sales data reflecting Viasat's purchase of parts or assemblies and (2) technical blueprints and schematics showing the manufacturing specifications and tolerances of the parts purchased. *See, e.g.*, ECF No. 127 at 3-4.

The Magistrate Judge ordered nonparty Viasat to produce (1) the unredacted sales data but denied EMP's efforts to compel (2) the technical blueprints and engineering schematics. *See id.* at 16, 20-24. In denying EMP's request for technical materials on several grounds, the Magistrate Judge found that "ViaSat shows undue burden in the quantity of different parts and vendors

—3—

involved" and "in the quantity of parts for which it would need to notify its contract partners of the disclosure." *Id.* at 20. The Order found that "ViaSat and PGM both respectively show a potential for competitive harm to themselves and their contract parties that outweighs EMP's need for these documents." *Id.* at 21. And EMP "does not appear to dispute that the engineering drawings are trade secret or competitively sensitive not only to ViaSat and PGM but also to their customers." *Id.* The Magistrate Judge further reasoned that Plaintiffs' principals having access to these sensitive documents "would enable EMP to design and manufacture 'copycat' parts" because "once [EMP's principals] review the engineering drawings, they would not be able to separate that knowledge from the competitive decisions they make for EMP's business." *Id.* at 22. Because the Order denied EMP's request for these technical documents on grounds of undue burden and risk of competitive harm, the Magistrate Judge did not reach nonparty Viasat's separate scope argument—that "EMP's motion seeks 'production of technical blueprints and diagrams that Plaintiffs never requested in the subpoena.'" *Id.* at 4, 20.[2]

EMP's Limited Objection contests none of these factual findings or legal conclusions. EMP has waived any challenge to the denial of these engineering blueprints. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). EMP's waiver is consequential because its Limited Objection and ongoing pursuits before the Magistrate Judge

---

[2] Viasat also argued that the subpoenaed entity—Viasat Services Holding Company—has no relation to the business activities at issue here and lacks possession, custody, or control of any responsive documents. Viasat respectfully disagrees with the Order's finding that Viasat, Inc.'s willingness to facilitate production of sales records by Defendant and other nonparties suggests that nonparty Viasat Services Holding Company could obtain these documents. But Viasat also recognizes this holding does not rise to the elevated level of "clear error" that could sustain an appropriate objection under Rule 72(a), and so Viasat does not object to this portion of the Order.

reflect an effort to obtain the same proprietary data it was denied, but which denial it did not contest.

The subpoena sought only "records reflecting ViaSat's purchase of any parts or assemblies . . . including what parts and assemblies were purchased and the sales price for the purchase." ECF No. 127 at 2. But EMP asks to modify the Order to somehow declare technical manufacturing parameters like "specific alloy," "dimensions of the part," "tightest tolerance," and—perhaps most tellingly—"whether the part requires *precision* grinding and, specifically, **how this attribute is called out on the drawing**" to be necessary components of nonparty Viasat's production of sales documents. ECF No. 131 at 5-6 (bold emphasis added). But this request merely confirms EMP never cared about the sales data awarded by the Magistrate Judge, and only about the technical manufacturing details it sought, was denied, and chose not to include in its objections. EMP's submission to this Court asking to modify the Order acknowledges the irrationality of its position. It must ask for production of how a specific technical "attribute is called out *on the drawing*" because it knows the sales documents it subpoenaed do not and would not contain these details.

The four-pronged demands in EMP's Limited Objection are not the only such demand for technical data made since the Order issued. EMP has issued four lists of demands for proprietary information about the purchased parts that have nothing to do with nonparty Viasat's subpoenaed sales records or an identification of the parts, and everything to do with the parts' precise technical characteristics and manufacturing specifications. To illustrate, EMP's second list of demands consisted of fourteen categories of information, including "GD&T Callouts *used in the Engineering Drawings*," "Drilled and/or Threaded Hole Description," "Notes and Instructional Messages," and "Tooling & Fixturing." *See* ECF No. 136-1 (emphasis added). Within this demand

alone, EMP twice acknowledged this information would not appear in the sales documents compelled by the Court. First, it asked specifically for "Geometric Dimensioning & Tolerancing callouts that are used in the drawings, as well as what features they apply to, and the numerical constraints being applied by each GD&T callout." *Id.* at 2. Second, EMP offered that it "is willing to review the drawings but not copy or possess them." *Id.* at 1. But the ship sailed on EMP obtaining these proprietary and trade secret materials when the Magistrate Judge denied its Motion and it did not object to that portion of the Order. EMP is only entitled to unredacted sales records.

None of these other classes of information sought by Plaintiffs are of the kind contained in sales data or documentation. And they raise the same serious concerns briefed in nonparty Viasat's opposition—for example, that Plaintiffs seek the precise dimensions and materials used in parts that Viasat incorporates into extremely sensitive national security products like battlefield radios and the equipment Viasat installs on Air Force One and similar government VIP aircraft. EMP's Limited Objection offers no evidence or case law supporting its request. It instead baldly (and incorrectly) asserts that "[p]roviding these part descriptions does not implicate any of the concerns noted by the Court in the denial of EMP's request for engineering drawings." ECF No. 131 at 6. EMP also asserts (without any citation) that "Viasat will not have to secure such permission [from its customers or the U.S. Government] to provide the very basic identifying information set forth above." *Id.* Wrong on both counts. Nonparty Viasat **would** have to notify its customers and the Government—in fact, it is **prohibited** from providing the information sought without prior government approval. *See, e.g.*, Ex. 1 (Declaration of Colin Ward), ¶¶ 6-10. Nor does EMP's assertion grapple with any export control and other legal requirements that would govern the release of the information being sought that is found only in Viasat's engineering schematics and

not in its sales documentation. *Id.* at ¶¶ 7-10. EMP cannot waive away the undue burdens found by the Magistrate Judge through false and unsupported attorney argument.

EMP also speculates that the Magistrate Judge's findings about competitive harm would not present themselves here because "[t]hese basic descriptors will in no way allow EMP to actually produce the parts or to incorporate so-called trade secret information into EMP's own products." ECF No. 131 at 6. This is again false and misleading. The Magistrate Judge's Order does not hold narrowly that competitive harm only occurs upon the forcible disclosure of **all** technical parameters necessary to manufacture copycat parts. The unobjected-to Order held that EMP's principals "are mechanical engineers by training" and that, as competitive decision makers, "once they review the engineering drawings, they would not be able to separate that knowledge from the competitive decisions they make for EMP's business." ECF No. 127 at 22 (citing *BIAX Corp. v. Nvidia Corp.*, No. 09-CV-01257-PAB-MEH, 2009 WL 3202367, at *2-3 (D. Colo. Oct. 5, 2009)). EMP was denied access to these documents and the information they contain. It now asks for a subset of information contained in these trade secret documents that does not exist in nonparty Viasat's sales database. That this information comes only from the documents the Magistrate Judge denied to EMP confirms that allowing EMP's competitive decision makers to review it presents the same competitive harm correctly found by the Magistrate Judge.

EMP's Limited Objection gives no reason and cites no authority supporting a modification of the underlying Order. And EMP's request for categories of information it already unsuccessfully sought to obtain from nonparty Viasat's trade secret schematics cannot fall within the scope of the Court's order, which compelled only unredacted sales documents.

### 3. Nonparty Viasat Has Already Complied with the Court's Order to Produce Complete, Unredacted Sales Information, Mooting Plaintiffs' Objections

Despite EMP's continued demands, nonparty Viasat has complied with even a maximalist reading of the Magistrate Judge's Order. Viasat has now produced for review by EMP's counsel and principals its records "reflecting ViaSat's purchase of any parts or assemblies . . . including what parts and assemblies were purchased and the sales price for the purchase." *Id.* at 2. Viasat has no more information reflecting its purchases of parts and assemblies to produce.

Viasat made a comprehensive production of unredacted sales data on September 29, 2023, in response to the Court's Order of September 21. *See id.* at 16. Viasat marked this production "Confidential" under the Protective Order, which allows Plaintiffs' principals to review it. *See* ECF Nos. 131-3, 131-4. Viasat's September 29 production included a complete report from Viasat's Oracle sales and purchasing recordkeeping database regarding Viasat's purchases of parts through Defendant Alan Lupton Associates, Inc. or from Nonparties Precision Grinding & Manufacturing Corporation or C&M Precision between March 31, 2020, and March 31, 2023. *See id.* Viasat's report includes information from 808 different purchase order line items reflecting the purchase of more than 15,200 individual parts and components. *See id.* This report contains both data from the underlying purchase orders and **all** the descriptive information that Viasat engineers have input into Viasat's database that further describes the parts and their intended applications. Examples of descriptive information appear in the columns for "Item Description," "Product Line," "Purchase Order Commodity Code," and "Project Name." Viasat also included in its production an index of Purchase Order Commodity Codes that provide narrative descriptors corresponding to the numerical "PO Comm Codes" in the produced chart. *See id.*

Viasat believes this production fully complies with the Court's Order. It includes "unredacted sales data (quantities, prices, dates, and identification of the parts)," the narrative descriptions of the parts Viasat itself uses in its sales database to "understand what the parts are," and a "catalog or other document" sufficient to understand the Purchase Order Commodity Codes. ECF No. 127 at 16. Critically, and as noted previously, Viasat's production includes all of the descriptive information it keeps in its sales database in the normal course of business. While Plaintiffs may not find Viasat's descriptions sufficient for its litigation goals, Viasat relies on these descriptions because they are sufficient for its internal business purposes to identify these parts.

EMP has never alleged—and does not allege in its Limited Objection—that the additional information it seeks would appear in the records it actually subpoenaed: those "reflecting ViaSat's purchase of any parts or assemblies . . . including what parts and assemblies were purchased and the sales price for the purchase." *Id.* at 2. To the contrary, EMP has acknowledged that the additional information it seeks would only appear in the trade secret schematics that the Magistrate Judge denied it. EMP asserts without evidence that "Viasat has refused to produce any additional description of the parts" beyond what it already produced. Not so. True, Viasat has no more responsive documents to produce within any reasonable understanding of the scope of EMP's subpoena. But nonparty Viasat did not make its production and tell EMP to go fish.

During a telephonic meet and confer between counsel for EMP and counsel for Viasat after Viasat made its production and EMP demanded more, Viasat offered to review the production with counsel for EMP and try to gather more context for parts or assemblies EMP could not identify in good faith. *See* Ex. 2 (Declaration of Patrick Fitch), ¶¶ 3-5. Nonparty Viasat made this offer after inviting EMP to actually review Viasat's production, since EMP emailed to complain about the

insufficiency of Viasat's production just 15 minutes after receiving it. EMP's conduct makes clear that no production that omits the full list of characteristics taken from Viasat's trade secret blueprints will suffice. But none of EMP's gripes reflect (or even identify) anything clearly erroneous or contrary to law in the Order. Nor does it create ambiguity where none exists.

**4.   Conclusion**

For these reasons, nonparty Viasat asks the Court to uphold the Magistrate Judge's Order (ECF No. 127) and not modify it in any way.

Respectfully submitted,

Dated:  October 18, 2023

By:  s/ Patrick A. Fitch
Patrick A. Fitch
   pfitch@sheridanross.com
Angela J. Bubis
   abubis@sheridanross.com
Scott R. Bialecki
   sbialecki@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
Telephone:  303-863-9700
Facsimile:   303-863-0223
Email:       litigation@sheridanross.com

*Attorneys for Nonparty*
*Viasat Services Holding Company*