## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado corporation,

     Plaintiff,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation,

     Defendant.

---

### NONPARTY VIASAT SERVICES HOLDING COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF NO. 168)

---

Nonparty Viasat Services Holding Company ("Viasat") opposes Plaintiff's Motion for Reconsideration (ECF No. 168) of the Magistrate Judge's September 21 Order on Plaintiffs' Motions to Compel (ECF No. 127) ("Order"). EMP's motion does not meet the high legal standard for reconsideration. It simply instead regurgitates the same laundry list of grievances that have been raised, reraised, and reraised again across the original motion to compel briefing, two subsequent status conferences with the Court, and in EMP's now-withdrawn objections to the Chief Judge challenging the Order. EMP's scattershot approach to discovery here is unjustified and, quite frankly, vexatious, causing a disinterested nonparty[1] to this case to expend over $80,000 in legal fees to date briefing the same issues again, and again, and now again.

---

[1] EMP suggests throughout its motion that nonparty Viasat has acted in bad faith and aims to "thwart EMP in its case against [Viasat's] partner ALA." ECF No. 168 at 6. This unsupported prattle is categorically false. Viasat does not care a whit who prevails here. Viasat has only one interest here: to avoid the excessive burdens of being forced to collect, obtain permission to produce, and then ultimately turn over highly sensitive engineering drawings to a party that never actually subpoenaed those records in the first place. *See infra*, § 3.2.

The discovery dispute here could not be simpler. The Court's Order directed nonparty Viasat to produce unredacted sales data, but properly denied EMP's efforts to compel the various technical blueprints and engineering schematics that relate to highly sensitive national security programs like battlefield radios and equipment Viasat installs on Air Force One and similar government VIP aircraft. Viasat complied with the Order more than two months ago by producing all its requested sales records under the "Confidential" tier of the protective order. But there was no basis then—and there is still none now—to order nonparty Viasat to produce anything more.

Indeed, EMP cites no new facts or law that would justify the disfavored remedy of reconsideration. Rather, all of EMP's arguments are unavailing and most have also been waived. For instance, EMP's argument that the Court should revisit its refusal to compel highly sensitive manufacturing blueprints is waived because EMP did not object to this part of the Order under Rule 72(a) when filing its formal objection with the Chief Judge. Meanwhile, EMP's alternative argument that the Court should expand its Order to compel disclosure of certain technical details about the parts short of producing the blueprints themselves improperly reargues both the position this Court has already expressly rejected and EMP's withdrawn objections. Both arguments also rely heavily on misstatements of both the facts and the language of the Order.

Nonparty Viasat respectfully asks the Court to reject EMP's motion so that it can finally extricate itself from this litigation once and for all.

## 1.     Reconsideration Requires a Change in Law, New Evidence, or Clear Error

"The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration." *E.g.*, *Lehman v. McKinnon*, No. 18-cv-00952-PAB-NRN, 2020 U.S. Dist. LEXIS 230012, at *1 (D. Colo. Dec. 8, 2020). "Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires." *Id.*

"Judges in this district generally 'have imposed limits on their broad discretion to revisit interlocutory orders.'" *SRS Acquiom Inc. v. PNC Fin. Servs. Grp., Inc.*, No. 1:19-cv-02005-DDD-SKC, 2019 U.S. Dist. LEXIS 204088, at *2 (D. Colo. Nov. 25, 2019) (quoting *Spring Creek Expl. & Prod. Co., v. Hess Inv. II*, No. 14-cv-00134-PAB-KMT, 2015 U.S. Dist. LEXIS 73114, at *2 (D. Colo. June 5, 2015)). "As a general principle, courts may grant motions for reconsideration when there is '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Nelson v. Mayorkas*, No. 1:22-cv-00100-NYW-SBP, 2023 U.S. Dist. LEXIS 177236, at *5 n.2 (D. Colo. Oct. 2, 2023) (quoting *Armata v. Certain Underwriters at Lloyd's London – Syndicate 1861*, No. 21-cv-00160-NYW-STV, 2023 U.S. Dist. LEXIS 142666, at *8 (D. Colo. Aug. 15, 2023); *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

### 1.1.   EMP Identifies No Intervening Law, New Evidence, or Clear Error

EMP's motion fails from the start. It identifies no new law that might justify changing the Order. In fact, EMP identifies no legal error at all. Nor does it cite any new evidence supporting EMP's requested relief.[2] These omissions are glaring signs that EMP's motion should be denied.

In the barest effort to support its request for relief, EMP relies exclusively on six "New Factual Developments in the Case" that supposedly justify reconsideration. *See* ECF No. 168 at 3-

---

[2] "Evidence" here means **discoverable information**, not developments in the metes and bounds of litigation. To illustrate, this Court evaluates "new evidence" according to whether it was "previously accessible, disclosable, or available." *Petrie v. GoSmith, Inc.*, No. 18-cv-01528-CMA-MEH, 2020 U.S. Dist. LEXIS 11130, at *7 (D. Colo. Jan. 23, 2020). "Accessible, disclosable, or available" refers to substantive discovery—documents and testimony—not whether the discovery schedule changed. For example, in *Zander v. Craig Hospital*, the Court granted reconsideration based on newly available **documents** that were "central to the determination" of the underlying motion. 267 F.R.D. 653, 656 (D. Colo. 2010).

4. But none of the purely procedural developments that EMP tries to dress up as "new facts" even remotely support reconsideration here. Indeed, "new facts" 1 (EMP's objection to the Chief Judge), 2 (first status report), 3 (Court's first status conference), and 6 (PGM's November 13 production) are plainly irrelevant to the merits of EMP's request for reconsideration and seemingly have no bearing on nonparty Viasat at all. And "new facts" 4 and 5 would be just as irrelevant except for EMP's misrepresentation of this Court's statements at the November 9 status conference. As discussed in Section 3.1, EMP falsely asserts that "the Court reopened expert discovery in this case for the limited purpose of allowing Plaintiff to retain an engineering expert to review and opine on the documents received from PGM and Viasat." ECF No. 168 at 3. In fact, the Court reopened expert discovery solely to allow an expert to review any Attorney's Eyes Only information PGM may produce under the Order. *See infra*, § 3.2. As the Court will recall, Viasat designated its sales data "Confidential" under the protective order, and thus this Court need not— and did not—reopen any aspect of discovery of nonparty Viasat.

Put simply, EMP fails to present a single relevant change in circumstance that could justify this Court reconsidering its earlier Order. EMP briefs no rule or precedent supporting its requested relief—it did not even discuss the appropriate standard of review. It appears that EMP is simply asserting that later changes to a discovery schedule warrant reconsideration of a prior discovery order. But nonparty Viasat knows of no case law supporting this argument, nor does such a rule make logical sense. This is particularly true when discovery involves disinterested nonparties, like Viasat here. Creating new law in which changes to the schedule of a case merit reconsidering prior orders places an unduly burdensome specter of perpetual entanglement for disinterested nonparties in a case. Nonparty Viasat has experienced this firsthand, receiving EMP's underlying subpoena nearly **nine months ago**, even then after the close of fact discovery under the schedule at the time.

EMP's motion disregards the standard and required analysis for a motion for reconsideration. EMP offers no legal error, new evidence, or other change of circumstance that would warrant the Court taking the extraordinary step of reconsidering its Order.

### 1.2. EMP's Withdrawal of Its Pending and Fully Briefed Rule 72 Objection Moots Reconsideration as to the Required Scope of Production under the Order

EMP filed a Limited Objection to the Order with the Chief Judge under Fed. R. Civ. P. 72(a) alleging "the Order does not sufficiently identify how PGM and Viasat are to identify the parts in question so that EMP can know exactly what they are and whether or not they can manufacture those parts." *See* ECF No. 131 at 5. EMP then sought reconsideration of the Order asking for the same relief it requested in its now-withdrawn Limited Objection. *Compare id.* at 5–6, *with* ECF No. 168 at 8–9. EMP's Limited Objection was fully briefed.[3] *See* ECF No. 184.

If EMP wanted this relief, it should have let Chief Judge Brimmer rule on its Limited Objection. EMP's misguided decision to withdraw its pending and fully briefed Objection renders the Order final and moots any further review of the Order by this Court. While it is rare for a party to erroneously withdraw pending objections in favor of a motion for reconsideration, courts across the country consider such a withdrawal as acceptance of the Order and waiver of future challenge before the trial court. *See, e.g.*, *Barney v. Zimmer Biomet Holdings, Inc.*, No. 3:17-cv-00616 JD, 2020 U.S. Dist. LEXIS 62119, at *6 (N.D. Ind. Apr. 8, 2020) ("Ms. Barney had an opportunity to seek this Court's review of the magistrate judge's decision but withdrew her objection and thus her opportunity for review . . . ."); *Nexpay, Inc. v. Comdata Network, Inc.*, No. 3:14-cv-1749, 2017 U.S. Dist. LEXIS 209261, at *1–2 (M.D. Tenn. Dec. 20, 2017) (accepting a report and recommendation based on withdrawal of timely filed objections); *Safety Dynamics, Inc. v. Gen.*

---

[3] Viasat expended over $9,000 responding to EMP's now-withdrawn Limited Objection.

*Star Indem. Co.*, No. cv-0900695-TUC-CKJ (DTF), 2014 U.S. Dist. LEXIS 9045, at *4–5 (D. Ariz. Jan. 24, 2014) ("this issue is moot" where party withdrew objection to a Magistrate Judge's discovery order); *Burr v. Astrue*, No. 5:06-cv-35, 2008 U.S. Dist. LEXIS 86057, at *2 (N.D. W. Va. Oct. 22, 2008) (reviewing order "for clear error" instead of *de novo* since "[a]lthough the plaintiff filed objections, she subsequently filed a motion to withdraw her objections").

The Northern District of Indiana's discussion in *Barney* resonates strongest here. There, plaintiff objected to a Magistrate Judge's order denying a motion to amend the complaint but then withdrew the objection. 2020 U.S. Dist. LEXIS 62119, at *6. When plaintiff later tried to reargue the issue in another brief, the Court refused to entertain the request:

> If Ms. Barney disagreed with the magistrate judge's explanation and decision of her motion to amend, then ***she should have let her objection stand so that this Court could determine the issue in an efficient and effective manner***. Thus, Ms. Barney failed to appeal or seek reconsideration of the denial of her motion to amend the constructive discharge claim and ***is precluded from seeking review*** of the claim now.

*Id.* at *6–7 (emphasis added). The same result should occur here. Once EMP objected to the Order before the Chief Judge, EMP should have let those objections run their course. This result is consistent with this Court's consistent findings that, in motions for reconsideration, it is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Pertile v. Gen. Motors, LLC*, No. 15-cv-00518-WJM-NYW, 2017 U.S. Dist. LEXIS 230512, at *26–27 (D. Colo. May 8, 2017) (quoting *Chytka v. Wright Tree Serv., Inc.*, 925 F. Supp. 2d 1147, 1175 (D. Colo. 2013), *aff'd*, 617 F. App'x 841 (10th Cir. 2015)).

EMP's needless and scattershot litigation tactics should not earn it consideration to which it is not otherwise entitled under the rules and precedent of this Court. The Order should stand, and the case should proceed without further threatening nonparty Viasat with more invasive discovery.

**1.3.    Even if EMP Did Not Render the Order Final before this Court by Withdrawing Its Objection, EMP's Decision Not to Object to the Order's Denial of Engineering Drawings Waives EMP's Ability to Challenge It Here**

If EMP wanted to challenge the Order's denial of its request for highly sensitive and technical manufacturing blueprints of national security products, it should have done so in its Limited Objection. For whatever reason, EMP did not object to the Court's denial of engineering drawings. EMP's decision not to object to this part of the Order—combined with unilaterally withdrawing the objection it did lodge with the Chief Judge—should render the Order final and deem the portions of EMP's motion for reconsideration seeking engineering drawings waived.

The proper vehicle under the Federal Rules and local rules to challenge a Magistrate Judge's order is an objection under Fed. R. Civ. P. 72. And under Rule 72(a), "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). Simply put, any objection not timely made is waived. And so this Court has denied motions for reconsideration as untimely filed after the 10-day deadline for objecting to a Magistrate Judge's order under Fed. R. Civ. P. 72. *See, e.g.*, *Fair Am. Ins. v. Byrnes*, No. 1:22-cv-01879-CNS-MEH, 2023 U.S. Dist. LEXIS 156683, at *2 (D. Colo. Sept. 5, 2023). Chief Judge Brimmer specifically rejected a self-styled "motion for reconsideration" of a report and recommendation that "was filed ***far past the deadline to object to the magistrate judge's recommendation*** and largely contains the same arguments found in plaintiff's timely objection." *Holloway v. Freemont Cty. RE-1/Canon City High Sch.*, No. 19-cv-03665-PAB-KMT, 2021 U.S. Dist. LEXIS 33176, at *5 (D. Colo. Feb. 23, 2021) (emphasis added); *see also Hamilton v. Hamilton*, No. 4:19-cv-01517, 2020 U.S. Dist. LEXIS 16546, at *1 (M.D. Penn. Jan. 30, 2020) (construing motion for as an untimely objection).

EMP's new attempt—more than two months after the Order—to revisit the Court's denial of EMP's access to engineering blueprints should be rejected as an untimely objection. "[E]ven to

—7—

the extent [a] motion for reconsideration could be construed as objections to the order, that motion was filed beyond the 10-day limitation period for filing such objections, as specified in Rule 72(a)." *Smith v. Sch. Bd.*, 487 F.3d 1361, 1365 (11th Cir. 2007). The Eleventh Circuit in *Smith* criticized a party for seeking reconsideration "more than 30 days after the magistrate entered the order." *Id.* at 1366. EMP here waited twice as long to file this motion.

EMP's failure to preserve its objection to the September 21 Order's denial of its motion to compel manufacturing blueprints means it cannot seek reconsideration on that basis and has waived any further right to pursue this discovery. *See, e.g.*, *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-00796-AWI-BAM, 2023 U.S. Dist. LEXIS 59171, at *15–16 (E.D. Cal. Apr. 4, 2023) ("deny[ing] Plaintiffs' Motion for Reconsideration to the extent it argues that the December 2018 agreement did not exist" where "***Plaintiffs did not object*** to the Magistrate Judge's order on the basis that the agreement did not exist, and at any rate, ***Plaintiffs subsequently withdrew their objections*** to the Magistrate Judge's Order.") (emphasis added). In fact, nonparty Viasat already pointed out that EMP waived this argument by failing to present it to the Chief Judge. *See, e.g.*, ECF No. 184 at 4–5 ("EMP has waived any challenge to the denial of these engineering blueprints."). Despite this notice and the ample supporting precedent, EMP's subsequent motion for reconsideration fatally ignores this issue altogether. Whether or not EMP grapples with the consequences of its scattershot litigation strategy, it has waived this argument before this Court. The Court thus has no basis to reconsider the Order's denial of engineering drawings.

## 2.   Nonparty Viasat's Alleged Noncompliance with the Order Is Irrelevant to Reconsideration, and in any case Viasat Has Fully Complied

Rather than argue a relevant change of circumstance, EMP asserts that Viasat has not complied with the Order. For the reasons explained below in Section 2.2, EMP is wrong. But more

important for the context of this motion, Viasat's compliance with the Order is irrelevant to reconsideration. If EMP believed the Order *already* requires compliance that has not occurred, there would be no need to challenge the Order—*i.e.*, no need for reconsideration. Rather, EMP could have simply sought enforcement of the existing Order.[4] Because alleged noncompliance with an order neither demonstrates that the order is clearly erroneous, nor represents an intervening change in the law, nor is new evidence, it cannot support reconsideration.

### 2.1. EMP's Complaints about Compliance Merely Reargue Well-Trodden Ground

In addition to being irrelevant for the reasons explained immediately above, EMP's arguments about Viasat's compliance should also be rejected because EMP has already raised this issue and so cannot reargue it again here. In a motion for reconsideration, it is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Pertile*, 2017 U.S. Dist. LEXIS 230512, at *26–27. A motion for reconsideration cannot serve as "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015). Nor is a motion for reconsideration a "license for the losing party's attorney to get a second bite at the apple." *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988) (internal quotations omitted).

EMP raised these exact compliance arguments in its Limited Objection to the Order. *See generally* ECF No. 131. Viasat responded to that Limited Objection. *See* ECF No. 184. For objections filed under Rule 72(a), "[t]he district judge in the case *must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R.

---

[4] The Court should categorically reject any additional pleading or argument from EMP that seeks to adjudicate nonparty Viasat's compliance with the Order. Not only would such a request be untimely, but it would also require Viasat to explain its compliance for at least the third time in this litigation, needlessly increasing Viasat's costs and wasting Viasat's and the Court's resources.

—9—

Civ. P. 72(a) (emphasis added). The parties fully briefed the issues EMP again raises here and were due an order from the Chief Judge. EMP's quixotic decision to abandon that path and instead seek reconsideration of the Order itself does not make this motion any less inappropriate or the grounds raised any more pertinent. These arguments are not new and need not be reconsidered.

### 2.2.    Viasat Fully Complied with the Broadest Reading of the Order in September

Viasat fully complied with the Order two months ago, rendering EMP's complaint both legally inapposite and factually incorrect. Viasat produced its unredacted sales data on September 29. *See* ECF No. 127 at 16. Viasat marked this production "Confidential," which allows EMP's principals to review it. *See* ECF Nos. 131-3, 131-4. Viasat's production included a complete report from Viasat's Oracle sales and purchasing database regarding Viasat's March 31, 2020 to March 31, 2023 purchases of parts through Defendant or from nonparties PGM or C&M Precision. *See* ECF Nos. 131-3, 131-4. Viasat's report spans 808 purchase order lines and more than 15,200 individual parts. *See* ECF Nos. 131-3, 131-4. This report contains data from the underlying purchase orders and ***all*** the descriptive information that Viasat's engineers use to identify the parts and their applications. Categories include "Item Description," "Product Line," "Purchase Order Commodity Code," and "Project Name." Viasat also produced an index of Purchase Order Commodity Codes with narrative descriptors corresponding to the report's numerical codes.[5] *See* ECF Nos. 131-3, 131-4. While EMP may not find nonparty Viasat's descriptions sufficient for its litigation goals, Viasat's engineers rely on them and they are enough to identify these parts.

Finally, EMP again tries to suggest non-compliance by misciting this Court's characterization of ***PGM's*** document production in response to a far broader subpoena than the

---

[5] Viasat also shared this during the October 19 status conference. *See* Hearing Tr., 14:24–17:4 (Oct. 19, 2023).

one served on Viasat. This is especially unfortunate because Viasat already put EMP on notice that this argument was improper and misleading. *Compare* ECF No. 168 at 5 (quoting the Court's statement about PGM's part descriptions), *with* Hearing Tr., 14:5–17:4 (Oct. 19, 2023) ("EMP's attempt here to conflate what it's asked for from PGM and what it's asking for from Viasat is – is misguided, and the Court already [grappled] with and acknowledged this" (citing ECF No. 127 at 19 n.10)). EMP's subpoena to Viasat does not include a request for a detailed description of the parts purchased. Viasat has complied with the Order. There is no reason to revisit it.

3.      **Even if EMP Did Not Waive Reconsideration of the Order's Denial of Viasat's Blueprints, Its Motion Cites No New Evidence or Errors in the Court's Reasoning**

EMP improperly seizes on the Court's limited reopening of expert discovery to permit an expert to review any *PGM* "sales information" produced Attorney's Eyes Only to try again to obtain nonparty Viasat's trade secret and highly sensitive engineering schematics that the Court properly denied EMP access to in its Order. *See* ECF No. 127 at 19 n.10; *see also* Hearing Tr., 31:4–32:23 (Nov. 9, 2023). But EMP has waived its right to challenge the Order as to engineering blueprints by not including this issue in its Limited Objection. *See supra*, § 1.2. And the rationale EMP offers is insufficient, anyway. In its seemingly ceaseless quest to secure access to these sensitive materials, EMP misstates the reasoning in the Court's Order and elides the undisputed undue burdens on nonparty Viasat that this Court has already correctly identified and considered.

3.1.    **The Only "New Factual Development" Listed by EMP to Support Its Request for Engineering Blueprints that Involves Nonparty Viasat Is a False Statement**

Viasat has already shown EMP's "new factual developments" cannot support a motion for reconsideration. *See supra*, §§ 1.1–1.2. But it merits mention that the one new fact EMP alleges that involves Viasat is yet another false, misleading misstatement of the record.

Among several "new factual developments" that do not involve any action by or demand of nonparty Viasat, EMP claims "the Court reopened expert discovery in this case for the limited purpose of allowing Plaintiff to retain an engineering expert to review and opine on the documents received from PGM and Viasat." ECF No. 168 at 3. Not so. The Court reopened expert discovery in response to PGM seeking another tier of confidentiality under the protective order for the sales documents it planned to produce under the Court's September 21 Order. *See, e.g.*, Hearing Tr., 37:16–20 (Nov. 9, 2023) ("I am going to reopen discovery ***for the limited purpose*** of allowing the plaintiff to retain an engineering expert to review and opine on the ***documents marked Attorney's Eyes Only***." (emphasis added)); *see also id.*, 7:1–6 ("[T]he Court's inclination is to allow for an extension, if you will, or a reopening of expert discovery for the limited purposes of addressing ***the information that's going to be coming now*** to Mr. Leffert and his clients AEO . . . ." (emphasis added)). Viasat's entire document production under the September 21 Order was designated "Confidential," not Attorney's Eyes Only. *See, e.g.*, *id.*, 31:1–32:20; *see also* ECF Nos. 135-2, 135-3, 135-4. Viasat has produced no documents requiring review by any expert under the Court's Order during the November 9 conference. None of EMP's "new factual developments" apply to nonparty Viasat, and EMP thus offers ***zero*** facts or evidence to justify reconsideration.

EMP does not claim that the Court intended its "***limited purpose***" for reopening expert discovery extended beyond documents produced with an Attorneys' Eyes Only designation under the Order. Hearing Tr., 37:16–20 (Nov. 9, 2023). Nor can it. The Court gave no indication during the November 9 status conference that it intended broadly to undermine its Order's denial of engineering blueprints merely because it permitted EMP to hire an expert to review ***sales information*** that PGM sought leave to produce Attorneys' Eyes Only. The Court instead reopened expert discovery solely for "the information that's going to be coming now to Mr. Leffert and his

—12—

clients" under the Order—*i.e.*, PGM's sales information. *Id.*, 7:1–6. To bootstrap reconsideration of the Court's denial of the sensitive manufacturing blueprints due to a narrow reopening of expert discovery for another purpose would wrongly circumvent the process EMP should have used under Rule 72(a) to challenge the Order's denial of these materials.

### 3.2. EMP Misstates the Order's Findings of Undue Burden and Ignores Altogether that the Blueprints Fall Outside the Scope of Its Subpoena to Viasat

EMP argues that because an outside expert can now review the denied engineering blueprints, this cures the undue burden on nonparty Viasat found by the Court. But EMP's argument addresses only one of the Court's numerous articulated grounds denying EMP access to Viasat's national security blueprints: improper access to the schematics by EMP's competitive decision makers. Admittedly, this is an important factor. But it is far from the only factor. Even removing it from the equation leaves many other undue burdens standing.

The undue burden imposed by EMP's demand for engineering blueprints takes several forms previously recognized by the Court in its Order but unaddressed here by EMP. For example, the Court held "ViaSat shows undue burden in the ***quantity of different parts and vendors involved***." ECF No. 127 at 20 (emphasis added). And the Court found "ViaSat shows undue burden in the quantity of parts for which it would need to ***notify its contract partners*** of the disclosure," based on the "at least 134 different parts or assemblies" at issue. *Id.* (emphasis added). The Court relied on fact declarations ignored by EMP that Viasat "would have to notify the government and customers" before production, "each of whom could object to producing their drawings even subject to the Protective Order." *Id.* That EMP now may hire an expert cures none of these burdens.

At least as important, EMP still fails to argue that its subpoena to Viasat even calls for these engineering drawings in the first instance. The Court declined to find that the engineering

blueprints fell within the scope of the subpoenas. *See* ECF No. 127 at 19. And EMP has repeatedly ignored Viasat's arguments that EMP's narrowly tailored subpoena sought only "documents and records ***reflecting ViaSat's purchase*** of any parts or assemblies" and not any information about the technical composition, manufacturing specifications, or manufacturability information of the parts themselves. *See, e.g.*, ECF No. 127 at 2; ECF No. 184 at 5 (emphasis added). No amount of squinting at the term "reflecting" in "reflecting Viasat's purchases" can change that. Even if the Court is inclined to revisit all of its (unchallenged) findings on undue burden, it should still uphold the Order because EMP's demands fall well outside the scope of its underlying subpoena to Viasat.

4.    **EMP's Request to Modify the Order to Require Disclosure of Manufacturing Details Is Moot and Meritless**

EMP last reargues yet another request it briefed and nonparty Viasat opposed in EMP's Limited Objection: that the Court should require disclosure of several specific categories of information found only in the denied manufacturing blueprints so that EMP can assess its ability to manufacture these parts. EMP lodged a timely Limited Objection, but EMP's withdrawal of that objection moots the argument before this Court. *See supra*, § 1.2. And despite already briefing this issue—thus barring reconsideration here—EMP again ignores that producing these manufacturing parameters remains as unduly burdensome as producing the blueprints, if not more.[6]

Just as in its original briefing of its Limited Objection, EMP misstates the burdens imposed by its request for specific manufacturing details about these parts. Indeed, despite having the benefit of Viasat's briefing and supporting fact declarations attesting that the burdens imposed by this ostensible "compromise" disclosure are not any less than the burdens that would be caused by

---

[6] Indeed, nonparty Viasat submits it would be significantly ***more*** burdensome to have its engineering staff individually review and summarize its blueprints than to simply turn them over to EMP wholesale. As explained throughout this brief, the Court should order Viasat to do neither.

compelled production of the full engineering drawings, EMP does not even address the issue. For the unrebutted reasons set forth in Viasat's response to EMP's Limited Objection, EMP's subpoena does not justify in scope or in burden on Viasat the production of these categories of information. *See, e.g.*, ECF No. 184 at 3–7.

**5.      Conclusion**

For all these reasons, the Court should deny EMP's motion for reconsideration.

Respectfully submitted,

Dated: December 12, 2023           By: s/ *Patrick A. Fitch*
                                                            Patrick A. Fitch
                                                                pfitch@sheridanross.com
                                                            Angela J. Bubis
                                                                abubis@sheridanross.com
                                                            Scott R. Bialecki
                                                                sbialecki@sheridanross.com
                                                            SHERIDAN ROSS P.C.
                                                            1560 Broadway, Suite 1200
                                                            Denver, Colorado 80202-5141
                                                            Telephone:  303-863-9700
                                                            Facsimile:  303-863-0223
                                                            Email:        litigation@sheridanross.com

                                                            *Attorneys for Nonparty*
                                                            *Viasat Services Holding Company*