IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado Corporation,

    Plaintiff,

v.

ALAN LUPTON ASSOCIATES INC., a New York Corporation,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on defendant's Motion to Exclude Expert Testimony of Joseph V. Gregory [Docket No. 50]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises out of the business relationship between plaintiff Electro-Mechanical Products, Inc. ("EMP") and defendant Alan Lupton Associates Inc. ("ALA"). Docket No. 84 at 3, ¶ 10. EMP is a manufacturer of precision machined components, thermal management solutions, and mechanical and electrical sub-assemblies that is headquartered in Colorado. *Id.* at 1-2, ¶¶ 1, 7. ALA is provides sales services and is headquartered in New York. *Id.* at 2, ¶¶ 4, 8; Docket No. 92 at 1-2, ¶¶ 4,8.

In 1989 EMP and ALA entered into a contract ("Contract") whereby ALA agreed to sell EMP's products. Docket No. 50-1 at 1-3. The Contract states in relevant part:

> [ALA] to use its best efforts to promote, develop and extend the sales of [EMP's] services and products during the contract term or any extension,

and in furtherance thereof, shall not directly or indirectly solicit orders for or sell any products competitive with [EMP's] products without its written consent.

*Id.* at 1, ¶ 1.  The Contract does not define "best efforts."[1]  EMP's first cause of action against ALA is for breach of contract.  Docket No. 84 at 6-7, ¶¶ 24-29.  EMP alleges that ALA breached the Contract because it "knowingly abandoned its obligation to use its best efforts."  *Id.*, ¶ 29.

EMP retained Joseph V. Gregory as an expert to "assess and opine on whether [ALA] and its employees used their 'best efforts' in acting as outside sales representatives on behalf of EMP."  Docket No. 50-2 at 3.  Mr. Gregory is the founder of a sales consulting, coaching, and training firm.  *Id.*  Mr. Gregory has over 31 years of experience in sales and sales leadership, including over 11 years of sales coaching and training.  *Id.*

On April 28, 2023, ALA filed a motion to exclude Mr. Gregory's expert testimony under Federal Rule of Evidence 702.  Docket No. 50.  EMP responded, Docket No. 66, and ALA replied.  Docket No. 77.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[1] The parties modified the contract in 1998 and 2000, Docket No. 50-1 at 5-7, but neither modification defines "best efforts."

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).  Upon a party making an objection, "[Rule] 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted).

To determine whether an expert opinion is admissible, a court must perform "a two-step analysis."  *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  First, the Court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion.  *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702).

Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability.  *Id.* at 1180-81; Fed. R. Evid. 702(b)-(d) (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Next, the court must assess whether the expert used sufficient facts and data as required by the methodology and whether the expert reliably applied the methodology to the facts of the case.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008)*; see also Roe*, 42 F.4th at 1181.  When evaluating the reliability of an opinion that is based solely

on an expert's experience, the court must consider the breadth of the expert's experience and the relevance of that experience to the expert's testimony.  *United States v. Medina-Copete*, 757 F.3d 1092, 1105 (10th Cir. 2014).

"Establishing reliability does not require showing that the expert's testimony is 'undisputably correct.'"  *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.,* 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness).  However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Roe*, 42 F.4th at 1181.  "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact.  *See id.* at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).  "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted).

### III.  CHOICE OF LAW

As noted earlier, EMP retained Mr. Gregory to opine on whether ALA used its "best efforts" on behalf of EMP.  In order to determine whether Mr. Gregory applied the

4

proper standard, it is necessary to interpret the term "best efforts" in the Contract. The Contract does not define the meaning of the term "best efforts." Moreover, neither side offers evidence about what the parties intended when they included the term "best efforts" in the Contract. Rather, both sides argue that the Court should look to state law to define the meaning. *See* Docket No. 66 at 4-5; Docket No. 77 at 3-6.

The parties agree that the Contract does not contain a choice-of-law provision, but they disagree as to which state's law governs the Contract. Docket No. 66 at 4-5; Docket No. 77 at 3-6. EMP argues that Colorado law applies, Docket No. 66 at 4-5, and ALA argues that New York law applies. Docket No. 77 at 3-6. Therefore, the Court must conduct a choice-of-law analysis to determine whether New York or Colorado law governs the Contract. "In a case based on federal diversity jurisdiction, the law of the forum state governs." *Renfro v. Champion Petfoods U.S.A., Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022) (citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). Accordingly, the Court will apply Colorado choice of law principles to determine which state law governs the Contract. Colorado has adopted the choice-of-law approach of the Restatement (Second) of Conflict of Laws (the "Restatement"), which requires a court to apply the substantive law of the state having the "most significant relationship" to the issue. *Barnett v. Surefire Med., Inc.,* 342 F. Supp. 3d 1167, 1173 (D. Colo. 2018) (citing *Chemiti v. Kaja*, No. 13-cv-00360-LTB-KMT, 2015 WL 585594, at *2 (D. Colo. Feb. 11, 2015); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (noting that "the objective of the Restatement (Second) is to locate the state having the 'most significant relationship' to the particular issue")).

5

In determining which state has the most significant relationship to a contract claim, the Court is guided by the factors set forth in § 188 of the Restatement. *Nicholls v. Zurich Am. Ins. Grp.*, 244 F. Supp. 2d 1144, 1152 (D. Colo. 2003). Section 188 lists five contacts to be taken into account, including:

> [a] the place of contracting; [b] the place of negotiation; [c] the place of performance; [d] the location of subject matter of the contract; and [e] the domicile, residence, or place of business of the parties.

*Id.* (citing Restatement § 188).

Under the restatement, "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect." Restatement § 188 cmt. e. On November 1, 1989, ALA drafted a contract in New York, which it sent to EMP for approval. Docket No. 50-1 at 1-2; *see also* Docket No. 77 at 5. On November 27, 1989, EMP responded by sending a letter from its office in Colorado in which it stated that "[t]he proposed contract . . . is acceptable subject to" two proposed changes. Docket No. 50-1 at 3; *see* Docket No. 66 at 5; Docket No. 77 at 5. The letter asked ALA to "confirm [its] agreement to these conditions via mail or fax so as to permit [EMP] to sign and return the contract." Docket No. 50-1 at 3. On December 5, 1989, ALA responded to ALA's letter with a fax, which stated "[i]t is agreed that we use [EMP's] letter addendum to our contract." *Id.* at 2-3. Under Colorado law, if one party modifies the other's offer, "it amounts to nothing more than a counter proposition" and "is not in law an acceptance which will complete the contract." *Nucla Sanitation Dist. v. Rippy*, 344 P.2d 976, 979 (Colo. 1959). Thus, EMP's letter to ALA proposing changes to the draft contract constituted a rejection of ALA's offer and the proposal of a counter offer. Since contracts "are formed when there

6

are unambiguous terms, an offer, and acceptance of that offer," *Kovac v. Farmers Ins. Exch.*, 401 P.3d 112, 116 (Colo. App. 2017), the contract between ALA and EMP was formed when ALA accepted EMP's counter offer. Because ALA's acceptance of EMP's counter offer was "the last act necessary . . . to give the contract binding effect," Restatement § 188 cmt. e, and this act took place in New York, the place of contract formation was New York. Thus, the first factor weighs in favor of applying New York law.

ALA and EMP conducted negotiations for the Contract from separate states, Colorado and New York, by mail and fax. Docket No. 50-1 at 1-3; *see also* Docket No. 66 at 5; Docket No. 77 at 6. Thus, the second factor is neutral.

ALA argues that the place of performance of the Contract was New York because, "[a]lthough ALA employs sales representatives who reside throughout the United States, ALA's operations have always been conducted from its New York office." Docket No. 77 at 4. Accordingly, ALA claims that EMP was represented by "a team of representatives whose activities were directed from New York."[2] *Id.* at 4-5. ALA also points out that it is a New York corporation with its principal place of business in New York. *Id.* at 4. *See In re Homeadvisor, Inc. Litigation*, 345 F.R.D 208, 230(D. Colo. Jan. 10, 2024) (finding that defendant's place of performance was the state where its

---

[2] EMP's response claims that "ALA's primary sales representative for EMP is located in Colorado and has been for over a decade." Docket No. 66 at 5. EMP cites to an "attached Exhibit B" to support this statement, *id.*, but the only exhibit attached to EMP's response is a copy of Mr. Gregory's expert report. *See* Docket No. 66-1. The response also states that "the previous ALA sales representative . . . was based in Colorado and represented EMP since the inception of the contract," but EMP cites no support in the record for this assertion. Docket No. 66 at 5.

7

headquarters were located).  The Court finds that the place of performance was New York.  Thus, the third factor weighs in favor of applying New York law.

"When the contract deals with a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant" because the state where the thing or risk is located has an interest in transactions affecting it. Restatement § 188 cmt. e.  The Contract deals with "production machine parts" manufactured by EMP.  Docket No. 50-1 at 3; *see also* Docket No. 50-1 at 5, ¶ 1. However, neither party states where the manufacturing plant or machine parts are located.  The parties also do not state whether ALA employees have a fixed place of employment.  Therefore, the fourth factor is neutral.

EMP's place of incorporation and primary place of business are Colorado. Docket No. 66 at 5; Docket No. 84 at 1, ¶ 1.  ALA's place of incorporation and primary place of business are New York.  Docket No. 77 at 4.  Thus, the fifth factor is neutral.

Because the first and third factors of the choice of law analysis weigh in favor of applying New York law and the other three factors are neutral, the Court will apply New York law to the Contract.[3]

---

[3] ALA also argues that New York law applies to the Contract because the dispute concerns whether ALA exerted best efforts and "[i]ssues relating to the details of performance of a contract are determined by the local law of the place of performance." Docket No. 77 at 4 (quoting Restatement § 206).  The Court will not address this argument because it finds that New York law applies based on the factors set forth in § 188 of the Restatement.

8

## IV. ANALYSIS

ALA seeks to exclude all of Mr. Gregory's opinions on the basis of qualification, reliability, and helpfulness. Docket No. 50 at 6-15.

### A. Qualification

ALA argues that Mr. Gregory "is not qualified as an expert witness because he has no sales experience in the semiconductor manufacturing industry."[4] Docket No. 50 at 6. The Tenth Circuit has held that, "as long as an expert stays within the reasonable confines of his subject area, . . . a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996) (alterations and internal citation and quotation omitted)). Accordingly, the question is whether the issues that Mr. Gregory discusses in his report are "within the reasonable confines" of his expertise. *See id.*

Mr. Gregory's report notes that he has "specialized knowledge and experience" in the area of Customer Relationship Management ("CRM"). Docket No. 50-2 at 5. He states that "CRM software systems have been utilized by sales organizations for decades," and that he has used CRM systems since 1995 while serving as a sales person, sales leader, sales effectiveness manager, general manager, branch manager,

---

[4] ALA cites no support for the proposition that the case concerns sales in the semiconductor manufacturing industry. EMP describes itself as "provid[ing] innovative manufacturing solutions for the semiconductor, medical, laser, aerospace, commercial and hi–tech industries," Docket No. 84 at 2, ¶ 7; *see also* Docket No. 66 at 5 n.2, and EMP's complaint does not state which of those industries ALA's alleged breach of contract pertains to. ALA provides no explanation as to why Mr. Gregory would be required to have expertise in the semiconductor manufacturing industry, and not the other industries EMP is involved in, in order to be a qualified expert witness.

and chief sales executive.  *Id.*  As a consultant, Mr. Gregory has advised clients on CRM implementations and user adoption.  *Id.*  Mr. Gregory's report also states that he has an "extensive history of hiring sales reps while serving as branch manager, sales manager, sales effectiveness manager, general manager, and chief sales executive" and, as a consultant, "advised and assisted [his] clients with the hiring and on-boarding of sales reps, utilizing reliable principles and methods."  *Id.* at 13.

ALA does not dispute this characterization of Mr. Gregory's expertise.  Nor does ALA explain why Mr. Gregory's expertise does not carry over to ALA's use of sales representatives and CRM.  Mr. Gregory's report discusses ALA's use of CRM, its processes for hiring, onboarding, training, development, and management of sales reps, its sales process, and its sales results.  Docket No. 50-2 at 5-35.  Because these issues are within the reasonable confines of Mr. Gregory's expertise, he is qualified to opine on them.  *See Ralston,* 275 F.3d at 970.

### B.  Reliability

ALA argues that Mr. Gregory's opinions "are unreliable because they are exclusively the product of his own subjective experience, which is unpublished, untested, and untestable."  Docket No. 50 at 11.  EMP responds that "ALA is improperly trying to apply *Daubert* factors which are inapplicable to a non-scientific witness."  Docket No. 66 at 10.

The Tenth Circuit has held that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances.  As the Supreme Court has explained, 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject

10

of his testimony.'" *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999)) (alteration omitted). The Tenth Circuit has also held that, to demonstrate the reliability of an opinion that is based solely on an expert's experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Medina-Copete*, 757 F.3d at 1104 (quoting Fed. R. Evid. 702, Advisory Committee Notes).  The fact that Mr. Gregory's opinions are based on his experience, which has not been published or tested, does not render the opinions unreliable.[5]

ALA does not argue that Mr. Gregory failed to explain how his experience led him to the conclusions he reached, why his experience is a sufficient basis for his opinions, or how his experience is reliably applied to the facts.  *See Medina-Copete*, 757 F.3d at 1104.  ALA argues instead that Mr. Gregory "makes numerous statements on best sales practices but fails to tie those practices to anything but his own experiences."  Docket No. 50 at 12.  However, as stated above, that an expert's opinion is based solely on the expert's experience does not necessarily render it unreliable.  *Medina-Copete*, 757 F.3d at 1104.  Accordingly, the Court will not exclude Mr. Gregory's opinions on the basis of unreliability.

---

[5] ALA argues that it "used the factors that are 'logically applicable' to show that [Mr.] Gregory's opinions are unpublished, untested, [and] untestable."  Docket No. 77 at 9 (alteration and citation omitted).  However, ALA does not explain why the factors requiring a court to consider whether a scientific methodology can and has been tested and whether a scientific theory or technique has been subject to peer review, *see Daubert*, 509 U.S. at 593-94, are "logically applicable" to Mr. Gregory's non-scientific opinions.

### C.  Helpfulness

ALA argues that Mr. Gregory's "entire opinion on best efforts must be excluded because it is not—and cannot be—helpful to the trier of fact[ ] because he imposes a standard that is completely at odds with the Contract and New York law."  Docket No. 50 at 10.  EMP responds that Colorado law applies to the Contract, so "ALA's arguments about Mr. Gregory's opinions being allegedly deficit [sic] under New York [law] are incorrect and should not be considered."  Docket No. 66 at 10.  As discussed above, New York law applies to the Contract.

The Contract, as noted earlier, does not define "best efforts."  Docket No. 50-1 at 1.  Moreover, the parties provide no extrinsic evidence of their intent in including the term "best efforts" in the Contract.  Therefore, the Court will determine the meaning of "best efforts" based upon a review of New York law.  *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2nd Cir. 2000) (applying New York law) ("the meaning of even an ambiguous contract is . . . to be decided by the court if there is no extrinsic evidence as to the agreement's meaning") (citations omitted).   Under New York law, when contracting parties fail to lay out clear guidelines against which to measure best efforts, "[c]ourts generally interpret a 'best efforts' [clause] to require the promisor to 'act with good faith in light of one's own capabilities.'"  *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2011 WL 4348138, at *2 (S.D.N.Y. Sep. 15, 2011) (quoting *Ashokan Water Servs., Inc. v. New Start, LLC,* 807 N.Y.S. 2d 550, 555 (N.Y. Civ. Ct. 2006)); *see also Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609, 613 n.7 (2nd Cir. 1979) (applying New York law); *Bd. of Managers of Chocolate Factory Condominium ex rel. Chocolate Factory Condominium v. Chocolate Partners, LLC,* 2014 WL 1910237, at *7 (N.Y. Sup. Ct.

2014) (unpublished table opinion) (holding that a best efforts clause "imposes an obligation to act with good faith in light of one's own capabilities, and apply such efforts as are reasonable in the light of that party's ability and the means at its disposal and of the other party's justifiable expectations." (quotations and citation omitted)).  "The degree of discretion afforded to parties under 'best efforts' clauses requires plaintiff to show that 'the nature and extent of the opposing party's efforts did not reflect good faith business judgments.'"  *Sedona Corp.*, 2011 WL 4348138, at *2 (quoting *In re Chateaugay Corp.,* 186 B.R. 561, 594-595 (Bankr. S.D.N.Y. 1995)).  For this reason, a "best efforts" standard is "necessarily contextual."  *Id.* (citing *Bloor*, 601 F.2d at 266-67).

      EMP retained Mr. Gregory to provide opinions concerning ALA's efforts in acting as sales representatives on behalf of EMP.  Docket No. 50-2 at 3.  In doing so, Mr. Gregory expressed opinions as to whether ALA used "best efforts."  Thirty-four of Mr. Gregory's 49 opinions include a statement that ALA did not use best efforts.  *See, e.g.*, *id.* at 10 ("Opinion (6): Sales reports including business activities are easily generated by a CRM.  This is why a functional CRM with robust reporting capabilities is required to run a sales business.  In the absence of this data, Lupton Associates is not using their 'best efforts.'").  In addition, the conclusion of Mr. Gregory's reports states, "[b]ased on my training and experience and my analysis in this matter, it is my expert opinion that [ALA] and its employees did not use 'best efforts to promote, develop and extend the sales of EMP's services and products' in acting as outside sales representatives on behalf of EMP" and lists six areas in which Mr. Gregory believes best efforts were not used.  *Id.* at 36.

Mr. Gregory's opinions about whether ALA used "best efforts" are not helpful if Mr. Gregory does not use the term "best efforts" in accordance with the meaning of "best efforts" in the Contract.  During his deposition, Mr. Gregory defined "best" as "to the highest degree, the most exceptional."  Docket No. 50-3 at 3, 10:1-7.  He was asked whether "[t]hat definition of 'best,' [was] . . . the definition [he] used in connection with [his] opinions" and responded, "[t]hat guides my thinking."  *Id.*, 10:8-10.  As discussed above, the "best efforts" clause in the Contract requires ALA to act with good faith in light of its own capabilities.  Therefore, Mr. Gregory's opinions as to whether ALA used best efforts, as he defined them, are not helpful because they go to whether ALA exerted "exceptional" efforts "to the highest degree," not whether ALA exerted best efforts as was required by the Contract.  Therefore, the Court will exclude Mr. Gregory's opinions insofar as they state that he believes that ALA did not exert best efforts.

However, Mr. Gregory's opinions are helpful and admissible under Rule 702 insofar as they state Mr. Gregory's views about the inadequacies of ALA's business practices without referring to a "best efforts" standard.  For example, Mr. Gregory opines that, "[i]f they had used a fully functioning CRM system, [ALA] could have utilized an activity journal and living history.  Without using this information, this is not using 'best efforts to promote, develop and extend the sales' of EMP products and services."  Docket No. 50-2 at 10.  While Mr. Gregory's opinion that failing to utilize an activity journal and living history does not constitute best efforts will be excluded, his opinion that ALA could have utilized an activity journal and living history if ALA had used a fully functioning CRM system will not be excluded.

## V. CONCLUSION

Therefore, it is

**ORDERED** that defendant's Motion to Exclude Expert Testimony of Joseph V. Gregory [Docket No. 50] is **GRANTED in part** and **DENIED in part**.

DATED March 15, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge