IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado Corporation,

Plaintiff,

v.

ALAN LUPTON ASSOCIATES INC., a New York Corporation,

Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant's Motion for Summary Judgment [Docket No. 62]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises out of the business relationship between plaintiff Electro-Mechanical Products, Inc. ("EMP") and defendant Alan Lupton Associates Inc. ("ALA"). Docket No. 84 at 3, ¶ 10. EMP brings two causes of action against ALA: breach of contract and unjust enrichment. *Id.* at 6-7, ¶¶ 24-32; Docket No. 62 at 6, ¶ 29. ALA seeks summary judgment in its favor on both claims. Docket No. 62 at 2.

## II. FACTS[1]

The contract between the parties dated November 1, 1989 ("Contract") contains two clauses relevant to this action—the best efforts clause and the noncompete clause—which are contained in the same paragraph:

---

[1] The following facts are undisputed unless otherwise noted.

> . . . [ALA] to use its best efforts to promote, develop and extend the sales of [EMP's] services and products during the contract term or any extension, and in furtherance thereof, shall not directly or indirectly solicit orders for or sell any products competitive with [EMP's] products without its written consent.

*Id.* at 3, ¶¶ 4-5.  The best efforts clause contains no objective criteria or guidelines to assess ALA's best efforts.  *Id.*, ¶ 6.  The noncompete clause was amended in 2000 to define "competitive" as "the products of a general-purpose machining job shop."[2]  *Id.*, ¶ 7.

Beginning in 2021, EMP unilaterally created a "scorecard" to measure ALA's performance.[3]  *Id.* at 4, ¶ 13.  EMP terminated the contract with ALA, in part, because ALA did not use best efforts, as measured by scorecards.  *Id.* at 5, ¶ 20.

EMP alleges that ALA breached the noncompete clause by soliciting or selling the products of its competitors.  *Id.*, ¶ 21.  EMP alleges that ALA sold products of PGM Corp. ("PGM") to Viasat, Inc. ("Viasat").  *Id.*  EMP has maintained that PGM is a competitor since, at least, March 23, 2022.  *Id.*, ¶ 22.  EMP alleges that ALA sold

---

[2] EMP denies this fact on the basis that the "definition of 'competitive' has changed due to the parties' course of dealing."  Docket No. 76 at 4, ¶ 7.  However, the cited deposition testimony states that David Wolenski is "aware of the evolution of the companies in the ordinary course of business," Docket No. 76-4 at 3, 182:4-6, and that EMP is a "contract manufacturer doing precision parts."  Docket No. 76-2 at 3, 41:6-7.  This evidence does not support EMP's denial.  Therefore, the Court deems this fact admitted.

[3] EMP denies this fact on the basis that EMP "did not unilaterally create the scorecards.  EMP provided the scorecards to Mr. Lupton every month, and he reviewed and agreed to the contents."  Docket No. 76 at 5, ¶ 13.  However, the citation to Alan Lupton II's deposition statement, while indicating that EMP "sent [ALA] a score card every month," does not state that EMP did not unilaterally create the scorecards or that Mr. Lupton reviewed or agreed to the contents.  Docket No. 76-1 at 20, 151:11-12.  Likewise, the scorecard that EMP cites does not indicate that EMP did not unilaterally create it or that Mr. Lupton reviewed or agreed to its contents.  Docket No. 76-7 at 2.  The Court deems this fact admitted.

2

products of C&M Machine Products, Inc. ("C&M") to MKS Instruments Inc. ("MKS").  *Id.*, ¶ 21.  EMP has maintained that C&M is a competitor since, at least, January 18, 2023.  *Id.*, ¶ 23.  EMP terminated the contract with ALA, in part, because ALA solicited and sold PGM's allegedly competitive products.  *Id.* at 6, ¶ 28.

EMP alleges that, as a result of the breaches of contract, ALA caused compensatory and consequential damages and lost profits to EMP and has caused ALA to be overcompensated for services it failed to perform.  *Id.*, ¶ 30.  EMP's president and vice president were unable to identify EMP's alleged damages during their depositions.[4]  *Id.* at 2, 7, ¶¶ 2, 35.  EMP did not calculate its damages by the fact discovery deadline and still had not calculated them by the time ALA filed its motion for summary judgment.  *Id.* at 8, ¶ 38.  Moreover, EMP did not retain an expert witness to offer an opinion on damages.  *Id.* at 7-8, ¶¶ 36-37.

## III. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the

---

[4] EMP refutes this fact on the basis that "EMP has been denied discovery on this issue and the currently pending motions for contempt sanctions and to reopen discovery are directed to obtaining drawings that will allow EMP to identify the competitive products that will allow EMP to calculate damages based on these sales."  Docket No. 76 at 8, ¶ 35.  EMP cites two motions it filed: (1) a motion to impose contempt sanctions against Viasat on the basis that Viasat refused to produce engineering drawings of the parts that PGM made for Viasat and purchase records for all of the purchases that Viasat made through ALA, Docket No. 44 at 2-3; and (2) a motion to reopen discovery for the purpose of obtaining the engineering drawings and purchase records that EMP had requested from Viasat as well as obtaining the engineering drawings of the parts that C&M sells to MKS, Docket No. 58 at 3.  Docket No. 76 at 8, ¶ 35.  Although EMP has identified an ongoing discovery dispute regarding Viasat and C&M, this information does not dispute ALA's asserted fact that EMP's president and vice president were unable to identify EMP's alleged damages during their depositions.  Therefore, the Court deems this fact admitted.

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## IV.  ANALYSIS

"Under New York law,[5] to establish a breach of contract, a plaintiff must show '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, 2019 WL 632364, at *6 (S.D.N.Y. Feb. 14, 2019) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2nd Cir. 1996)) (footnote added).  ALA's summary judgment motion focuses on the third and fourth elements of EMP's breach of contract claim.  Docket No. 62 at 9-19.  As to EMP's unjust enrichment claim, ALA seeks summary judgment on the basis that such claim "arises from ALA's alleged breach of the Contract."  *Id.* at 19.

### A.  Breach of Contract: Best Efforts Clause

The Contract requires ALA to "use its best efforts to promote, develop and extend the sales of [EMP's] services and products."  Docket No. 62 at 3, ¶ 5.  As discussed in the Court's order on ALA's motion to exclude the expert testimony of Joseph V. Gregory, the contract term "best efforts" requires ALA to act with good faith in light of its own capabilities.  Docket No. 194 at 12-13.  To establish that ALA did not exert best efforts, EMP must "show that 'the nature and extent of [ALA's] efforts did not reflect good faith business judgments.'"  *See Sedona Corp. v. Ladenburg Thalmann & Co.*, 2011 WL 4348138, at *2 (S.D.N.Y. Sep. 15, 2011) (quotation and citation omitted).  "[D]etermining whether a party used 'best efforts' under a contract 'almost invariably' is a question of fact that cannot be resolved at summary judgment."  *India Globalization*

---

[5] The Court has determined that New York law applies to the contract between the parties.  Docket No. 194 at 4-8.

*Capital, Inc. v. Apogee Fin. Investments, Inc.*, 2023 WL 4637551, at *9 (S.D.N.Y. July 20, 2023) (applying New York law) (quoting *Kroboth v. Brent*, 215 A.D.2d 813, 814 (N.Y. Sup. Ct. App. Div. 1995)); *see Sedona Corp.*, 2011 WL 4348138, at *2 ("A 'best efforts' standard is necessarily contextual . . . and so the meaning of such a provision and the conditions of its breach are generally factual issues.") (citations omitted).

ALA argues that it is entitled to summary judgment on EMP's breach of contract claim concerning the best efforts clause because "EMP has no evidence showing that ALA failed to use best efforts, as judged by its own capabilities." Docket No. 62 at 11. This argument is based on ALA's claim that "EMP relies exclusively on the scorecards and [Mr. Gregory's][6] expert testimony to establish that ALA breached the Contract's best efforts clause" and that this evidence "does not inform whether ALA used its best efforts, as assessed by its own capabilities." *Id.* at 13. p

ALA argues that EMP's evidence concerning the scorecard cannot establish that ALA breached the best efforts clause because "ALA's best efforts are measured by its own capabilities," not the metrics on the scorecard. *Id.* at 11-12. EMP responds that the scorecards document "ALA's specific failures."[7] Docket No. 76 at 12. EMP raises

---

[6] ALA's motion references "Mr. George's expert testimony," Docket No. 62 at 12-13, but the response and reply both discuss the expert testimony of Joseph V. Gregory. Docket No. 76 at 13-15; Docket No. 79 at 3-4. The Court will interpret ALA's motion as referring to Mr. Gregory.

[7] The parties also dispute whether Mr. Gregory's expert report constitutes evidence that ALA breached the best efforts clause, but since the Court finds that the disputed facts derived from the scorecard and from Mr. Lupton's testimony are sufficient to raise a disputed issue of fact precluding summary judgment on this claim, it will not discuss Mr. Gregory's report.

the disputed fact[8] that the scorecard it created tracked nine deficiencies in ALA's performance, including that "the number of ALA representatives regularly engaged in selling EMP is unacceptably low," that the "new sales representative for California hadn't been heard from in 4+ months," that "[t]he sales representative for Jabil[9] stopped returning emails," and that "[n]o new ITAR[10] opportunities had been created, despite ALA's representation that it could pursue and win new sales for EMP's Aerospace Subsidiary once it had become ITAR registered."  Docket No. 76 at 8-9, ¶¶ 3-4a, 4e-f, 4h.  ALA argues that the scorecards "do not constitute evidence of breach of the best efforts clause because ALA never had a contractual obligation to perform according to the criteria included on them."  Docket No. 79 at 3.  EMP does not claim that ALA had a contractual obligation to perform according to the criteria included on the scorecards.  Rather, EMP argues that "ALA's specific failures are well documented in the scorecards."  Docket No. 76 at 12.  Because the scorecard is evidence concerning the efforts ALA was exerting, EMP's reference to the assessments of ALA's efforts in the scorecard raises a genuine dispute of fact as to whether ALA was exerting best efforts to promote, develop, and extend the sales of EMP's services and products compliance with the Contract.

Moreover, EMP raises disputed facts concerning ALA's efforts that are drawn from evidence other than the scorecard or Mr. Gregory's expert testimony.  Docket No.

---

[8] ALA's reply did not admit or deny any of the disputed facts that EMP raised in its response.  Therefore, all of the facts EMP raised in its response are deemed disputed.
[9] Jabil is an EMP customer.  Docket No. 76 at 10, ¶ 17.
[10] International Traffic in Arms Regulations.

76 at 9-10, ¶¶ 5-16.  EMP asserts the following disputed facts based on deposition testimony from Mr. Lupton:

- Prior to February 2022, ALA was not using a functional customer relations management system ("CRM") to manage its business.
- ALA was using a spreadsheet to track opportunities, instead of a CRM, and this spreadsheet was inferior to the CRM data collection and analysis capabilities.
- ALA lacked a structured hiring and on-boarding process.
- ALA did not provide formal sales training to its representatives.
- ALA did not provide effective scripts to its sales representatives for phone call introductions of EMP.
- ALA did not use a repeatable, step-by-step sales process.
- ALA does not set annual forecasts or sales revenue targets, including new customer business, for each salesperson.
- ALA does not have performance improvement plans for underperforming sales representatives.
- In 2020, 50% of EMP's sales were derived from one customer, and the majority of EMP's sales were derived from legacy accounts.  EMP urgently requested ALA to develop new customers to manage volatility and diversify risk.
- EMP's sales decreased 15.8% from 2018 to 2019.

*Id.* at 9-10, ¶¶ 5-12, 14-15.  These disputed facts drawn from Mr. Lupton's testimony go to whether the "nature and extent" of ALA's efforts reflected good faith business judgments.  *See Sedona Corp.*, 2011 WL 4348138, at *2.  Therefore, there is a genuine dispute of material fact as to whether ALA acted with good faith in light of its own capabilities.  The Court will therefore decline to dismiss EMP's breach of contract claim based on the best efforts clause.

## B.  Breach of Contract:  Noncompete Clause

It is undisputed that the Contract contains a noncompete clause stating that ALA "shall not directly or indirectly solicit orders for or sell any products competitive with [EMP's] products without its written consent" and that a 2000 amendment to the Contract defines "competitive" as "the products of a general-purpose production

machining job shop."  Docket No. 62 at 3, ¶¶ 5, 7; Docket No. 62-1 at 1, 5, ¶¶ 1, 2.  It is also undisputed that EMP maintains that PGM and C&M are competitors.  Docket No. 62 at 5, ¶¶ 22-23.

ALA argues that "EMP cannot prove that ALA breached the noncompete clause by soliciting or selling PGM's and C&M's products[ ] because EMP has no evidence that PGM or C&M are 'general-purpose production machining job shop[s].'"  *Id.* at 14.  EMP responds that the evidence shows that "EMP and PGM are competitors, regardless of the outdated terminology used in the Contract," and that ALA presented C&M to manufacture parts for MKS that EMP could have produced.  Docket No. 76 at 16. However, EMP has not raised disputed facts indicating that PGM or C&M are general-purpose production machining job shops[11] or that "competitive" as used in the Contract means something other than "the products of a general purpose production machining job shop."[12]  Therefore, EMP has not raised a genuine dispute of fact indicating that

---

[11] EMP states that Mr. Lupton admitted that the contract terminology is "nebulous and not subject to an exact definition."  Docket No. 76 at 16; *see* Docket No. 76-1 at 3-4, 22:21- 23:2 (stating that "general machining" and "precision machining" are "nebulous phrases").  However, Mr. Lupton's comments about the term "general machining" do not raise a genuine issue of fact as to whether PGM or C&M are general-purpose production machining job shops.

[12] EMP denies this fact without citing evidence to support its denial.  Docket No. 76 at 4, ¶ 7.  The Court will therefore deem this fact admitted.  EMP adds that the "definition of 'competitive' has changed due to the parties' course of dealing."  *Id.* Assuming that EMP is attempting to establish a fact, the Court's practice standards require that a party must do so in a separate statement of additional facts.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v.  EMP did not assert that the definition of "competitive" has changed in its statement of additional disputed facts.  Moreover, even if EMP had included this assertion in its statement of additional facts, the evidence it cites does not indicate that the definition of "competitive" changed as a result of the parties' course of dealing.  EMP cites deposition testimony by EMP's vice president that he is "aware of the evolution of the companies in the ordinary course of business," Docket No. 76-4 at 3, 182:4-6; and deposition testimony from an individual named Steven Bronson that EMP is "more of a contract manufacturer doing

ALA breached the noncompete clause by selling PGM's or C&M's products.  The Court will grant summary judgment in favor of ALA on EMP's claim that ALA breached the noncompete clause.

### C.  Damages

ALA argues that EMP has failed to identify compensatory and consequential damages stemming from ALA's alleged breach of the Contract.  Docket No. 62 at 15-16. It is undisputed that EMP did not calculate its damages by the fact discovery deadline, March 15, 2023, and still had not calculated its damages by the time ALA filed its motion for summary judgment.  *Id.* at 6, 8, ¶¶ 30, 38.   EMP argues that it has a substantial justification for not disclosing these calculations because "the documents from which these calculations will necessarily be based are being improperly withheld from EMP." Docket No. 76 at 17.

At the time that ALA filed its motion for summary judgment, there was an ongoing discovery dispute concerning documents related to ALA's sale of PGM parts to Viasat and C&M parts to MKS.  *See* Docket No. 44 at 2; Docket No. 58 at 1-2.  EMP had filed (1) a motion for sanctions asking the Court to compel Viasat to produce engineering drawings of the parts that PGM made for Viasat and purchase records for all purchases that were brokered by ALA, Docket No. 44 at 2-4; and (2) a motion to reopen discovery

---

precision parts."  Docket No. 76-2 at 3, 41:6-7.  Docket No. 76 at 4, ¶ 7.  Under New York law, "a course of dealing can only be established by the previous conduct of the parties to the contract."  *V.J. Gautieri Inc. v. State of N.Y.*, 195 A.D. 2d 669, 671 (N.Y. App. Div. 1993).  Because EMP's evidence does not concern the previous conduct of the parties, it does not support EMP's assertion that the definition of "competitive" changed as a result of the parties' course of dealing.  Accordingly, even if EMP had included this assertion in its statement of disputed facts, it would not have raised a disputed fact concerning a changed definition of "competitive."

so that EMP could obtain engineering drawings of the parts that C&M made for MKS as well as the drawings and purchase records that EMP requested from Viasat.  Docket No. 58 at 3.  EMP sought the engineering drawings in order to determine whether the parts made by PGM and C&M were competitive with parts manufactured by EMP.  Docket No. 44 at 2-3; Docket No. 58 at 3.  EMP sought the sales data from Viasat in order to "identify any other manufacturers [ALA] has represented to Viasat and confirm the sales numbers of such products."  Docket No. 44 at 3.  Accordingly, the documents that EMP sought relate only to EMP's claim that ALA breached the noncompete clause of the Contract by selling competitive products.  Since the Court is granting summary judgment on this claim, whether EMP has a substantial justification for its failure to disclose the damages caused by ALA's alleged breach of the noncompete clause is irrelevant.

EMP offers no explanation why discovery disputes related to ALA's alleged breach of the noncompete clause prevented EMP from making any disclosures regarding damages caused by ALA's alleged breach of the best efforts clause.  Moreover, EMP has not filed a properly supported request pursuant to Federal Rule of Civil Procedure 56(d) for the Court to defer ruling on this issue on the basis that EMP is unable to present facts essential to justify its opposition to summary judgment on the issue of damages.  *See* Fed. R. Civ. P. 56(d).

ALA argues that, "[e]ven if EMP had identified its alleged damages, EMP has no evidence to support damages."  Docket No. 62 at 16.  EMP argues that its president and vice president can testify as to the damages resulting from the alleged breach of the best efforts clause because they "can testify as fact witnesses to trends in EMP's

sales over the past decade, and these trends represent sales growth that could have been achieved if ALA exercised its best efforts in performance of the Contract." Docket No. 76 at 19. However, it is undisputed that these witnesses were unable to identify EMP's alleged damages during their depositions, Docket No. 62 at 7, ¶ 35, and EMP has not indicated that they would be able do so at trial. Accordingly, EMP has failed to raise a genuine question of material fact as to the existence of compensatory and consequential damages resulting from the alleged breach of the best efforts clause. The Court will grant summary judgment as to that part of the damages element of EMP's claim that alleges compensatory and consequential damages. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

ALA argues that the Court should dismiss EMP's breach of contract claim because EMP cannot establish that it is entitled to compensatory and consequential damages. Docket No. 62 at 15-19. Although a plaintiff must show damages to establish a breach of contract, "it is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of the loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Martell Strategic Funding*, 2019 WL 632364, at *6-7 (quoting *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009) (alteration omitted)). Furthermore, "it is appropriate to deny a defendant's motion for summary judgment on the issue of damages where, even if the

plaintiff has not proven actual damages, nominal damages could be awarded." *Zurich Am. Life. Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 719-720 (S.D.N.Y. 2022) (applying New York law) (collecting cases); *see also Fantasia v. Montefiore New Rochelle*, 2022 WL 20540940, at *5 (S.D.N.Y. Jun. 16, 2022) (noting that nominal damages are a generally accepted remedy in contract actions and holding that, because plaintiff requested compensatory damages in her complaint, she may seek nominal damages at trial) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2nd Cir. 1998)). Here, the Court has declined to grant summary judgment on the breach element of EMP's claim concerning breach of the best efforts clause. Because EMP could be awarded nominal damages on this basis, the Court will not dismiss EMP's breach of contract claim in its entirety, but will only grant summary judgment as to compensatory and consequential damages.

### D.  Unjust Enrichment

ALA argues that it is entitled to summary judgment on EMP's unjust enrichment claim because the claim "arises from ALA's alleged breach of the Contract." Docket No. 62 at 20. EMP argues that it would be premature to grant summary judgment on the unjust enrichment claim because the Court has not yet made any determinations about what conduct falls within the scope of the Contract. Docket No. 76 at 20. EMP's complaint alleges that ALA "has been unjustly enriched and received the benefit at Plaintiff EMP's expense by the material nonperformance under the [Contract] and failure to use its best efforts to provide sales services and assistance to EMP." Docket No. 84 at 7, ¶ 31.

Under both Colorado and New York law,[13] a party may not recover for unjust enrichment when an express contract covers the same subject matter. *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003) ("In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract.") (citation omitted); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E. 2d 268, 274 (N.Y. 2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.") (citation omitted). Because EMP's unjust enrichment claim is based on alleged "material nonperformance" of the Contract and failure to use best efforts to provide sales and assistance to EMP, Docket No. 84 at 7, ¶ 31, the subject matter of the unjust enrichment claim is covered by an express contract, namely, the Contract. Therefore, EMP may not recover[14] for unjust enrichment. The Court will grant summary judgment in favor of ALA on this claim.

---

[13] The Court will not conduct a choice of law analysis as to EMP's unjust enrichment claim because the outcome is the same under either Colorado or New York law. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 839 n.20 (1985) ("If the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them.") (citation omitted); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("According to conflicts of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question.") (citation omitted).

[14] Although a plaintiff "may *plead* claims for breach of contract and unjust enrichment in the alternative, a party cannot *recover* for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Stone Creek Bus. Center, LLLP v. Stone Creek-Colorado, LLC*, No. 20-cv-01413-PAB-GPG, 2022 WL 4448822, at

**V. CONCLUSION**

Therefore, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 62] is

**GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that the portion of EMP's first cause of action that alleges a breach of

the noncompete clause is **DISMISSED with prejudice**.  It is further

**ORDERED** that EMP's second cause of action is **DISMISSED with prejudice**.


DATED March 15, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

*2 (D. Colo. Sep. 23, 2022) (quotation and citation omitted) (granting summary
judgment in favor of defendant on unjust enrichment claim).