**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC.,

    Plaintiff,

v.

ALAN LUPTON ASSOCIATES INC.,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER ORDER OF
SEPTEMBER 21, 2023**

---

**Susan Prose, United States Magistrate Judge**

This matter is before this court on the motion (ECF No. 168) of Plaintiff Electro-Mechanical Products, Inc. (referred to as "EMP" or Plaintiff) to reconsider the order of September 21, 2023, ECF No. 127 (referred to as the "September 21 Order"). The court will refer to this Motion to Reconsider as "the Motion." In the September 21 Order, this court granted in part and denied in part EMP's motions to compel subpoenas to non-parties Viasat Services Holding Company ("Viasat") (ECF No. 44) and PGM Corp. (ECF No. 94).

PGM opposes the Motion. ECF Nos. 177-79. Defendant Alan Lupton Associates Inc. ("ALA") also opposes. ECF No. 185. And Viasat likewise opposes. ECF No. 186. EMP has replied. ECF Nos. 188-190. The undersigned Magistrate Judge considers the Motion pursuant to 28 U.S.C. § 636(b)(1)(A) and the Memorandum dated November 21, 2023. ECF No. 169. *See also* Order Referring Case. ECF No. 14. As follows, the court DENIES the Motion.

## BACKGROUND

The September 21 Order recites the factual and procedural background in detail, and this court does not repeat that history here. It suffices to say that EMP sought to compel discovery from Viasat and PGM to support EMP's claim that ALA violated the noncompete clause of the parties' written contract for sales and marketing services dating from 1989 and as amended in March 2000. ECF No. 84-1 (referred to hereafter as the "Amended Contract," attached to the second amended complaint, "SAC"). At the time, EMP alleged that ALA breached the noncompete clause by marketing products for two competitors of EMP: PGM and another non-party, C&M Machine Products, Inc. t/a C&M Precision Tech ("C&M").

The September 21 Order granted EMP's motions to compel only to the extent of certain unredacted sales data and sufficient information for EMP to identify the parts in question. September 21 Order at 24. The court denied EMP's motions as to engineering drawings because those requests were unduly burdensome to the non-parties due to the "quantity of different parts and vendors" and the competitive sensitivity of the documents to Viasat, PGM, and their respective customers for those parts. *Id*. at 20-24. The court set a status conference to discuss whether the sales data was likewise competitively sensitive and thus whether the Protective Order needed amendment to define a second tier of attorneys' eyes only. The parties later indicated that yes, the non-parties' sales data should be protected in that manner, and the court amended the Protective Order to do so. ECF No. 161.

On November 9, 2023, on EMP's further request, this court reopened expert discovery "for the limited purpose of allowing Plaintiffs to retain an engineering expert to review and opine on the documents marked as 'Confidential Information-Attorneys Eyes Only' pursuant to the

2

Amended Protective Order 161. Defendant will be allowed one rebuttal expert, limited to the same topic." ECF No. 164 (minute entry). The court also extended the related deadlines and continued the final pretrial conference. *Id*.

On November 21, 2023, EMP filed its present Motion to reconsider the September 21 Order. ECF No. 168. The briefing on the Motion was completed on December 22, 2023. ECF No. 190.

On March 15, 2024, Chief Judge Brimmer granted partial summary judgment to ALA on the noncompete clause and on EMP's unjust enrichment claim. ECF No. 195 (Order of March 15, 2024) at 8-10, 14. EMP's only claim going forward is for breach of the contract's "best efforts" clause, as to nominal damages only. *Id*. at 8, 13.

## LEGAL STANDARDS

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration "fall[] within [the] [c]ourt's plenary power to revisit and amend interlocutory orders as justice requires." *Armata v. Certain Underwriters at Lloyd's London-Syndicate 1861*, No. 21-cv-00160-NYW-STV, 2023 WL 5310175, at *3 (D. Colo. Aug. 15, 2023) (internal quotation marks omitted); *see also FTC v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) ("The decision to grant reconsideration is committed to the sound discretion of the district court.") (cleaned up).

The court is to consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (courts may grant motions to reconsider where there is "(1) an intervening

3

change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice"). Motions to reconsider "are inappropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Id.* "Absent extraordinary circumstances, . . . the basis for the second motion must not have been available at the time the first motion was filed." *Id.*

The standards for discovery remain as the court states in the September 21 Order, and the court does not repeat them here.

## ANALYSIS

In this case, EMP argues new evidence—namely, the sales information that the non-parties produced pursuant to the September 21 Order—warrants reconsideration of the court's denial of EMP's requests for the engineering drawings, or at least additional information to identify the parts included in the sales information. EMP argues that the volume of sales is very large, "in the tens of millions of dollars." ECF No. 190 at 2. EMP also argues that Viasat and PGM did not properly comply with the subpoenas or the September 21 Order because they did not produce sufficient information for EMP to identify the parts and determine whether it was capable of manufacturing them too. EMP argues the engineering drawings (or other, additional information) is necessary for it to determine which sales to include in EMP's damages from ALA's breach of the noncompete clause.

But subsequent events have overtaken the Motion. As noted above, Chief Judge Brimmer granted ALA's motion for summary judgment as to the noncompete clause. ECF No. 195. He specifically found that:

4

> EMP has not raised disputed facts indicating that PGM or C&M are general purpose production machining job shops or that 'competitive' as used in the Contract means something other than 'the products of a general purpose production machining job shop.' Therefore, EMP has not raised a genuine dispute of fact indicating that ALA breached the noncompete clause by selling PGM's or C&M's products.

*Id*. at 9-10 (footnotes omitted).[1] Thus, EMP no longer has a claim involving the noncompete clause.

**The noncompete clause was the only claim for which EMP's subpoena discovery was relevant.** *See* September 21 Order at 2 (discussing only the noncompete clause), *id*. at 3 (quoting EMP's motion to compel as arguing the engineering drawings "[a]re vital to EMP's case because a review of these drawings will determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's products."); *id*. at 12 (finding relevance of "Viasat's sales that ALA marketed for competitors of EMP"); *id*. at 17 (finding the same as to PGM's sales data). Because EMP no longer has any claim to which the subpoena discovery would be relevant, this court DENIES the Motion.

This court recognizes that EMP currently has a motion pending with Chief Judge Brimmer to reconsider the summary judgment order, and that therein, EMP argues in part that "the noncompete claim turns on unresolved discovery issues regarding the actual products at issue." ECF No. 196 at 3. This court does not weigh in on the merits of EMP's motion to reconsider summary judgment, but simply notes: EMP has never argued to this court that the unresolved discovery issues—i.e., the subpoena discovery at issue in the present Motion—would

---

[1] EMP's subpoenas to Viasat and PGM sought information concerning parts that ALA marketed or brokered to them, or that they purchased from C&M Precision. *See* September 21 Order at 2, 16.

be relevant to showing either (1) that PGM or C&M were "general machine shops," or (2) how the noncompete clause should be interpreted.

Rather, in arguments to this court, EMP consistently argued that its subpoena discovery (concerning products ALA marketed or brokered for Viasat, PGM, or C&M) was relevant because in EMP's view the noncompete clause applied to all products EMP was capable of manufacturing. *See, e.g.*, ECF No. 93 (Order of July 28, 2023) at 5 and 8 (this court noted the contractual definition of "competitive products" as "products of a general-purpose production machining job shop," ALA's opposition to EMP's subpoena discovery because PGM is not such a shop, and EMP's argument "that 'competitive products' must be understood in light of how EMP has developed over the course of the parties' multi-decade relationship from a general-purpose shop to one encompassing precision work"). *See also* September 21 Order at 3 (quoting EMP's argument that the engineering drawings "[a]re vital to EMP's case because a review of these drawings will determine whether EMP has the capability to make the subject parts, thereby confirming that the parts are competitive with EMP's products."); *id*. at 20 (noting "EMP would like to review these drawings to determine whether it was capable of manufacturing them (for purposes of calculating damages in this case)"). In short, because EMP has never argued that this discovery would support either EMP's interpretation of the noncompete clause or that ALA breached that clause by marketing products of other general machine shops, this court sees no reason to consider EMP's Motion as seeking discovery that could be relevant to its motion to reconsider the summary judgment order.

**More importantly, even if the noncompete clause were still in the case, this court would still deny the Motion as seeking unduly burdensome discovery from non-parties.**

While EMP points to a large volume of sales and to Viasat and PGM's alleged noncompliance with the September 21 Order, EMP does not point to any facts that change this court's first reason for denying EMP's request for the engineering drawings: undue burden. *See* September 21 Order at 20-21, n.11. The same reasoning applies to EMP's request for any other additional information to identify the parts that are included in the sales data.

First, as to undue burden to *Viasat*, even if, as EMP contends, there are tens of millions of dollars in sales, the court still finds that requiring production of the engineering drawings would be unduly burdensome to require of the non-party. There are at least 134 parts or assemblies for which Viasat would have to collect and produce engineering drawings, and Viasat would have to provide prior notice to many other non-parties pursuant to non-disclosure agreements. *See* September 21 Order at 20-21. The court again finds that even if EMP still had a claim to which this discovery would be relevant (which it does not), such an onerous task should not be required of the non-party.

Second, EMP's request would likewise be unduly burdensome to *PGM.* In the September 21 Order, the court noted the request would impose a burden to PGM, but whether that burden would be *undue* was less clear:

> PGM's ten pages of sales to Viasat (ECF Nos. 107-4 and 108-4)—combined with its assertion that three other customers are also responsive to EMP's request—shows a burden. It is less clear whether that burden is undue. PGM does not appear to state how many different parts are at issue.

September 21 Order at 21 n.11.

In its response to the present Motion, PGM provides several facts specifically showing that requiring it to produce engineering drawings (or additional information to identify the

7

specific parts included in the sales data already produced) would impose an undue burden. ECF No. 177 at 7-8. PGM notes:

> PGM produced at its own cost PGM Corporate Vice President, Todd Hockenberger, for examination by Plaintiff's counsel. PGM produced various records to Plaintiff at that deposition. . . . In compliance with Magistrate Judge Prose's Order of September 21, 2023, PGM compiled and disclosed more than 20,000 data points relative to its sales volumes and prices for three years.
>
> For the year 2020 alone, PGM produced more than 1,000 lines of data relative to more than 100 parts. Each line of data contained the customer name, the part number, a description of the part, the date the parts shipped, the quantity shipped, the price per unit, the total sale price and, if known, the product for which the part was made. PGM also disclosed whether each part was manufactured for commercial or military application. In addition and when possible, PGM provided links to its customers' websites so Plaintiff could see the product for which the part was manufactured as well as the customer's description of the part. PGM provided a comparable volume of data for 2021 and 2023. Compiling this information took Mr. Hockenberger 10 hours with negative impact to PGM's business operations.

*Id.* (paragraph break added). PGM has thus already incurred a significant burden in producing the sales information that the court required in the September 21 Order. Requiring it to expend further time and resources in collecting engineering drawings and producing them for EMP's outside expert (Dr. Daniel Blood, ECF No. 188 at 3-4) would impose an undue burden on this non-party.

Moreover, to the extent EMP requests in the alternative only additional, identifying data and not the engineering drawings themselves, PGM shows this would impose even more burden:

> Greater concern to interruption of PGM's business operations lies with Plaintiff's current demands. To identify, compile and produce additional details for its parts, including (1) the materials used to manufacture each part; (2) the length, (3) width, (4) height, (5) largest diameter, (6) smallest diameter; (7) the tightest tolerances called out in the engineering drawings, (8) the type of feature to which that tolerance applies (e.g. length, diameter, flatness, etc.), (9) whether the part requires precision grinding and (10) how this attribute is called out on the drawing (e.g. by

> way of a finish requirement, or numerically as a minimum profilometer reading) would expand PGM's production by approximately 10,000 data points.
>
> This information does not exist in a database. A database would need to be created "from scratch." PGM would need to locate and recover the engineering drawings for each and every part listed in its original production. Each piece of data sought by Plaintiff would have to be acquired from each engineering drawing, recorded and entered by hand into a spreadsheet. Setting aside all proprietary and/or trade secret considerations, the physical exercise and time requirement Plaintiff seeks to impose on PGM is significant and deleterious to its business operations.

ECF No. 177 at 8-9 (paragraph break added).

Thus, regardless of the fact that EMP has a pending motion for reconsideration of the summary judgment order, this court DENIES the Motion to reconsider the September 21 Order because EMP's request for engineering drawings or further identifying information would be unduly burdensome to Viasat and PGM.

## CONCLUSION

In short, EMP's Motion No. 168 to reconsider the September 21 Order is DENIED. The final pretrial conference for EMP and ALA remains set before this court on **June 18, 2024, at 2:00 p.m**. However, the conference shall be held **telephonically**. The parties shall attend by calling 571-353-2301, Guest meeting ID- 868150043. All attendees shall please mute their phone when not speaking and not use speaker phone. The proposed final pretrial order remains due seven days before the conference.[2]

---

[2] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

DATED: May 21, 2024

BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").