## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC.,
a Colorado corporation,

        Plaintiff,

v.

ALAN LUPTON ASSOCIATES INC.,
a New York corporation,

        Defendant.

---

## RESPONSE IN OPPOSITION TO NONPARTY VIASAT SERVICES HOLDING COMPANY'S MOTION FOR SHIFTING OF FEES AND COSTS INCURRED DUE TO PLAINTIFF'S SUBPOENA [ECF 207]

---

        Plaintiff Electro-Mechanical Products, Inc. ("EMP"), by and through counsel, Anthony L. Leffert of Robinson Waters & O'Dorisio, P.C., submits the within Brief in opposition to Nonparty Viasat Services Holding Company's Motion for Shifting of Fees and Costs Incurred Due to Plaintiff's Subpoena.

### I.  Factual Background.

        It is necessary to briefly recap the factual and procedural background of the subpoena at issue in this Motion because Viasat Services Holding Company ("Viasat") makes a number of material misrepresentations about the background of this case in the Motion. On March 31, 2023, EMP served a Subpoena to Produce Documents ("the Subpoena") on Viasat. Contrary to Viasat's claim, the Subpoena requested documents to identify the parts in question and sales data for those parts. Further, EMP's counsel never limited the Subpoena to only sales records. This is a direct

misrepresentation to the Court. Viasat produced nothing in response to the Subpoena and indicated, through counsel, that it did not intend to produce any of the requested information. Viasat claims the "sales data responsive to EMP's subpoena was in the possession, custody and control of a party, Defendant Alan Lupton Associates Inc. ('ALA')" and that EMP did not pursue this data from ALA. This claim is false. EMP pursued this data from ALA, who also resisted production of this data. ALA and Viasat played a "shell game" with the sales data, with ALA claiming that it could not produce this data due to "confidentiality and non-disclosure obligations"[1] to Viasat, while Viasat's response was to tell EMP to simply get the documents from ALA while ignoring its independent obligation to respond to the Subpoena. Viasat also incorrectly claims that the Court found that "EMP did not pursue the complete ViaSat sales information from ALA" in discovery. What the Court actually found in this respect was that "the court does not find that EMP had to first exhaust its request for production to ALA before seeking the sales information from ViaSat." Further, as the Court already knows, the sales data would be of limited value without a description of the products encompassed within it. ALA represented to the Court that it did not have such product information in the form of drawings and the like.[2]

Viasat did not object to the Subpoena by the deadline set by Rule 45, nor did it ever move to quash the Subpoena. ALA did make such a motion, but the Court rightly denied that motion because ALA lacked standing to make it. Faced with Viasat's refusal to comply with a validly issued subpoena, EMP was forced to file a Motion for Contempt Sanctions against Viasat [ECF

---

[1] See Ex. 1, ALA response to discovery requests, dated 3/1/2023, at page 2.
[2] See ECF 52, Magistrate Judge Crews' minute entry regarding the parties' discovery dispute conference, in which he notes "defendant claims he does not have the engineering drawings in his possession, custody or control."

44] which was eventually granted-in-part. While Viasat characterizes the Motion for Contempt Sanctions as "premature" and "unsuccessful", that ignores the facts that EMP's motion: (1) was necessitated by Viasat's own refusal to cooperate; and (2) was successful, in part. Viasat resisted the Motion for Contempt Sanctions on all grounds. Viasat's argued-for outcome was for EMP to receive no further documents from Viasat. In this regard, Viasat raised a number of frivolous points such as claiming that EMP had subpoenaed the wrong corporate entity which the Court deemed a waived argument. As will be discussed below, none of the charges associated with responding to the Motion for Contempt Sanctions are charges for complying with the Subpoena. Instead, all these charges were incurred in *resisting* the Subpoena.

Viasat goes on to misconstrue the Court's order partially granting the Motion for Contempt Sanctions. While the Court ultimately found that producing engineering drawings for the number of parts involved would impose an undue burden on Viasat, Viasat incorrectly claims that the Court found "EMP improperly sought to share this sensitive material with its competitive decision makers." The Court never found an improper motive on the part of EMP. The Court merely found that the difficulties of separating knowledge of these allegedly trade secret parts from the competitive decisions made by EMP's principals shifted the balance in favor of protecting these drawings from disclosure. In fact, EMP sought to ameliorate this risk by retaining an expert witness to review the engineering drawings.

Viasat is further incorrect to allege that the sales records it was compelled to produce have "no value" to EMP. While the Court is well-familiar with EMP's arguments that it required the engineering drawings to validate that it could produce the products that are the subject of this sales data, the fact that EMP has subsequently been unable to receive these drawings does not diminish

the value of the sales data. The sales data establishes that ALA has brokered tens of millions of dollars in sales from PGM to Viasat. EMP intends to introduce these sales numbers at trial for the purpose of demonstrating that ALA has breached the "best efforts" clause in the agreement between ALA and EMP. It is incorrect to allege, as Viasat does, that the sales data has no value in the absence of the engineering drawings.

Viasat further recites the effort it allegedly spent in attending two status conferences and preparing a response to the objections lodged by EMP to the Court's order on the Motion for Contempt Sanctions. But as Viasat even admits in its Motion, many of the arguments in the Objection and the Motion for Reconsideration are the same as arguments previously presented, so Viasat's efforts in responding to these same arguments should have been presumably limited.

Finally, Viasat uses impermissible hindsight bias to claim that because EMP's claims for breach of the prohibition on the brokering of "competitive products" was ultimately dismissed on summary judgment, that should impact the analysis of shifting of fees for the Subpoena. Of course, at the time all the activities relevant to this Motion took place, ALA's summary judgment motion was undecided, and there was no decision that directly foreclosed the need for the drawings sought in the Subpoena. EMP cannot be held to a standard of having to tailor its litigation strategy to possible outcomes of pending motions. The decision on ALA's summary judgment motion is simply irrelevant to this analysis.

## II. Argument.

### A. The Fees and Costs Associated with Resisting a Subpoena are Not Subject to Shifting under Rule 45.

Viasat's Motion fails for the simple reason that the vast majority of fees claimed are for resisting the Subpoena, and thus they are not subject to fee shifting under Rule 45. While a party

may be entitled to fee shifting for fees incurred in *complying with* a subpoena, it is also clear that a party is not entitled to fee shifting for fees incurred in *resisting* a subpoena. A review of all the cases cited by Viasat in the Motion shows that those cases uniformly deal with whether fees for complying with a subpoena can be shifted to the party that served the subpoena. None of the cases cited by Viasat support the proposition that the fees for resisting a subpoena can be shifted under Rule 45.

While the Tenth Circuit has not directly addressed this issue, a persuasive case from the Ninth Circuit has. In *Mount Hope Church v. Bash Back!*, 705 F.3d 418 (9th Cir. 2012), the Ninth Circuit rejected a claim for fee shifting where the subpoena recipient's fees were all incurred in resisting the subpoena on privilege grounds. The Ninth Circuit stated:

> Appellees urge us to look beyond the face of the subpoena and to read the "undue burden" language in Rule 45(c)(1) as including the burdens associated with guarding protected information. We decline, however, to adopt such a reading. Our only Rule 45(c)(1) sanction-specific case interprets "undue burden" as the <u>burden associated with compliance</u>…
>
> Given that the "undue burden" language is <u>limited to harms inflicted by complying with the subpoena</u>, it follows that other Rule 26(g) duties, acting consistent with existing law or with good reason to change it and absent bad faith, relate to the subpoena process and not to the adjudication of related follow-on issues, such as whether the subpoenaed information is potentially protected by a privilege.

*Mount Hope Church*, 705 F.3d 427-428 (internal citations omitted and emphasis added). The Court also noted that while a limited number of courts had indicated a willingness to read Rule 45 more broadly, "district courts have routinely rejected this interpretation" *citing Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 672 (N.D.Fla.2010) (denying sanctions in the form of attorneys' fees where a subpoena was not overly broad); *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C.2009)

("[T]he mere fact ... that a disputed subpoena is ultimately deemed unwarranted does not, standing alone, demand the imposition of sanctions."); *Scherer v. GE Capital Corp*., 185 F.R.D. 351, 352 (D.Kan.1999) (finding that sanctions were not appropriate simply for the expense of filing the motion to quash).

With this background in mind, it is clear that the vast majority of the fees Viasat requests in its Motion are not properly awardable under Rule 45. Viasat claims to have spent $8,945.40 from the time that EMP served the Subpoena to the time that the Motion for Contempt was filed. All of this time was spent resisting the Subpoena, because no response to the Subpoena was made during this timeframe. Next, Viasat claims to have incurred $70,689.16 resisting EMP's Motion for Contempt Sanctions.[3] These charges cannot be considered anything other than charges for resisting the Subpoena. Similarly, Viasat claims an additional $42,724.05 associated with responding to EMP's Motion for Reconsideration, which again is nothing more than Viasat's continued resistance to the Subpoena. The only fees that Viasat claims which could fairly be considered to be fees associated with compliance with the Subpoena are the mere $3,411 associated with producing the sales data that Viasat was compelled to produce by the Court's order. As will be discussed below, Viasat does not meet the criteria for any fee shifting in this case, but if the Court does find such shifting warranted, the only amount that could possibly be subject to such shifting is $3,411 because all of the other fees were spent resisting the Subpoena and are therefore not properly awardable.

---

[3] Which the Court treated as a Motion to Compel.

**B. Even if the Fees Associated with Resisting the Subpoena are Subject to Shifting, Which They Are Not, Viasat Does Not Meet the Criteria for Fee Shifting.**

For the reasons stated above, the Court should dismiss the present Motion because fees associated with resisting a subpoena are not subject to shifting under Rule 45. However, for the sake of completeness, EMP will analyze the factors that govern fee shifting under Rule 45. A proper review of these factors demonstrates that Viasat is not entitled to fee shifting in this case. Viasat overstates the factors in the present Motion. A three-part test is often used in determining whether, and to what extent, attorney's fees and costs should be shifted from the non-party responding to a subpoena to the party seeking the discovery: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance.[4] *See Crandall v. City & County of Denver, Colorado*, 2007 WL 162743 (D.Colo.2007). While Viasat cites the case *In re Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-KMT, 2012 WL 1901217 (D. Colo. May 24, 2012) for the five-factor test in its Motion, it does not faithfully recite what those factors are in that case: (1) whether the Respondents actually have an interest in the outcome of the case, (2) whether the Respondents can more readily bear the costs than the requesting party, (3) whether the litigation is of public importance; (4) the scope of the discovery and the extent to which the Respondents were required to separate responsive information from privileged or irrelevant material; and (5) the reasonableness of the costs of production and fees requested. As can be seen from the emphasis above, the *Michael Wilson* factors contemplate fee shifting for *compliance* with a subpoena, not for *resistance* to a subpoena.

---

[4] This third factor is not implicated by this case, which is litigation between purely private parties.

### 1. Viasat is Not a Disinterested Party.

Contrary to its claims in the present Motion, Viasat is not a disinterested party. Courts in this District have held that an award of costs or fees is inappropriate where the subpoenaed nonparty is interested in the case. *See, e.g., In re Michael Wilson & Partners, Ltd.*, 2012 WL 1901217, at *4. In determining that the nonparty respondents in *In re Application of Michael Wilson and Partners, Limited* were interested parties, the Court found that the underlying litigation related "directly to their projects and dealings with parties on both sides of the underlying dispute." *Id*. Moreover, another recent case on the subject held that "[w]hen a party from whom documents are sought is not a classic disinterested non-party...the court can order that the non-party produce the documents at its own expense." *In re EpiPen Mktg., Sales & Antitrust Litig*., No. 17-md-2785-DDC-TJ, 2019 WL 423821, at *2 (D. Kan. Feb. 4, 2019) (internal quotation and citations omitted).

Viasat is a current customer of ALA and EMP is a former supplier to Viasat. Thus, Viasat has had dealings with both sides of this dispute. While Viasat feigns indifference to the outcome of this case, it ignores the fact that ALA brokers sales in the millions of dollars per year for Viasat. It is simply untrue to claim, as Viasat does, that Viasat has no stake in ALA and that it has nothing to gain from either party's victory.  This litigation is directly related to Viasat's projects with ALA, and Viasat is not a classic disinterested non-party. This factor weights against any fee shifting.

### 2. Viasat Can Bear the Cost of Production.

Viasat incorrectly argues that "EMP or ALA could and should have borne the cost of production," but this argument is not what the second factor asks. Correctly stated, the second factor is "whether the nonparty can more readily bear costs than the party." This factor merely looks at the relative financial positions of the subpoena recipient and the party and apportions fees

to whichever one of them can more readily bear the cost. Here a comparison of Viasat to EMP establishes that Viasat can more readily bear costs than EMP.

Viasat is a publicly traded company which reported quarterly revenue of $4.6 billion in its most recent quarterly report.[5] EMP, on the other hand, is a closely-held corporation, whose revenue on a quarterly basis is approximately 0.15%  of that reported by Viasat. Because there is simply no comparison between a large corporation like Viasat and EMP, Viasat obfuscates this issue by alleging the question should be what party "could" or "should" bear costs. Viasat's arguments about whether EMP should have sought documents from ALA or whether the Subpoena was proper are irrelevant to this analysis. A multi-billion corporation like Viasat can bear the costs associated with the Subpoena, even the unreasonably inflated costs that were charged in this case. This factor also weighs against any fee shifting.

### 3. The Mere Fact that the Subpoena was Found to be Unduly Burdensome Does Not, Standing Alone, Justify Fee Shifting.

While this is not one of the official factors governing fee shifting under Rule 45, this factor appropriately considers the "burden to sift through and prepare responsive production." Other than the *de minimis* production of sales data, Viasat did not actually produce anything in response to the Subpoena, so the Court need not even consider this factor.

Viasat improperly tries to expand the scope of this factor by citing the proposition that "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1)" citing the case *Black v. Wrigley*, No. 18-cv-2367-GPC-BGS, 2019 WL 2717212 at *5 (S.D. Cal. June 28, 2019),

---

[5]   See   https://investors.viasat.com/static-files/284ad1b9-6b14-439a-9e51-d89d8a12c6cc;   last accessed 06/14/2024.

but even the *Black* case itself recognizes that "[o]ther courts have declined to follow that interpretation." In fact, in *Mount Hope Church*, the Ninth Circuit also considered this proposition and found that "district courts have routinely rejected this interpretation." Instead, other courts have found that the mere fact that a subpoena was ultimately quashed does not, standing alone, require the imposition of sanctions (*see, e.g., Alberts v. HCA Inc*., 405 B.R. 498, 502–03 (D.D.C. 2009)). In fact, a case from this District, *Scherer v. GE Capital Corp.*, 185 F.R.D. 351, 352 (D. Kan. 1999), found that "[a] court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." Here, EMP has never acted in bad faith or for an improper purpose or in a manner inconsistent with law. EMP has argued in good faith that it needed the engineering drawings that were sought to establish a connection between the sales ALA brokered and the "competitive" nature of those products. The fact that this issue was ultimately not resolved in EMP's favor, does not demonstrate bad faith or anything else that would justify fee shifting in this case. EMP was successful in obtaining the sales records through the Court granting its motion to compel.

### 4.   Viasat's Claimed Fees are Unreasonable.

The fees claimed by Viasat in the Motion are unreasonable, and in no way proportional to the amount of work produced in this case. As the party seeking reimbursement, Viasat has the burden of establishing the existence and <u>reasonableness</u> of the costs or fees incurred. *Klesch & Co. v. Liberty Media Corp*., 217 F.R.D. 517, 524 (D.Colo.2003) Viasat claims that "[m]ost of Viasat's expenses came from meeting and conferring with EMP" about the Subpoena, but that is manifestly untrue by reference to the billing statements attached to Viasat's Motion. As will be discussed

below, the vast majority of these fees were accrued in the very inefficient preparation of various filings in this case.

Viasat's counsel charged in excess of $70,000 to prepare: (1) a perfunctory, three-page motion to extend its deadline for responding to the Motion for Contempt Sanctions; and 2) the actual response to the Motion for Contempt, which was a mere fifteen (15) pages long and was accompanied by an additional fifteen (15) pages of declarations from four declarants and an unopposed motion to restrict these documents. Fees in excess of $70,000 for this work are objectively unreasonable, considering the amount of work product produced and filed with the Court. Looking at specific time entries for this work, Mr. Fitch charged a total of **8.7 hours** for the preparation of a three (3) page motion to extend the deadline for responding to the Motion for Contempt Sanctions and other attorneys and personnel at his firm charged an additional **7.1 hours** for this same motion. So, a total of over fifteen hours was spent on a simple motion to extend, that did not include any complex issues of law. This is an objectively unreasonable amount of time spent on this work. Unfortunately, it is part and parcel with the unreasonably inflated charges Viasat is now claiming.

As for the preparation of the actual Response to the Motion for Contempt Sanctions, Mr. Fitch charged a total of **37.9 hours** for this fifteen-page document, and other attorneys and personnel at his firm also charged an additional **36.4 hours** for working on this document. On top of that, Mr. Fitch and various members of his firm spent an additional **40.8 hours** for an unopposed motion to restrict the Response to the Motion for Contempt Sanctions. Between preparing and restricting the Response to the Motion for Contempt Sanction, Viasat's counsel spent over 115 hours on these documents, which is again, objectively unreasonable.

Viasat's counsel then charged an additional $42,000 for the following: (1) to prepare a perfunctory three-page motion for leave to respond to EMP's objection (for which Viasat's counsel charged **8.3 hours**); (2) to attend two telephonic status conferences (for which Mr. Fitch charged **2.7 and 3.2 hours,** respectively, both of which conferences were substantially less than one hour long) and prepare a four-page status report (for which Mr. Fitch and his staff billed **6.5 hours**); (3) to file a ten-page response to EMP's objection, which response is just a repackaging of the arguments made in response to the Motion for Contempt Sanctions (**11.8 hours**); and (4) to file a fifteen-page response to EMP's Motion for Reconsideration, which again is a repackaging of arguments made in the response to the Motion for Contempt Sanctions (for which Viasat's counsel charged a total of **45.4 hours**).

Endemic throughout Viasat's counsel's billings is the inflation of hours needed to complete a task far in excess of those that would ordinarily be required for an attorney of reasonable efficiency. Most of these entries, such as fifteen (15) hours for a motion to extend or forty (40) hours for an unopposed motion to restrict, are simply indefensible. Viasat bears the burden of demonstrating that these fees are reasonable, and it has not and cannot make such a showing. While the Court should not award any fees for Viasat's resistance of the Subpoena, it plainly cannot award the objectively unreasonable fees claimed in this Motion.

## III.  Conclusion.

For all the foregoing reasons, the Court should DENY Nonparty Viasat Service Holding Company's Motion for Shifting of Fees and Costs Incurred Due to Plaintiff's Subpoena

Respectfully submitted this 21st day of June, 2024.

**ROBINSON WATERS & O'DORISIO, P.C.**

*/s/ Anthony L. Leffert*
Anthony L. Leffert, #12375
Carl A. Hjort III, #42108
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
(303) 297-2750 (f)
aleffert@rwolaw.com
chjort@rwolaw.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2024 a true and correct copy of the foregoing was delivered via CM/ECF electronic service to the following:

**LATHROP GPM LLP**
William F. Jones, #35294
675 15th Street, Suite 2650
Denver, CO 80202
billy.jones@lathropgpm.com
*Attorney for Defendant*

**PRINCE LOBEL TYE LLP**
Patrick A. Fitch
One International Place, Suite 3700
Boston, MA 02110
pfitch@princelobel.com
*Attorneys for Viasat Services Holding Co.*

**LACY KATZEN, LLP**
John M. Wells
Jennifer L. Chadwick
600 Bausch & Lomb
Rochester, NY 14604
jwells@lacykatzen.com
jchadwick@lacykatzen.com
*Attorneys for PGM Corp.*

*/s/ Nina Olson*
Nina Olson, Paralegal