IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC., a Colorado corporation,
DAVID P. MORRIS, an individual, and
DAVID J. WOLENSKI, an individual,

      Plaintiffs,

v.

ALAN LUPTON ASSOCIATES INC., a New York corporation,

      Defendant.

**NONPARTY VIASAT'S REPLY IN SUPPORT OF ITS MOTION FOR
SHIFTING OF FEES AND COSTS INCURRED DUE TO EMP'S SUBPOENA
(ECF 207)**

EMP's opposition brief is full of unsupported attorney assertions but contains barely any evidence or relevant case law from this Court. Indeed, EMP's opposition cites no declarations or evidence rebutting nonparty Viasat's arguments. Worse, EMP fundamentally misreads its key case, *Mount Hope*, and fails to acknowledge that courts often shift fees in situations just like this.

The record here is long but uncomplicated. EMP pursued overbroad and unduly burdensome discovery with overly aggressive and irrational litigiousness. EMP's conduct over more than a year caused nonparty Viasat to incur needless expense for a case in which it has no interest. The Court should issue an order shifting nonparty Viasat's fees and costs to EMP.

**1.    EMP's Opposition Cites Nothing to Rebut Viasat's Statement of Facts**

Nonparty Viasat devoted nine pages of its motion to a careful recitation of its (unfortunate) involvement in this case. Actually citing evidence, Viasat showed the needless

—1—

time, effort, and expense EMP created through its vexatious pursuit of trade secret engineering blueprints and related data—data this Court appropriately shielded from EMP at every turn. *See* ECF 207 at §§ 1.1-1.4. Viasat's motion quotes emails between counsel, briefs submitted to the Court, the Court's orders, and the transcripts of the status conferences Viasat attended. *See id.* Despite these copious citations to the record, EMP's opposition brief nevertheless complains that nonparty Viasat somehow inaccurately represented the facts. But EMP offers bluster, not substance. EMP's four pages of attorney argument make **_zero_** mention of the evidence Viasat laid out in its motion. And the record needs no attorney argument to explain—the evidence in Viasat's motion speaks for itself. EMP's conduct in pursuing overbroad discovery from nonparty Viasat was objectively unreasonable and Viasat should not bear the resulting costs.

**2.      Courts Award Fees for Resisting Subpoenas**

Rather than defend the reasonableness of its conduct or the scope of discovery it sought, EMP's opposition claims that Viasat cannot recover its fees as a matter of law. EMP argues that nonparty Viasat cannot recover fees incurred in resisting EMP's unduly burdensome subpoena, or even efforts to resist discovery not sought by the subpoena at all. In EMP's view, no matter how burdensome its demands may have been, nonparty Viasat can only recover fees expended complying with the subpoena.[1] EMP's formulation of the law relies on an incorrect reading of Ninth Circuit precedent—precedent never adopted in this Court or Circuit in any event. And EMP's proposed bright line rule limiting fee shifting would prove illogical in practice.

---

[1] As it happens, those fees do not amount to much because EMP's subpoena sought only sales records that Viasat produced in September 2023.

—2—

To begin with, EMP badly misreads its lodestar *Mount Hope* opinion. *Mount Hope* does not hold that a party can only recover fees associated with compliance with a subpoena. It stands instead for the simple proposition that, when determining whether a subpoena is "unduly burdensome" for purposes of shifting costs, the court should consider "harms inflicted by complying with the subpoena." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012). That is precisely what the Court did here, holding it would be unduly burdensome for Viasat to comply with EMP's demand for blueprints and technical diagrams of more than 100 parts used in sensitive national security programs. *See* ECF 127 at 19-24; ECF 203.

The Ninth Circuit in *Mount Hope* reviewed a sanctions order where the subpoenaed nonparty successfully quashed the entire underlying subpoena and then sought its fees incurred in doing so. The Court framed the question presented as "whether Rule45(c)(1) allows subpoenaed parties to recoup expenses incurred while guarding protected information when the subpoenaing party acted in good faith, narrowly tailored its discovery request, but potentially increased litigation costs during motions practice on the protection issue." 705 F.3d 418, 424-25 (9th Cir. 2012). Importantly, the subpoena at issue "was not a logistical burden or the result of a failure to narrowly tailor requests," and so "the scope of the subpoena ***did not cause an undue burden***." *Id.* at 428 (emphasis added). The Court added that the subpoenaing party "requested a limited amount of information that was easily accessible . . . ." *Id.*; *see also id.* at 429 ("The subpoena issued in the present action was narrowly tailored and did not at all pose an undue burden[.]"). The Court thus declined to shift costs even though the subpoenaing party ultimately "had a losing legal position" *Id.* "[W]e hold that ***absent*** undue burden imposed by an oppressive

—3—

subpoena, a facially defective subpoena, *or* bad faith on the part of the requesting party, Rule 45(c)(1) sanctions are inappropriate."[2] *Id.* (emphasis added).

The facts here are entirely different. Unlike in *Mount Hope*, this Court already found that EMP's subpoena *did* pose an undue burden to nonparty Viasat, both when denying EMP's motion to compel and its subsequent motion for reconsideration. *See* ECF 127, 203. EMP did not narrowly tailor its subpoena, or even honor its scope. After first agreeing the plain language of the subpoena sought only sales records, *see* ECF 207 at 3 (citing ECF 123 at 2), EMP then spent nearly a year demanding trade secret technical documentation outside the subpoena's scope.[3] When Viasat rightly refused, EMP litigated to extract this information, losing at every turn. *See* ECF 207 at §§ 1.1-1.4. At every juncture, EMP took the most antagonistic posture that created the most work for Viasat to resist. Neither *Mount Hope* nor any decision of this Circuit even suggests that this Court cannot award nonparty Viasat's full fees and costs on these facts.

---

[2] EMP further misrelies on *Mount Hope* when arguing it should not have to pay Viasat's fees and costs because it did not act in bad faith. For one thing, Viasat does not agree that EMP acted in good faith. Notably, EMP offers no declaration or caselaw showing its remarkable conduct here reflects good faith pursuit of discovery. The facts show otherwise—EMP filed premature, ill advised, and unsuccessful motions to gain access to trade secret technical materials it intended to share with competitive decision-makers. A finding of bad faith here is amply supported. But if this Court does not reach the issue or finds EMP acted in good faith, that is irrelevant to fee shifting. *Mount Hope* is clear that a finding of bad faith is not required to justify fee shifting. *See* 705 F.3d at 428-29 ("[W]e have never stated that bad faith is necessary, and we do not do so now" because "bad faith is a sufficient ground for sanction, ***but it is not a necessary ground if Rule 45(c)(1) is otherwise violated in good faith***.") (emphasis added).

[3] For this reason, it would be entirely proper for the Court to conclude that, as to the technical and trade secret drawings at the heart of this motion, EMP's subpoena was facially defective. Under *Mount Hope* as well as Tenth Circuit precedents, fee shifting under Rule 45 is particularly appropriate in such circumstances. *See, e.g., Diversified Funding Grp., LLC v. Hendon*, No. CV 17-00189 VAP (AFMx), 2018 WL 1870029 (C.D. Cal. Jan. 4, 2018), *aff'd*, 765 F. App'x 295 (9th Cir. 2019) (citing *Mount Hope* and finding shifting of all fees and costs appropriate under Rule 45(d)(1) due to any of bad faith, undue burden, or a defective subpoena).

Indeed, both before and after the Ninth Circuit decided *Mount Hope*, courts in this Circuit, including this Court, have repeatedly awarded fee and cost shifting beyond the costs of compliance that includes fees and costs incurred resisting and defending against subpoenas. In *Gen. Steel Domestic Sales, LLC v. Chumley*, this Court awarded fees incurred by a nonparty that included fees and costs arising from motion practice due to an overbroad and unduly burdensome subpoena. *See* No. 13-cv-00769-MSK-KMT, 2014 WL 3057496, at *2-3 (D. Colo. July 7, 2014). In *XTO Energy, Inc. v. ATD, LLC*, the Court awarded fees beyond the costs of compliance where the subpoenaing party did not "take reasonable steps to avoid imposing undue burden or expense[.]" No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *31-32 (D.N.M. Apr. 1, 2016); *see also Whiteside v. State Farm Fire & Cas. Co.*, No. 1:20-cv-0120-JAP-LF, 2021 WL 1390805, at *3-4 (D.N.M. Apr. 13, 2021) (shifting fees and costs for resisting an overly broad and unduly burdensome subpoena). And in *Huntair, Inc. v. Climatecraft, Inc.*—a decision cited approvingly by the Ninth Circuit in *Mount Hope*—the court awarded fees and costs that included resisting motions to enforce because, as EMP did here, the subpoenaing party "forced the issue by moving to compel compliance with onerous and burdensome subpoenas." 254 F.R.D. 677, 679-680 (N.D. Okla. 2008), *cited in Mount Hope*, 705 F.3d at 427.

In all these cases, the Courts exercised their discretionary power under Rule 45(d)(1) to shift ***all types of fees and costs*** when parties unreasonably pursued overly broad and unduly burdensome subpoenas in violation of Fed. R. Civ. P. 26(g)(1)(B). At every turn, this Court has found EMP's demands overly broad and unduly burdensome. And the record nonparty Viasat detailed in its motion—unrebutted by any contrary evidence in EMP's opposition—confirms

that at every turn EMP chose the unreasonable, antagonistic path to push against all headwinds for discovery it neither requested nor could have ever hoped to receive.

Finally, the bright line rule proposed by EMP here would create illogical results. For instance, under EMP's reading of *Mount Hope*, a court could never award fees to a third-party where that third-party successfully resisted improper discovery because, in all such cases, there would be no costs of compliance for the subpoenaing entity to bear. EMP's formulation conflicts with the reality that courts in the Ninth Circuit have awarded fees and costs beyond compliance after *Mount Hope*. *See, e.g.*, *Duong v. Groundhog Enters., Inc.*, No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939 (C.D. Cal. Feb. 28, 2020); *McAllister v. St. Louis Rams, LLC*, No. 2:17-MC-157-AB (KSX), 2018 WL 6164281 (C.D. Cal. July 2, 2018); *Beaver Cnty. Employees' Ret. Fund v. Title Shop Holdings, Inc.*, No. 16-MC-80076-JSC, 2016 WL 7212308 (N.D. Cal. Dec. 13, 2016). Put differently, EMP would strip this Court of its inherent power to sanction unreasonable conduct by litigants against third parties. Creating a rule as EMP suggests would inoculate overly aggressive litigants from unreasonable conduct and frustrate the Court's power under Fed. R. Civ. P. 45 to shift fees to deter such conduct.

3.   **Viasat Has No Interest in this Case**

Nonparty Viasat is a disinterested party with no stake in this fight between two of the many thousands of companies in its global supply chain. This is true under both the five-factor *Michael Wilson & Partners* test and the three-factor *Crandall* test cited by EMP. EMP argues Viasat is an "interested party" based on nothing but Viasat's arm's-length purchase of parts from Defendant and past purchases from Plaintiffs. Such attenuated ties are plainly insufficient. An interested party "has a recognizable stake (and therefore standing) in a matter." *Interested Party*,

Black's Law Dictionary (10th ed. 2014). It simply cannot be, as EMP suggests, that a nonparty's mere status as a customer of a supplier that is party to a lawsuit renders that nonparty interested in the supplier's litigation. EMP's misleading citation to *Michael Wilson & Partners* proves nonparty Viasat's point. In that case, this Court found the nonparty was "interested" because it had **both** "a stake in the outcome of the underlying litigation" **and** was "involved in the overseas litigation" as a party in one case and in another by "giving witness statements." *In re Application of Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-KMT, 2012 WL 1901217, *4 (D. Colo. May 24, 2012). **None** of the dispositive facts in *Michael Wilson* are present here.

This case involves a contract between EMP and Defendant that Viasat is neither a party to nor a third-party beneficiary of. EMP does not claim otherwise. Viasat's motion made clear that Viasat has no stake in, and is entirely indifferent to, the outcome of this proceeding. Viasat had no reason to expect that its routine purchase of parts would spawn this litigation and has nothing to gain from the outcome here, making it a disinterested party. ECF 207 at 11 (citing *Simon v. United States*, No. 15-cv-00358-REB-KMT, 2017 WL 10541425, at *3 (D. Colo. Mar. 8, 2017); *Prairie Walk Condo. Ass'n v. Am. Ins.*, No. 22-cv-00870-DDD-NRN, 2022 WL 18024718, at *3 (D. Colo. Dec. 30, 2022); *Lambland, Inc. v. Heartland Biogas, LLC*, No. 18-cv-01060-RM-KLM, 2019 WL 6052414, at *6 (D. Colo. No. 15, 2019)). Nonparty Viasat's purchase of parts bears neither on Defendant's conduct nor on whether it breached its contract with EMP. Viasat simply wants to obtain appropriate parts at a good price—it is indifferent to whether those come through a specific broker or from a specified vendor and is beyond indifferent to the outcome of a fight between its providers. *See* ECF 207 at 10-11.

**4.     Viasat's Size Does Not Require It to Bear the Cost of EMP's Litigiousness**

EMP argues that Viasat's status as a public company inoculates EMP's improper and harassing attempts to obtain Viasat's trade secret schematics. But the test for who bears the burden centers on whether the nonparty incurred significant expense, not its theoretical ability to bear that expense. "[T]he only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *See Blueradios, Inc. v. Kopin Corp.*, No. 1:16-cv-02052-JLK, 2019 WL 13415243, at *3 (D. Colo. June 17, 2019). Here, that test is plainly satisfied where EMP's conduct caused a non-party to spend six-figures responding to a document subpoena. EMP's "reasoning, applied to every case, would mean that the larger company would always [be deemed more able to bear the cost] on this factor in the test." *Prime Therapeutics LLC v. CVS Pharmacy, Inc.*, No. 22-MC-35 (WMW/JFD), 2022 WL 17414478, at *6 (D. Minn. Dec. 5, 2022). That is not the law. Viasat's size does not require it to bear the cost of EMP's unreasonable litigation tactics. *See id.* ("Prime cannot show that CVS can better bear Prime's compliance expenses simply by arguing CVS is the larger company.").

**5.     Viasat's Fees Are Reasonable in View of EMP's Conduct**

EMP's final argument centers on a series of straw man allegations seeking to reduce down to constituent parts the blocks of time nonparty Viasat organized into periods of activity— often multiple months spanning several filings, conferences, required research, and analysis. As an example, EMP claims that Viasat's counsel spent "a total of **45.4** hours" preparing an opposition to EMP's motion for reconsideration. ECF 212 at 12 (emphasis in original). This

example serves as a microcosm of EMP's unsupported complaints. First, EMP's math is wrong.[4] Viasat's lead counsel and a first-year associate recorded 21.4 and 14.3 hours, respectively, for *all* case activity from when EMP filed its motion on November 21, 2023, until nonparty Viasat filed its opposition on December 12, 2023. *See* ECF 207-2 at 28-34. Second, EMP falsely states that nonparty Viasat's brief was "a repackaging of arguments made in the response to the Motion for Contempt." ECF 212 at 12. True, EMP unreasonably litigated overlapping issues multiple times through multiple filings. But EMP's unsuccessful motion for reconsideration raised novel issues Viasat had not already briefed. Did EMP's conduct meet the bar for reconsideration? Did EMP's startling withdrawal of its objections to the relevant order effect waiver of its asserted grounds for reconsideration? Did EMP's decision not to object on certain grounds waive its ability to seek reconsideration? And how did the facts surrounding nonparty Viasat's production of sales records and EMP's eventual retention of an outside expert to review confidential material order bear on the motion? *See* ECF 186. None of Viasat's briefing on these issues was repackaged. And it all resulted directly from EMP's haphazard approach to litigating these issues.

This example shows the more fundamental point EMP ignores. It is precisely *because* Viasat spent far more time responding to this subpoena than should have otherwise been necessary that Viasat should recover its fees. Had EMP conducted itself in a reasonable and good faith manner, Viasat would not have incurred what are admittedly the significant fees that it now seeks to recover. Put differently, EMP cannot now be heard to complain that Viasat's attorneys spent too much time and effort on this case when that time and effort was caused entirely by

---

[4] EMP's claim is difficult to track because it provides no explanation for how it calculated the hours in its opposition or any declaration explaining EMP's methodology.

—9—

EMP's unreasonable conduct and irrational doggedness in pursuing exceptionally sensitive discovery it simply was not entitled to. EMP even has the gall to blame *Viasat* for having to brief repetitive facts, but it was **EMP** that chose to continue relitigating the issues in sufficiently different motions and briefs. EMP's aggression required Viasat to write these new responses and oppositions. The significant costs incurred by Viasat here resulted from EMP's tactical choices and thus should be entirely EMP's burden to bear, not nonparty Viasat's.

**6.     Conclusion**

For these reasons, nonparty Viasat respectfully asks the Court to grant its motion to shift its fees and costs incurred due to EMP's subpoena to EMP (ECF 207).

Respectfully submitted,

Dated:  July 5, 2024                 By:  s/ *Patrick A. Fitch*
                                          Patrick A. Fitch
                                          **PRINCE LOBEL TYE LLP**
                                          One International Place, Suite 3700
                                          Boston, Massachusetts, 02110
                                          Telephone:  +1 (617) 456-8000
                                          Facsimile:   +1 (617) 456-8100
                                          Email:        pfitch@princelobel.com

                                          *Attorney for Nonparty*
                                          *Viasat Services Holding Company*