**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-00763-PAB-SBP

ELECTRO-MECHANICAL PRODUCTS, INC.,

      Plaintiff,

v.

ALAN LUPTON ASSOCIATES INC.,

      Defendant.

---

**ORDER ON NON-PARTY VIASAT'S MOTION FOR SHIFTING OF FEES AND
COSTS**

---

**Susan Prose, United States Magistrate Judge**

      This matter is before this court on the motion of non-party Viasat Services Holding

Company ("Viasat"), requesting to shift the attorney's fees and costs incurred in responding to a

subpoena issued by Plaintiff Electro-Mechanical Products, Inc. (referred to as "EMP" or

Plaintiff). ECF No. 207 ("Motion"). EMP opposes. ECF No. 212 ("Resp."). Viasat replied. ECF

No. 214 ("Reply"). The Motion is referred to this court. ECF No. 208 (order of June 3, 2024).

For the reasons that follow, the Motion is **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

      In its order of September 21, 2023 (ECF No. 127, referred to as the "September 21

Order"), this court extensively cited the factual and procedural background of this case. The

court assumes familiarity with that order and summarizes here only the procedural history that is

pertinent to Viasat's present Motion.

A.      *EMP's Subpoena to Viasat and Pre-Motion Conferrals*

In March 2023, EMP sought to compel discovery from Viasat (and another non-party,

PGM Corp., or "PGM") to support EMP's claim that Defendant Alan Lupton Associates Inc.

("ALA") violated the noncompete clause of the parties' contract for sales and marketing

services. ECF No. 84-1 (the "Amended Contract," attached to EMP's second amended

complaint). At the time, EMP alleged that ALA breached the noncompete clause by marketing

products for two competitors of EMP: PGM and another non-party, C&M Machine Products,

Inc. t/a C&M Precision Tech ("C&M").

Specifically, on March 14, 2023, EMP's counsel issued a subpoena duces tecum to Viasat

(ECF No. 44-1, the "Subpoena") one day before the fact discovery cutoff of March 15, 2023. *See*

ECF Nos. 28, 29 (Scheduling Order entered July 6, 2022, setting discovery cutoff). The

Subpoena was not served on Viasat until March 20, 2023, then was served again on March 31,

2023. ECF No. 44-1 at 5-6 (affidavit of service). The Subpoena requested three categories of

documents:

1. Documents and records reflecting Viasat's purchase of any parts or assemblies
   from any manufacturer represented by Alan Lupton Associates, Inc., including
   what parts and assemblies were purchased and the sales price for the purchase.
2. Documents and records reflecting Viasat's purchase of any parts or assemblies
   purchased from PGM Corp., including what parts and assemblies were
   purchased and the sales price for the purchase.
3. Documents and records reflecting Viasat's purchase of any parts or assemblies
   purchased from C & M Manufacturing Company, including what parts and
   assemblies were purchased and the sales price for the purchase.

Subpoena at 4.

Viasat retained counsel Patrick A. Fitch, then of the law firm Sheridan Ross P.C. It

appears that Mr. Fitch first emailed EMP's counsel, Tony Leffert, on March 24, 2023, to discuss the Subpoena. ECF No. 44-2 at 5. Over the following ten days, Mr. Fitch and Mr. Leffert exchanged several emails concerning the Subpoena. In one email, Mr. Fitch stated his understanding that EMP "explained during our call this past Monday that EMP seeks financial records reflecting purchases made by Viasat through Defendant [ALA]." ECF No. 44-2 at 3 (email of March 31, 2023). The same day, Mr. Leffert replied and did not correct Mr. Fitch's understanding of the documents that EMP sought from Viasat through the Subpoena. *Id.*

Later, on April 3, 2023, Mr. Fitch again referred to the "non-party purchase order and product information sought by the subpoena." *Id.* at 2. With that understanding of the Subpoena, Viasat believed that *ALA* had all of the information that EMP sought from Viasat. Viasat authorized ALA to produce the information to EMP, provided that the information would be restricted to attorney's eyes only. *Id.* The same day, Mr. Leffert replied that "[a]n attorneys eyes only designation will not work. My client needs to see the parts purchased and a description of the parts to determine if they can manufacture the parts." *Id.* at 1. Mr. Leffert closed with saying that he was "proceeding with a motion for contempt." *Id.*

Viasat did not produce the requested documents. It objected to the Subpoena as untimely because it was served and required production after the discovery cutoff of March 15, 2023.[1] Viasat also objected on grounds of undue burden and that trade secret or other confidentiality considerations required modifying the protective order to designate the requested sales

---

[1] On May 11, 2023, EMP filed a motion to reopen discovery, in relevant part to resolve Viasat's timeliness objection. On July 28, 2023, this court granted EMP's motion for limited reopening of fact discovery to permit EMP to pursue the Subpoena. ECF No. 93.

documents as attorney's eyes only.[2] At the time, Viasat still understood the Subpoena to seek only the sales documents and the description of parts that counsel had discussed during their conferral.

   B.   *EMP's Motion for Contempt Sanctions (Later Deemed a Motion to Compel),*
        *ALA's Motion to Quash, and Viasat's Response to the Motion to Compel*

On April 24, 2023, EMP filed its "Motion to Impose Contempt Sanctions" against Viasat. ECF No. 44 (referred to hereafter as a motion to compel).[3] In that motion, EMP sought unredacted sales information that was generally consistent with the categories of documents requested in the Subpoena and counsel's email exchange. But instead of requesting identification of "what parts and assemblies were purchased"—the phrase that EMP used in the Subpoena—or simply the "product information" or "description of the parts" that counsel discussed in their email exchanges, EMP now sought *engineering drawings* of all parts in question. ECF No. 44 at 2-3, 6.[4]

In response, *ALA* filed a motion to quash the Subpoena on behalf of Viasat. ECF No. 48

---

[2] Viasat impliedly relied on its emails as its "written objection" for purposes of Rule 45(d)(2)(B). *See, e.g.*, *id*. at 3 (March 31, 2023 email from Fitch stating: "As I mentioned during our call, Viasat still objects to the subpoena at least because its delivery after the close of fact discovery imperils the admissibility of any evidence Viasat may produce, making Viasat's compliance with the subpoena even more unduly burdensome than normal. Viasat also objects to the subpoena as unduly burdensome because it calls for information that is or should be attainable from a party to the litigation. This is especially so since you explained during our call this past Monday that EMP seeks financial records reflecting purchases made by Viasat through Defendant.").

[3] This court later held it was premature for EMP to seek contempt sanctions before obtaining an order compelling compliance with the Subpoena, and thereafter treated the motion as one to compel the Subpoena. ECF No. 93 (July 28, 2023 order) at 14-16.

[4] In a separate motion, EMP likewise sought sales data and engineering drawings from the other subpoenaed non-party, PGM. ECF No. 94.

(April 28, 2023). On Viasat's request, this court postponed the deadline for Viasat to respond to

EMP's motion to compel until after the court ruled on ALA's motion to quash. ECF No. 57

(order of May 10, 2023). However, ALA's motion did not dispute that the engineering drawings

were within the scope of documents requested in the Subpoena to Viasat,[5] and in a July 28, 2023

order, this court stated that it "appear[s] EMP narrowed all three categories [of documents] to

(a) engineering drawings of the parts that ALA marketed to Viasat, (b) the sales prices, and (c)

the sales quantities." ECF No. 93 at 5 (citing EMP's reply brief, ECF No. 78 at 4). This court

denied ALA's motion to quash for lack of standing, and thus Viasat was required to respond to

the motion to compel by August 11, 2023. *Id*. at 16.

      In its response to the motion to compel, Viasat argued that the Subpoena did not request

the engineering drawings and that EMP had not discussed such documents in conferrals with

Viasat. ECF No. 96. In reply, EMP argued that the Subpoena was broad enough to encompass

engineering drawings, and that in any case, this court's July 28, 2023 order precluded Viasat's

argument. ECF No. 101.

      C.    *The September 21, 2023 Order Grants EMP's Request for Sales Data but Denies*
           *its Request for Engineering Drawings*

      In the September 21 Order, this court granted in part and denied in part EMP's motion to

compel. ECF No. 127. This court first rejected EMP's argument that the July 28, 2023 order had

already found that the Subpoena encompassed EMP's request for engineering drawings:

> As a preliminary issue, EMP argues the July 28 Order already found that
> engineering drawings are within the scope of the Subpoenas, and thus neither Viasat

---

[5] ALA argued that EMP had not sought the engineering drawings from *PGM*, but ALA did not
argue those documents were also outside the Subpoena to Viasat. ECF No. 48 at 3, ECF No. 48-
1.

nor PGM can argue to the contrary. This is incorrect. The July 28 Order stated only that it appeared EMP had narrowed the Subpoenas—in conferral or briefs—to engineering drawings and sales data, found *the documents that EMP was seeking from Viasat were encompassed within the broader categories of the PGM Subpoena*, and found EMP had shown relevance. [n.10] *At the time, the court did not have the benefit of Viasat's or PGM's views.*

The July 28 Order did not preclude Viasat or PGM from arguing—or this court from finding—that in broadly requesting all documents that "reflect" Viasat's purchases of parts, or a "complete identification and description of all products" PGM sold, the Subpoenas do not adequately specify engineering drawings as among those documents requested. *See, e.g., Wang* [v. All. for Sustainable Energy, LLC, No. 20-cv-03780-NYW], 2022 WL 1500779, at *5 [(D. Colo. May 12, 2022)] ("discovery requests using language such as 'relating to' or 'all documents' are typically considered overbroad"). However, the court need not decide this issue because the court concludes the Subpoenas should not be compelled as to engineering drawings for other reasons.

n.10 Unlike the Viasat Subpoena, the PGM Subpoena included a category seeking "[a] complete identification and description of all products sold by PGM Corp. to its customers."

September 21 Order at 19-20 (emphasis added). This court thus assumed without deciding that the Subpoena encompassed the engineering drawings and denied that request as unduly burdensome to Viasat due to the "quantity of different parts and vendors" and the competitive sensitivity of the documents to Viasat and their respective customers. *Id*. at 19-24. The September 21 Order specifically "*denie[d] the motions to the extent EMP seeks engineering drawings* from Viasat and PGM." *Id*. at 19 (emphasis added).

The September 21 Order compelled Viasat to produce only the "*unredacted sales volumes and prices for the parts and assemblies that ALA marketed or brokered, or that Viasat bought from PGM and C&M Precision, for the past three years measured from March 31, 2023. The production shall sufficiently identify the parts in question to allow EMP to understand what the parts are*." September 21 Order at 24 (emphasis added). Because neither side's briefs focused

on whether the sales data was competitively sensitive (and thus whether the Protective Order

needed to be amended to add an attorney's-eyes-only designation), the September 21 Order also

set a deadline for a status report (October 6, 2023) and a status conference for October 19, 2023,

to discuss that issue and the status of the compelled productions.[6] *Id*. at 25.

> D.    *After the September 21 Order, EMP Continues to Seek the Engineering Drawings*

On October 5, 2023, EMP filed an objection to the September 21 Order. ECF No. 131

(objection), No. 132 (exhibits).

On October 6, 2023, EMP, Viasat, ALA, and PGM each filed status reports. ECF Nos.

133-37. Viasat attached an email from EMP's counsel dated September 27, 2023, in which EMP

sent a list of thirteen data points that EMP expected Viasat to produce as to each part in question.

EMP stated that, in the alternative, "*EMP is willing to review the drawings*." ECF No. 136-1

(emphasis added). Viasat responded to EMP's objection. ECF No. 184. It also provided

declarations of Mr. Finch and Colin Ward, the Vice President and Chief Litigation Counsel for

Viasat, in support of its position. ECF Nos. 145-2 and 146 (October 18, 2023 filing).

EMP's counsel then used the October 19, 2023 status conference to argue for

reconsideration of the September 21 Order because, EMP contended, the sales data by itself was

useless. ECF No. 148 (Oct. 19, 2023 Hrg. Tr.) at 9 ("if we don't have enough specific detail on

the part . . . to know that we can make it, then the sales figures by themselves do absolutely no

good"). EMP argued that Viasat should still be required to produce the engineering drawings—or

compile and produce a list of several specific data points about each part (similar to the list that

---

[6] The parties later agreed that non-parties' sales data should be limited to attorney's eyes only,
and the court amended the Protective Order accordingly. ECF No. 161.

EMP's counsel demanded in the September 27, 2023 email, ECF No. 136-1)—because nothing short of the drawings or that detailed information would suffice for EMP to know whether it could manufacture the parts associated with the sales data. *Id*. at 9-10. Viasat vigorously opposed that argument in its status report (ECF No. 136) and at the status conference.

This court rejected EMP's interpretation of the September 21 Order. Among other things, the court noted:

> Let me also tell you, Counsel, that I have one of the emails here because Viasat attached it to their status report. *One thing that the Court was very clear on was that your client does not get the engineering drawings. And I have to tell you, Mr. Leffert, when I read this email and it says, "Please advise your client that EMP is willing to review the drawings," I thought to myself, "Hmm. This seems well beyond the order."* Then you have this list of twelve very, very specific things down to tolerances and dimensions and finishes. I will tell you, that is the kind of competitively sensitive information—and I'm not going to pre-judge any motion to clarify that you may file but on a first glance, that is the kind of competitively sensitive information that I can tell you this Court did not envisage in issuing that order.

*Id*. at 10 (cleaned up, emphasis added). In light of the status, the court converted the final pretrial conference set for November 9, 2023, to a second status conference. ECF No. 147 (minutes).

During the November 9, 2023 status conference, following EMP's agreement to restrict Viasat's and PGM's sales data to attorney's eyes only, this court granted EMP's request to reopen expert discovery "for the limited purpose of allowing Plaintiffs to retain an engineering expert to review and opine on the documents marked as 'Confidential Information-Attorneys Eyes Only' pursuant to the Amended Protective Order 161. Defendant will be allowed one rebuttal expert, limited to the same topic." ECF No. 164 (minute entry). The court also extended the related deadlines and again continued the final pretrial conference. *Id*. *See also* ECF No. 167

(Nov. 9, 2023 Hrg. Tr.).

On November 21, 2023, EMP filed a motion to reconsider the September 21 Order and withdrew its pending objection to that Order. ECF No. 168, No. 169 (exhibit), No. 171 (notice of withdrawal), No. 172 (Order by Chief Judge Brimmer approving the withdrawal). In the motion to reconsider, EMP again sought the engineering drawings. Viasat opposed the motion to reconsider. ECF No. 186. The briefing on that motion was complete in December 2023. *See* ECF No. 190 (reply brief).

> E.     *Partial Summary Judgment Against EMP and Denial of Reconsideration of September 21 Order*

On March 15, 2024, Chief Judge Brimmer granted partial summary judgment to ALA, including on the claim alleging breach of the noncompete clause. ECF No. 195 (Order of March 15, 2024) at 8-10, 14. The only portion of EMP's claims that survived for trial concerned ALA's alleged breach of the contract's "best efforts" clause, and only as to nominal damages. *Id*. at 8, 13.

On May 21, 2024, this court denied EMP's motion to reconsider, in large part because the summary judgment order removed from the case the only claim to which the Subpoena was relevant. ECF No. 203 (May 21, 2024 order). The court further held that, "even if the noncompete clause were still in the case, this court would still deny the Motion as seeking unduly burdensome discovery from non-parties." *Id*. at 6. The court explained:

> While EMP points to a large volume of sales and to Viasat and PGM's alleged noncompliance with the September 21 Order, *EMP does not point to any facts that change this court's first reason for denying EMP's request for the engineering drawings: undue burden.* See September 21 Order at 20-21, n.11. The same reasoning applies to EMP's request for any other additional information to identify the parts that are included in the sales data.

First, as to undue burden to Viasat, even if, as EMP contends, there are tens
of millions of dollars in sales, the court still finds that requiring production of
the engineering drawings would be unduly burdensome to require of the non-party.
There are at least 134 parts or assemblies for which Viasat would have to collect
and produce engineering drawings, and Viasat would have to provide prior notice
to many other non-parties pursuant to non-disclosure agreements. See September
21 Order at 20-21. The court again finds that even if EMP still had a claim to which
this discovery would be relevant (which it does not), such an onerous task should
not be required of the non-party.

ECF No. 203 at 7 (emphasis added).

F.    *Viasat's Motion for Attorney's Fees and Costs*

Shortly after this court denied reconsideration, on June 3, 2024, Viasat filed its present

Motion to shift its attorney's fees and costs to EMP pursuant to Federal Rule of Civil Procedure

45. Viasat argues that EMP (1) should not have issued the Subpoena at all because it should have

sought the information from Defendant ALA; (2) consistently pursued the most antagonistic

positions possible; (3) impermissibly expanded the Subpoena in seeking to compel the

engineering drawings; (4) ignored the plain meaning of the September 21 Order in continuing to

demand the engineering drawings; and (5) needlessly doubled the responsive briefing that Viasat

had to file in defending the September 21 Order, by filing the motion to reconsider only after

Viasat responded to EMP's objection to that order. Viasat notes in the Motion that EMP offered

to pay a "nominal" $5,000 to $10,000 to avoid the need for briefing the Motion, an offer Viasat

declined. Motion at 2. Viasat further contends that this court consistently rejected EMP's

arguments concerning the Subpoena, and that the court should award all attorney's fees and costs

that Viasat incurred in responding to and resisting the Subpoena. Viasat seeks a total of

$123,721.00 in attorney's fees and $2,048.61 in costs, for a total of $125,769.61. *Id*. at 2, 15. In a

declaration in support, Mr. Fitch breaks down those totals by phases of Viasat's involvement. ECF No. 207-1 (Fitch Decl. of June 3, 2024) at 3.

On June 21, 2024, EMP responded. As pertinent here, EMP argues that Viasat can only obtain attorney's fees and expenses it incurred in *complying with* the Subpoena—as opposed to resisting it. To support that argument, EMP relies on *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012). EMP also disputes the reasonableness of Viasat's requested attorney's fees. To rebut Viasat's argument that EMP should have first requested the documents in question from ALA, EMP also attaches ALA's responses to written discovery requests, in which ALA stated only that it would "alert Viasat" to EMP's request for "invoices regarding sales made to Viasat by C&M Precision Tech and PGM Corp." ECF No. 212-1 at 3. That is, EMP contends (as it did in all prior briefing) that ALA only strung EMP along until the end of discovery, when it either claimed to not have the documents or refused to produce them.

On July 5, 2024, Viasat replied, asserting that EMP improperly extends *Mount Hope* because that case limited the subpoenaed person to its costs of compliance in the *absence* of undue burden and bad faith. Reply at 3-4 (citing *Mount Hope*, 705 F.3d at 428-29). Viasat argues that here, the Subpoena was unduly burdensome as to the engineering drawings. Viasat also contends that EMP acted in bad faith in filing "premature, ill advised, and unsuccessful motions to gain access to trade secret technical materials it intended to share with competitive decision-makers." *Id*. at 4 n.2. Viasat asserts that Rule 45(d)(1) sanctions are appropriate on either of those grounds, or for a facially defective subpoena. *Id*. (citing *Diversified Funding Grp., LLC v. Hendon*, No. CV 17-00189 VAP (AFMx), 2018 WL 1870029 (C.D. Cal. Jan. 4, 2018), *aff'd*, 765 F. App'x 295 (9th Cir. 2019)).

11

G.    *EMP and ALA's Stipulation to Dismiss the Case*

On August 20, 2024, EMP filed a joint stipulation dismissing the case with prejudice.

ECF No. 216. Two days later, Chief Judge Brimmer entered a minute order closing the case,

observing that "the only motion in this case that remains pending is Nonparty Viasat Services

Holding Company's Motion for Shifting of Fees and Costs Incurred Due to Plaintiff's Subpoena,

Docket No. 207." ECF No. 217.

## LEGAL STANDARDS

As a preliminary issue, this court notes that, despite the case being closed on the

stipulation of dismissal, the court has jurisdiction to decide the Motion. "It is well established

that a federal court may consider collateral issues after an action is no longer pending. The

Supreme Court has indicated that motions for costs or attorney's fees are independent

proceedings supplemental to the original proceeding and not a request for a modification of the

original decree." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (cleaned up,

internal quotation omitted). "Thus, even years after the entry of a judgment on the merits a

federal court could consider an award of counsel fees." *Id*. (internal quotation omitted).

Therefore, even if the court had entered a judgment on the merits, this court would still have

jurisdiction to hear Viasat's Motion.

Next, for analytical clarity, the court identifies all provisions of Rule 45 that concern

attorney's fees and costs of subpoenaed persons. "Rule 45(d) of the Federal Rules of Civil

Procedure contemplates three scenarios in which costs may be shifted from the non-party to the

requesting party." *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc*., No. 11-cv-

01611-MSK-CBS, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014). The court next describes

these three scenarios.

   A.    *Federal Rule of Civil Procedure 45(d)(1): Undue Burden or Expense for a Person Subject to Subpoena*

The first scenario is articulated in Rule 45(d)(1):

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing *undue burden or expense on a person subject to the subpoena.* The court for the district where compliance is required *must enforce this duty and impose an appropriate sanction*—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*Id.* (emphasis added). This provision thus applies to both the party and their attorney who issues the subpoena, and it requires that they take reasonable steps to avoid undue burden or expense to the subpoenaed person.

Rule 45 "[p]aragraph [(d)](1) gives specific application to the principle stated in Rule 26(g) and specifies liability for earnings lost by a non-party witness *as a result of a misuse of the subpoena.*" 1991 Advisory Comm. Note to Fed. R. Civ. P. 45(c) (emphasis added).[7] Rule 26(g) in turn provides that by signing a discovery request, counsel certifies in relevant part that the request is "not interposed for any improper purpose, such as to harass," and "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(ii), (iii). "One circuit court has recently observed that '[b]ecause Rule 45[(d)](1) gives specific application to Rule 26(g), it follows that a violation of

---

[7] As noted in *Western Convenience*, as of December 1, 2013, Rule 45(d) contains the provisions previously set forth in subsection (c). For simplicity, this order converts citations to reflect the current version of Rule 45(d).

any one of the Rule 26 duties will be relevant to assessing propriety of sanctions under Rule

45[(d)](1)'s undue burden language.'" *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-

00769-MSK-KMT, 2014 WL 3057496, at *3 (D. Colo. July 7, 2014) (quoting *Mount Hope*, 705

F.3d at 425).

 "In determining whether sanctions should be imposed under Rule 45(d)(1), courts

consider a number of factors, 'including the person's status as a non-party, the relevance of the

discovery sought, the subpoenaing party's need for the documents, the breadth of the request,

and the burden imposed on the subpoenaed party.'" *Western Convenience*, 2014 WL 1257762, at

*21 (quoting *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); citing

*EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)). In addition, in determining

whether sanctions should be imposed under Rule 45(d)(1), courts may also look to several

additional factors. *Western Convenience*, 2014 WL 1257762, at *23 (citing *In re Michael Wilson*

*& Partners, Ltd.*, No. 06-cv-02575-MSK-KMT, 2012 WL 1901217, at *3-4 (D. Colo. May 24,

2012), *aff'd*, 520 F. App'x 736 (10th Cir. 2013)). Those factors include:

 (1) whether the non-party actually has an interest in the outcome of the case,
 (2) whether the non-party can more readily bear the costs than the requesting party,
 (3) whether the litigation is of public importance,
 (4) the scope of the discovery,
 (5) the invasiveness of the request,
 (6) the extent to which the producing party must separate responsive information
  from privileged or irrelevant material, and
 (7) the reasonableness of the costs of production.

*Michael Wilson*, 2012 WL 1901217, at *3-4 (cleaned up).

 Although Rule 45(d)(1) mandates an "appropriate sanction" for violation thereof, it does

not mandate an award of all of the subpoenaed person's attorney's fees. Rather, the court has the

"discretionary option" to award "reasonable attorney's fees and costs resulting from the rule

violation." *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1554 (10th Cir. 1996) (recognizing that

"[t]his departure from the American Rule [of each party paying its own fees] demonstrates the

punitive nature of the sanctions"). The court has broad discretion to determine "an appropriate

sanction" under Rule 45(d)(1). *See, e.g.*, *Profita v. Puckett*, No. 15-cv-01237-DME-CBS, 2017

WL 1491003, at *29 (D. Colo. Apr. 25, 2017), *report and recommendation adopted*, 2017 WL

4225451 (D. Colo. June 6, 2017) ("Ultimately, determinations of undue burden are committed to

the discretion of the trial court[.]") (cleaned up, citing *Jones v. Hirschfeld*, 219 F.R.D. 71, 74

(S.D.N.Y. 2003)); *Olcott*, 76 F.3d at 1555 (Rule 45 "grant[s] district courts substantial discretion

to craft their orders to serve the interests of justice.").

      With regard to discovery violations in connection with subpoenas to non-parties

specifically:

> It is generally recognized that a non-party involuntarily embroiled in civil litigation
> should not be subjected to undue burden or significant expense merely by virtue of
> having received a subpoena. Yet, in the final analysis, the court must exercise its
> discretion to allocate discovery costs based upon the particular circumstances of
> each case.

*Western Convenience*, 2014 WL 1257762, at *21 (cleaned up, citations omitted).

      "However, Rule 45(d)(1) should not be construed or applied in a way that ignores the

subpoena recipient's own conduct or confers 'a right to obfuscation or obstinacy.'" *Id*. at *25

(quoting *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-CV-0630-LHK (PSG), 2013 WL

1942163, at *3 (N.D. Cal. May 9, 2013), and noting that a non-party subject to a subpoena is

expected to "participate in transparent and collaborative discovery").

 B. *Federal Rule of Civil Procedure 45(d)(2)(B): Significant Expense Resulting from Compliance*

 The second scenario in which Rule 45 contemplates shifting fees is after the subpoenaed person objects to the subpoena, and the court compels production. Once the subpoenaed person objects to making the requested production or inspection, "[t]hese acts may be required only as directed in the [court's] order, and the order must protect a person who is neither a party nor a party's officer from *significant expense resulting from compliance*." Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added). In other words, if the court grants a motion to compel a subpoena, the court must protect the subpoenaed person from "significant expense resulting from compliance." *See, e.g.*, *Western Convenience*, 2014 WL 1257762, at *21 (noting this does not necessarily mean that the party who issued the subpoena must bear all of the subpoenaed person's expenses of compliance). In considering the extent to which a subpoenaed person's compliance costs should be shifted, courts often apply the same multi-factor test set forth above with respect to Rule 45(d)(1) sanctions. *See, e.g.*, *Michael Wilson*, 2012 WL 1901217, at *3-4.

 C. *Federal Rule of Civil Procedure 45(d)(3)(C): Reasonable Compensation for Producing Trade Secrets or Confidential Information*

 The third scenario for shifting fees and costs under Rule 45 occurs when a subpoena requires production of trade secrets or other confidential information. Instead of quashing or modifying the subpoena, the court may order the subpoenaed person to produce the information "under specified conditions if the serving party: (i) shows a substantial need for the . . . material that cannot be otherwise met without undue hardship; and (ii) *ensures that the subpoenaed person will be reasonably compensated*." Fed. R. Civ. P. 45(d)(3)(C) (emphasis added). *See also,*

*e.g.*, *Western Convenience*, 2014 WL 1257762, at *22.[8]

For all three fee-shifting scenarios under Rule 45, the person seeking reimbursement bears the "burden of establishing the existence and reasonableness of the costs or fees incurred, and that these expenses should be shifted." *Michael Wilson*, 2012 WL 1901217, at *4. *See also Lambland, Inc. v. Heartland Biogas, LLC*, No. 18-cv-01060-RM-KLM, 2019 WL 6052414, at *3 (D. Colo. Nov. 15, 2019) (quoting *Michael Wilson* and applying Rule 45(d)(2)(B)). The decision regarding costs and attorney's fees is within this court's discretion. *Michael Wilson*, 520 F. App'x at 739. *See also Western Convenience*, 2014 WL 1257762, at *21.

## ANALYSIS

At the outset, it bears noting that despite Viasat being a non-party and a business competitor from whom EMP requested trade secret or competitively sensitive information, both Viasat's and EMP's counsel should have worked cooperatively on the Subpoena. While this court is sympathetic to Viasat's assertion that from the beginning, EMP has taken aggressive and continually-expanding positions concerning the Subpoena, some of Viasat's decisions did not help.

Almost immediately, Viasat seemed to assume that it should not have to respond to the Subpoena at all because ALA should have produced the sales documents. Viasat then chose not to file a motion to quash itself and instead allowed ALA to file such a motion on Viasat's behalf

---

[8] *Western Convenience* assumes this portion of Rule 45 applies only to "occasions where the *non-party* moves to quash or modify a subpoena." 2014 WL 1257762, at *22 (emphasis added). In this case, ALA filed such a motion, but Viasat did not. However, the protections provided in Rule 45(d)(3) still apply in this case. *See, e.g.*, September 21 Order at 9 (quoting portions of Rule 45(d)(3)(A), (B), and (C)).

—a motion for which ALA lacked standing and in which it did not raise Viasat's argument that

the Subpoena does not encompass engineering drawings. Viasat's choices led to a more complex

record developed over the course of months instead of weeks. In the end, it is clear that "[i]f

counsel for [the plaintiff and the subpoenaed person] had . . . work[ed] together from the outset

in a cooperative manner, this dispute [(or at least much of it)] could have been avoided. That

salient point seems to be lost in the parties' barrage of cross-accusations." *Western Convenience

Stores*, 2014 WL 1257762, at *2.[9] In any case, the court proceeds to address the issues raised by

Viasat's Motion.

> A.    *Does Rule 45 Allow Fee Shifting for Resisting an Unduly Burdensome Subpoena?*

The first issue is whether either provision of Rule 45 on which Viasat relies—Rule

45(d)(1) or Rule 45(d)(2)(B)(ii)—allows shifting a subpoenaed person's attorney's fees and

expenses incurred in *resisting* an unduly burdensome subpoena, or if, as EMP contends, the rule

provides only for shifting the fees and costs of *complying* with a subpoena. This issue is

important because Viasat incurred the lion's share of its attorney's fees and costs in resisting the

---

[9] This court deems it appropriate here to reiterate the Sedona Conference Cooperation
Proclamation (2008), including

> its call for "cooperative, collaborative, [and] transparent discovery." In my view,
> the Cooperation Proclamation correctly recognizes that while counsel are retained
> to be zealous advocates for their clients, they bear a professional obligation to
> conduct discovery in a diligent and candid manner . . . . Cooperation does not
> conflict with the advancement of their clients' interests—it enhances them. Only
> when lawyers confuse advocacy with adversarial conduct are these twin duties in
> conflict.

*Nagel v. DFL Pizza, LLC*, No. 21-cv-00946-DDD-SBP, 2024 WL 5095296, at *7 (D. Colo. Nov.
25, 2024) (quoting *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010
WL 502721, at *13-14 (D. Colo. Feb. 8, 2010)).

Subpoena, not in complying with it.

Certainly, the provision on which Viasat most expressly relies in its Motion—Rule 45(d)(2)(B)(ii)—refers specifically to "significant expense resulting from *compliance*."[10] As such, that provision would be an unlikely source of authority to award attorney's fees incurred in *resisting* a subpoena. However, Viasat also relies on Rule 45(d)(1). This court has no difficulty concluding that Rule 45(d)(1) authorizes awards of attorney's fees and expenses incurred in resisting an unduly burdensome subpoena.

As noted above, Rule 45(d)(1) requires the party and attorney who issue a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The court *must* enforce this obligation and can do so by awarding reasonable attorney's fees. *Id*. Since a person subject to an unduly burdensome subpoena may object or move to quash instead of complying, this provision does not purport to limit sanctions to the costs of compliance. Importantly, the Advisory Committee Note to this subsection also refers to fees incurred from the "misuse of the subpoena." 1991 Advisory Comm.

---

[10] Curiously, in the first sentence of its Motion, Viasat refers only to Rule 45(d)(2)(B)(ii), and the Motion relies most heavily on cases awarding the costs of *compliance*. In its Reply, however, Viasat cites Rule 45(d)(1). The two provisions—Rule 45(d)(1) and Rule 45(d)(2)(B)(ii)—are distinct. *See, e.g.*, *Blueberry Hill Home Owners, Inc. v. Am. Fam. Mut. Ins. Co.*, No. 21-cv-00378-WJM-SKC, 2022 WL 2953040, at *1 (D. Colo. July 26, 2022) (finding a motion for attorney's fees brought only under Rule 45(d)(1) waived any argument under Rule 45(d)(2)(B)).

However, the Motion does cite at least one decision from this District that discusses Rule 45 more generally and that quotes Rule 45(d)(1). Motion at 10, 12 (citing *Michael Wilson*). More importantly, EMP's Response relies heavily on a case construing Rule 45(d)(1). Resp. at 5 (citing *Mount Hope*, 705 F.3d 418). Under these circumstances, the Motion put EMP on sufficient notice that Viasat seeks fees and expenses pursuant to both Rule 45(d)(2)(B)(ii) and Rule 45(d)(1).

Note to Fed. R. Civ. P. 45(c). Thus, the very purpose of Rule 45(d)(1) being to protect

subpoenaed persons from unduly burdensome or misused subpoenas, this provision authorizes—

indeed, mandates—sanctions, regardless of whether the subpoenaed person incurred only costs

of resistance and not compliance. *See, e.g.*, *Gen. Steel*, 2014 WL 3057496, at *3, 5 (awarding

attorney's fees to subpoenaed person after granting motion to quash in its entirety).

In disagreeing with this conclusion, EMP relies on the Ninth Circuit's decision in *Mount

Hope*, which reversed an award of sanctions under Rule 45(d)(1) for fees and costs incurred in

resisting a subpoena. *See* 705 F.3d at 428 (observing "that the 'undue burden' language" in Rule

45(d)(1) "is limited to harms inflicted by complying with the subpoena"). However, the holding

in *Mount Hope* is narrower than EMP suggests and does not compel this court to reject Viasat's

request for fees and costs here.

*Mount Hope* construed "undue burden" in Rule 45(d)(1) to mean the costs of compliance,

but *only* in the context of subpoenas that are not in themselves unduly burdensome or otherwise

reflect a misuse of the subpoena power. *Id.* at 424-25. In that case, a party served a subpoena that

complied with all requirements of Rule 45: it was not unduly burdensome, not facially defective,

and not issued for an improper purpose. However, the district court quashed the subpoena,

finding that it sought information protected by the First Amendment, and awarded fees and costs

associated with fighting it. *Id.* at 423. In reversing that sanction, the Ninth Circuit emphasized

that the subpoena did not offend the requirements Rule 45, and that the burden imposed on the

subpoenaed person stemmed entirely from having to defend against legal arguments that were

ultimately found to be unpersuasive. *Id*. at 423, 425, 429. As the court put the core question

before it: "[W]e must decide whether losing a motion to compel here based on unpersuasive

legal arguments, *absent other aggravating factors*, is enough to warrant Rule 45[[d])(1)

sanctions." *Id.* at 425 (emphasis added).

In that limited context—where "the subpoenaing party acted in good faith, narrowly

tailored its discovery request, but potentially increased litigation costs during motions practice on

the protection issue," *id.* at 424-25—the Ninth Circuit found that sanctions should not be

awarded:

> [A]bsent undue burden imposed by an oppressive subpoena, a facially defective
> subpoena, or bad faith on the part of the requesting party, Rule 45([d])(1) sanctions
> are inappropriate. Sanctions for issuing a subpoena are in no way supported merely
> because a party advocated a position in seeking discovery that lost in the end. The
> scope of permissible sanctions under Rule 45([d])(1) should not be so broad as to
> chill or deter the vigorous advocacy on which our civil justice system depends.

*Id.* at 429-30 (footnote omitted). Therefore, as courts in this District and the Tenth Circuit have

recognized, the finding against sanctions in *Mount Hope* is limited to subpoenas that are *not*

unduly burdensome, facially defective, or issued in bad faith. *See, e.g.*, *Profita*, 2017 WL

1491003, at *29 (citing *Mount Hope*'s acknowledgment that Rule 26(g) principles are

incorporated in Rule 45(d)(1), and awarding attorney's fees incurred in moving to quash "two

sets of subpoenas that plainly exceeded the reasonable scope of discovery in this case"); *Gen.*

*Steel*, 2014 WL 3057496, at *3 (same, where subpoena was found to have been issued for an

improper purpose); *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL

5376322, at *8, 9 (D.N.M. Aug. 22, 2016) (citing *Mount Hope*'s holding that Rule 45(d)

sanctions are improper when "'the subpoenaing party acted in good faith, [and] narrowly tailored

its discovery request' so that it did not impose a logistical burden on the responding party," in

awarding attorney's fees incurred in a successful motion to quash an unduly burdensome

subpoena).[11]

Such is not the case here, where this court has already found that EMP's Subpoena to

Viasat *did* impose an undue burden as to the engineering drawings. September 21 Order at 19-

24. *See also* ECF No. 203 (order of May 21, 2024, denying EMP's motion to reconsider).

Accordingly, *Mount Hope* does not preclude an award of fees and expenses that Viasat incurred

in resisting the Subpoena's request for engineering drawings.[12]

In short, Rule 45(d)(1) requires this court to enforce the duty to take reasonable steps to

---

[11] EMP seems to recognize that the rationale for denying sanctions in *Mount Hope* applies only
to nonburdensome subpoenas. For instance, EMP describes *Bailey Indus., Inc. v. CLJP, Inc.*, 270
F.R.D. 662, 672 (N.D. Fla. 2010), as "denying sanctions in the form of attorneys' fees where a
subpoena was *not overly broad*." Resp. at 5 (emphasis added). Similarly, EMP characterizes
*Alberts v. HCA Inc*., 405 B.R. 498, 502-03 (D.D.C. 2009), as holding that "[t]he mere fact . . .
that a disputed subpoena is ultimately deemed unwarranted does not, *standing alone*, demand
the imposition of sanctions." *Id.* at 5-6 (emphasis added). And EMP construes *Scherer v. GE
Capital Corp*., 185 F.R.D. 351, 352 (D. Kan. 1999), as "finding that sanctions were not
appropriate simply for the expense of filing the motion to quash." *Id.* at 6. None of these cases
suggest that Rule 45(d)(1) sanctions are limited to costs of compliance when the subpoena is in
fact unduly burdensome, facially defective, or issued in bad faith.

[12] The foregoing analysis is also consistent with this court's denial of PGM's skeletal request for
attorney's fees with respect to EMP's similar (but broader) subpoena to PGM:

> The court denies PGM's request for attorney fees and expenses, as *PGM does not
> provide any argument or details in support. See, e.g., S. Denver Anesthesiologists,
> PC v. Oblachinski,* No. 06-cv-02425-REB-BNB, 2007 WL 2255123, at *1 (D.
> Colo. Aug. 3, 2007). To the extent PGM impliedly seeks attorney fees and expenses
> pursuant to Rule 45(d)(1)—for undue burden imposed by the PGM Subpoena—
> because EMP narrowed the PGM Subpoena in conferral, it did not impose an undue
> burden. The court is also granting EMP's motion to compel in part, and *PGM does
> not argue that being required to file the response as to the denied portion (i.e., the
> engineering drawings) in itself was an undue burden*.

September 21 Order at 24-25 (emphasis added). Unlike PGM, Viasat now argues that being
required to litigate the Subpoena in itself was an undue burden. *See* Reply at 4 n.2, n.3.

avoid imposing "undue burden or expense on a person subject to the subpoena," whether because the subpoena is unduly burdensome, facially defective, or issued in bad faith. When one of those criteria is met, Rule 45(d)(1) does not limit the potential sanction to the costs of complying, but instead authorizes an "appropriate sanction" that may include reasonable attorney's fees and expenses incurred in resisting the Subpoena.

B.      Is Viasat Entitled to its Requested Attorney's Fees and Expenses?

Consistent with the foregoing, the only portion of Viasat's request that the court can consider under the 'significant expense" provision in Rule 45(d)(2)(B)(ii) is the cost Viasat incurred in *complying* with the Subpoena by producing the sales information. And the only portion of Viasat's request that the court can consider under Rule 45(d)(1) are the costs Viasat incurred because EMP did not take reasonable steps to avoid imposing undue burden in its request for engineering drawings.[13] The court begins with Viasat's request for compliance costs.

1.      Rule 45(d)(2)(B)(ii): Did Viasat Incur Significant Expense in Producing the Sales Information?

Mr. Fitch's declaration states that Viasat incurred **$3,411** in attorney's fees to produce the sales information as required by the September 21 Order. ECF No. 207-1 at 3. As noted above, courts usually consider several factors in evaluating requests for fee shifting under Rule 45(d)(2)(B)(ii). *Michael Wilson*, 2012 WL 1901217, at *3-4. Applying those factors here, the

---

[13] The court observes that Viasat does not rely on Rule 45(d)(3)(C)(ii), which allows the court to fashion relief "ensur[ing] that the subpoenaed person will be reasonably compensated." The Motion does not in any way put EMP on notice of a request under that provision, nor is that provision discussed in *Mount Hope*. Viasat therefore has waived any argument it could have made for compensation pursuant to Rule 45(d)(3)(C)(ii).

court finds that (1) Viasat was not and is not interested in the outcome of this case;[14] (2) Viasat is a much larger company than EMP and could more readily bear the costs than EMP; (3) this litigation is not of public importance; (4) the scope of the sales information that EMP sought in its motion to compel was not overly broad; (5) the request was invasive to Viasat as a business competitor; (6) Viasat has not shown that producing the sales information required extensive work to segregate privileged or irrelevant material; and (7) the cost of production appears reasonable. *See id.* (identifying these factors). Thus, factors (1), (3), (5) and (7) weigh in favor of Viasat, while factors (2), (4), and (6) weigh in favor of EMP.

In this case, the court finds the fifth factor—the invasiveness of the Subpoena's request for the sales documents—particularly worthy of weight. In reviewing the conferral emails in the record, it is clear that from the very beginning, Viasat made plain to EMP that the requested sales information was so competitively sensitive, it must be restricted to attorney's eyes only. *Cf.* Fed. R. Civ. P. 45(d)(3)(B)(i), (C)(i) (protecting subpoenaed persons from being required to produce trade secret or other confidential, commercial information except upon substantial need and under "specified conditions"). In response, Mr. Leffert arguably *increased* the invasiveness of this request by flatly refusing to negotiate an amended protective order to include the attorney's-eyes-only provision Viasat requested. ECF No. 44-2. At the time, Mr. Leffert could have sought (albeit belatedly) an extension of the expert deadline to disclose a retained expert to review this information, instead of relying on his clients to conduct that review. This, in fact, is precisely

---

[14] This case concerned a business dispute between EMP and ALA. EMP asserts that Viasat was and is interested in ALA continuing to sell parts to Viasat, but having a commercial relationship with a party to litigation does not give a subpoenaed person an interest in that case.

what Mr. Leffert later requested at the November 2023 status conference, which the court

granted. And it is apparent from the emails and filings in the record that, having waited until a

day before the discovery cutoff to issue the Subpoena, Mr. Leffert sought to pressure Viasat to

comply by threatening immediate sanctions. When Viasat stood on its written objections, EMP

then moved to compel not only the sales data—the only category of documents discussed in the

conferral emails—but also the engineering drawings. EMP's and Mr. Leffert's actions reflect

aggressive tactics designed to strongarm a competitor into releasing sensitive sales data without

adequate restrictions—an approach that highlights the invasiveness of that aspect of the

Subpoena.

Based on the four out of seven factors that weigh in favor of Viasat, and giving special

weight to the facts demonstrating the invasiveness of EMP's Subpoena, the court finds that

Viasat incurred significant expense in complying with the Subpoena. EMP does not dispute that

the attorney's fees Viasat incurred in complying with the Subpoena are reasonable. Resp. at 6,

10-12. Therefore, pursuant to Rule 45(d)(2)(B)(ii), the court orders that **EMP shall pay Viasat**

**$3,411** for the attorney's fees Viasat incurred to produce the sales information.

> 2. *Rule 45(d)(1): Should EMP be Sanctioned for the Unduly Burdensome Request for Engineering Drawings?*

As noted above, Rule 45(d)(1) requires the court to enforce EMP's duty to take

reasonable steps to avoid undue burden to Viasat, by imposing an appropriate sanction for

violation thereof. Here, there is no doubt that EMP violated that duty with respect to the request

for engineering drawings, because this court already found that request unduly burdensome in

the September 21 Order and again on reconsideration. Nonetheless, in deciding whether to

impose a sanction under this rule, the court is to consider several factors, including Viasat's

25

status as a non-party, the relevance of the discovery sought, EMP's need for the documents, the

breadth of the request, and the burden imposed on the subpoenaed party. The court should also

consider whether EMP violated Rule 26(g) duties. *See supra* at 13-15. In addition, the court may

consider the factors for Rule 45(d)(1) sanctions that it evaluated in connection with Viasat's

costs of compliance. *See Michael Wilson*, 2012 WL 1901217, at *3.

Here, the engineering drawings were relevant to EMP's theory of the noncompete clause,

and EMP did show at least *some* need for those drawings—though not enough to overcome the

high level of undue burden that production would have imposed on Viasat. And as above, the

court finds that four out of the seven factors discussed in *Michael Wilson* weigh in favor of

Viasat, particularly the factor assessing the invasiveness of the Subpoena. In fact, the request for

engineering drawings was even more invasive, from Viasat's perspective, than the request for

sales documents because the competitive sensitivity of the drawings was significantly higher.

Moreover, as noted above, Rule 45(d)(1) "gives specific application to the principle

stated in Rule 26(g)" to not issue discovery "for any improper purpose, such as to harass." 1991

Advisory Committee Note to Rule 45(c)(1); Fed. R. Civ. P. 26(g). The court can and should

consider violations of that principle in determining an appropriate sanction under Rule 45(d)(1).

*See supra* (citing *inter alia Gen. Steel*, 2014 WL 3057496, at *3). Here, from the beginning,

EMP made no attempt to work cooperatively with Viasat.[15] Mr. Leffert's tone in the March-April

2023 emails with Mr. Fitch was at best abrupt and—in threatening an immediate motion for

---

[15] In discussing the conduct of the lawyers who were involved with the Subpoena, the court does
not suggest that EMP's counsel is responsible for paying the fees awarded to Viasat. Viasat
requests its fees be shifted to EMP, not its counsel. Motion at 15; Reply at 10.

contempt sanctions before even seeking an order to compel the Subpoena—bordering on uncivil. ECF No. 44-2. Mr. Leffert threatened contempt sanctions despite the fact that Viasat's emails constituted a "written objection" under Rule 45(d)(2)(B), designed to protect Viasat and its refusal to comply until the court ordered production.

In addition, neither the Subpoena nor EMP's pre-motion conferral emails expressly requested engineering drawings. As Viasat notes, EMP did not expressly specify that it sought the engineering drawings until its motion to compel. Even after filing that motion, EMP's demands as to "product information" continued to escalate over time. *See, e.g.*, ECF No. 99-2 (Leffert's July 31, 2023 email to Fitch, demanding "ALL engineering drawings in digital .PDF form" and numerous specific data points for each part, none of which were requested in the Subpoena). Notably, even after this court denied this part of the Subpoena in the September 21 Order, Mr. Leffert again requested the same list of detailed data points—as though this court had not even entered the order. *See, e.g.*, ECF No. 136-1 (Leffert's September 27, 2023 email to Fitch, identifying thirteen such data points and suggesting that EMP could just "review the drawings" instead). At bottom, the unreasonableness of EMP's approach in continuing to demand the engineering drawings (or the several, specific data points) was harassing: EMP knew it was untimely expanding both the categories of documents it sought in the Subpoena and what this court ordered in the September 21 Order. This violation of the principle of Rule 26(g) weighs strongly in favor of imposing an appropriate sanction for EMP's failure to take reasonable steps to avoid undue burden to Viasat under Rule 45(d)(1). Thus, the court finds that EMP should be sanctioned under Rule 45(d)(1). This leaves only the question of the amount of attorney's fees that Viasat seeks.

The preliminary issue concerning the fees and expenses that Viasat seeks is that (as discussed above), most of those fees and costs were incurred in Viasat's *resistance* to the Subpoena, not compliance. And the court can only award those fees and costs that Viasat specifically incurred in resisting the unduly burdensome portion of the Subpoena.[16] *Cf. Western Convenience*, 2014 WL 1257762, at *28 (declining to award the full amount of requested fees and expenses under Rule 45(d)(3)(C)(ii) because "I do not know with any certainty what portion of [the subpoenaed person's] total production involved trade secret or confidential materials, or the amount of fees and costs specifically devoted to the production of those specific materials. . . .[and] I will not use Rule 45(d)(3)(C) to broadly award fees and costs that [the subpoenaed person] could not recover under Rule 45(d)(1).").

Here, Viasat does not attempt to identify the fees and expenses it incurred only in resisting the request for engineering drawings. Rather, Viasat separates its fees and expenses only by phase, i.e., by time periods. However, in one of the phases—the time period following the September 21 Order—the engineering drawings were the only remaining issue. This is the phase that Viasat identifies as "Post-Viasat Document Production Litigation, Status Conferences,

---

[16] In a footnote in its Reply, Viasat asserts for the first time that the Subpoena was facially defective and issued in bad faith. Reply at 4 n.2, n.3. The court declines to consider these arguments. *See, e.g.*, *United States v. Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019) (observing that the Tenth Circuit has "routinely declined to consider arguments that are only raised perfunctorily in footnotes"); *Stender v. Archstone-Smith Operating Trust*, 910 F.3d 1107, 1117 (10th Cir. 2018) ("conclusory assertions in footnotes do not adequately present us with an argument on these claims, so we consider them abandoned"); *Abdulmutallab v. Barr*, No. 17-cv-02493-RM-KMT, 2019 WL 4463282, at *6 (D. Colo. Sept. 18, 2019) ("Plaintiff raised this argument for the Magistrate Judge to consider in a footnote. Arguments contained in a perfunctory manner in footnotes are waived.") (citing *San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1056 (10th Cir. 2011)).

and Related Conferrals." *See* ECF No. 207-1 ¶ 8. In this phase, after the court denied the request

for engineering drawings as unduly burdensome, EMP continued to seek the engineering

drawings in (a) further conferrals, (b) an objection to the September 21 Order, (c) two status

conferences, and (d) a motion for reconsideration. In responding to these repeated, post-

September 21, 2023 requests for the engineering drawings, Viasat asserts that it incurred

attorney's fees in the amount of $42,724.05. *Id*. ¶ 8.[17] Accordingly, the court now considers

whether that amount of fees is reasonable.

> 3.    *Are Viasat's Attorney's Fees Incurred After the September 21 Order
>        Reasonable?*

To determine the reasonableness of the attorney's fees Viasat requests, this court uses the

"lodestar" method, by which the court "multipl[ies] the hours [ ] counsel reasonably spent . . . by

a reasonable hourly rate." *BlueRadios, Inc. v. Kopin Corp., Inc.*, No. 16-cv-02052-JLK, 2022

WL 17976672, at *5 (D. Colo. Sept. 16, 2022) (citing *Case v. Unified Sch. Dist. No. 233,

Johnson Cnty.*, 157 F.3d 1243, 1249 (10th Cir. 1998)). Again, Viasat ultimately bears the burden

to establish the reasonableness of its fee request. *Michael Wilson*, 2012 WL 1901217, at *4.

EMP does not dispute that Viasat's requested hourly rates were reasonable. But EMP

strongly disputes the reasonableness of the hours that Viasat's lawyers spent on this matter.

Mr. Fitch states that he worked 51.9 hours in this phase. ECF No. 207-1 ¶ 8. Mr. Fitch,

who formerly practiced at Sheridan Ross P.C. and is now a partner at Prince Lobel Tye in

---

[17] For this phase, Viasat seeks approximately $3,457 less than the total fees and expenses listed
in the detailed billing statements for this time period. *Compare* ECF No. 207-2 at 21-34. This is
quite close to the $3,411 that Viasat seeks for compliance costs. It thus appears that Viasat has
correctly omitted from this phase all fees it seeks for complying with the Subpoena.

Boston, avers that he has practiced law more than 15 years. *Id.* ¶ 2. Although his current hourly

rate is $700, he billed at a rate of $560 per hour in this matter. *Id.* ¶ 4. Also in this phase, another

attorney with one year of experience, Angela J. Bubis, worked 29.7 hours at a rate of $310 per

hour. A senior paralegal, Lori R. Brown, worked 15.1 hours, and a legal assistant, Dorina J.

O'Toole, worked 1.0 hour. *Id.* ¶ 7. Viasat explains in detail that these hours were spent

responding to EMP's objection, preparing a status report, attending two status conferences, and

responding to EMP's motion to reconsider the September 21 Order. Motion at 7-9.

      In seeking to establish the reasonableness of these hours, Viasat notes this court's

comments at the October 19, 2023 conference indicating, in no uncertain terms, that EMP's

continued request for the engineering drawings—and its new request for detailed data points on

the parts—were "well beyond the order." *See* ECF No. 148 at 10:7-19 (citing ECF 136-1). This

court emphasized "that is the kind of competitively sensitive information that I can tell you this

Court did not envisage in issuing that order." *Id.* at 10:20-25. Viasat further highlights that, at the

status conferences, EMP admitted that the sales data—the only category of documents that EMP

discussed in conferrals before filing its motion to compel—were not, standing alone, useful to

EMP. Finally, Viasat states:

> After the November 9 status conference, EMP commenced another flurry of
> activity that created more needless expense for nonparty Viasat. About two months
> after the Court's September 21 discovery order, EMP filed a motion for
> reconsideration of that order and perhaps in response to Viasat's argument during
> the meet-and-confer process that a motion for reconsideration was procedurally
> inappropriate in view of EMP's then-pending objections of the same order to the
> Chief Judge—EMP voluntarily withdrew those objections and filed a new motion.
> *See* ECF 168, 171. Of course, Viasat had already incurred the expense of
> responding to EMP's now-withdrawn objections. And EMP's choice to raise the
> very same arguments in yet another motion forced Viasat to brief these issues all

over again, which it did. *See* ECF 186.

Motion at 8-9.

In sum, to support its request for $42,724.05 in attorney's fees, Viasat points to conferrals following the September 21 Order, preparation of its status report, preparation for and attendance at two telephonic status conferences, and the submission of written responses to EMP's objection and its motion for reconsideration. Mr. Fitch attaches to his declaration detailed, item-by-item billing records. *See* ECF No. 207-2 at 21-34 (billing records for September 21, 2023, through December 14, 2023).

In response, EMP argues that Viasat's counsel spent far more time than necessary on matters related to the Subpoena. Instead of conducting a line-by-line analysis of the billing records for this court's review, EMP points to these charges:

- 8.3 hours for a "perfunctory three-page motion for leave to respond to EMP's objection" (*see* ECF No. 145, unopposed motion filed October 18, 2023);

- 5.9 hours for the two status conferences, each of which lasted "substantially less than one hour" (*see* ECF Nos. 147 and 164, minute entries reflecting, respectively, 38 minutes and 55 minutes of on-the-record time);

- 6.5 hours for preparing a four-page status report (ECF No. 136);

- 11.8 hours to prepare Viasat's response to the objection that was "just a repackaging" of Viasat's response to the motion to compel; and

- 45.4 hours to prepare the response to the motion for reconsideration, "which again is a repackaging of arguments."

*See* Resp. at 12. EMP further contends that the foregoing instances of allegedly excessive billing

are just examples of what is "[e]ndemic throughout Viasat's counsel's billings." *Id*.

Viasat replies that EMP has incorrectly boiled down the attorney's fees incurred over the span of months to specific filings, and Viasat asserts that EMP's math is wrong. Reply at 8-9. As one example of these purported mischaracterizations, Viasat explains that, instead of 45.4 hours on the response to the motion for reconsideration, Mr. Fitch and Ms. Bubis worked, respectively, 21.4 and 14.3 hours—which would total only 35.7 hours—and that was "for ***all*** case activity from when EMP filed its motion on November 21, 2023, until nonparty Viasat filed its opposition on December 12, 2023. *See* ECF 207-2 [itemized billing statements] at 28-34." Reply at 9. Viasat also takes issue with the notion that it merely "repackaged" arguments, since the response to EMP's motion for reconsideration also required briefing the standard for such motions. *Id*. Viasat concludes:

> EMP cannot now be heard to complain that Viasat's attorneys spent too much time and effort on this case when that time and effort was caused entirely by EMP's unreasonable conduct and irrational doggedness in pursuing exceptionally sensitive discovery it simply was not entitled to.

Reply at 9-10.

In exercising its discretion in determining reasonable attorney's fees, this court need not analyze the reasonableness of the lawyer's billed hours on a task by task basis:

> Because mandating that the district court identify hours reasonably expended by billing entry or litigation activity would, in many cases, be practically impossible, "[t]here is no requirement . . . that district courts identify and justify each disallowed hour. Nor is the[re] any requirement that district courts announce what hours are permitted for each legal task."

*Case*, 157 F.3d at 1250 (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)). "Instead, '[a] general reduction of hours claimed in order to achieve what the court

32

determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'" *Id.* (quoting *Mares,* 801 F.2d at 1203). *See also, e.g.*, *Grace Bible Fellowship v. Polis*, 694 F. Supp. 3d 1338, 1355-56 (D. Colo. 2023) (reducing prevailing plaintiff's requested attorney fees across the board for stated reasons), *judgment entered*, No. 20-cv-02362-DDD-NRN, 2023 WL 3240473 (D. Colo. Apr. 7, 2023), and *aff'd*, No. 23-1148, 2024 WL 1340201 (10th Cir. Mar. 29, 2024), *cert. denied*, No. 24-226, 2024 WL 4486392 (U.S. Oct. 15, 2024).

Having carefully reviewed Mr. Fitch's declaration, Viasat's filings, and the transcripts of the status conferences, and having conducted its own line review of Viasat's billing records, this court respectfully concludes that an award for the total hours Viasat's counsel spent in the phase following the September 21 Order is excessive and not an appropriate sanction against EMP. To be sure, EMP's conduct's exacerbated the situation and increased the amount of time Viasat was compelled to spend on this matter. But there are countervailing considerations.

The work Viasat was obligated to perform was not of particular legal complexity. Rule 45 may be technical, but it does not involve any complex legal theories. The court finds that, for purposes of assessing a sanction against EMP, the work of two attorneys—Mr. Fitch and Ms. Bubis—was not essential and likely resulted in significant duplication of efforts as Mr. Fitch reviewed Ms. Bubis's work. Therefore, the court exercises its discretion to consider only the work of Mr. Fitch, and no other legal personnel, in evaluating an award of attorney's fees.

For this phase (between September 21, 2023, and December 31, 2023), Mr. Fitch seeks $29,064 for his work. *See* ECF No. 207-1 at 3; ECF No. 207-2 at 21-34.[18] At least ten of these

---

[18] The breakdown of Mr. Fitch's billing for this time period was $2,968 for September 2023;

billed entries consist of large blocks of time, for which the narrative descriptions indicate that

Mr. Fitch engaged in researching, drafting, reviewing, and revising written filings for submission

in this court. *See, e.g., id.* at 32 (12/8/2024 entry of 6.3 hours, for a total of $3,528 billed, for

"research for and draft response to EMP's motion for reconsideration of September 21 discovery

order"); *id.* (12/12/2023 entry of 4.1 hours for "review and revise response to motion for

reconsideration and finalize for filing"). While this court does not question the accuracy of these

entries, the court respectfully finds that work of this type might have been accomplished more

efficiently.

Additionally, the court discerns that some of the time Viasat expended on its work was

devoted to expressing its frustration with EMP and its counsel and engaging in its own heated

rhetoric—writing that was not strictly necessary to convey Viasat's point. Indeed, by the time of

Viasat's present Motion (filed in June 2024), Viasat hardly even acknowledges that EMP

partially *prevailed* on its motion to compel the Subpoena. *See* ECF No. 127. These rhetorical

excesses likely contributed to the amount of time that Mr. Fitch spent on his written work after

the September 21 Order; those excesses certainly increased the time that this court had to devote

in drilling down on the essence of the matter. In addition, Viasat chose to wait until after ALA's

motion to quash was resolved before raising the issue of whether the Subpoena even

encompassed the engineering drawings. And so Viasat bears some responsibility for generating a

---

$14,448 for October 2023; $6,440 for November 2023; and $9,912 for December 2023.
However, as noted above, Viasat appears to have excluded from this phase the costs of
compliance that are addressed separately above. The court accordingly discusses here only the
$29,064 that Mr. Fitch seeks in his declaration for his work in this phase, instead of his total
billings of $33,768 for this time period.

more complex and lengthy record. *Cf. Western Convenience*, 2014 WL 1257762, at *21
(declining to construe Rule 45(d)(1) "in a way that ignores the subpoena recipient's own conduct
or confers a right to obfuscation or obstinacy") (quotation omitted).

For these reasons, the court finds that a further reduction of the request for Mr. Fitch's
fees is appropriate. In light of the foregoing considerations, and bearing in mind that this court
*granted*, in part, EMP's motion to compel the Subpoena, ECF No. 127, the court finds that a 30
percent reduction of Mr. Fitch's fees for the phase in question—or $8,719.20, for a total fee
award of $20,344.80 to Viasat—appropriately addresses EMP's violation of Rule 45(d)(1) in
pursuing its unreasonably burdensome request for engineering drawings. *See Case*, 157 F.3d at
1250. *See also Hensley v. Eckerhart*, 641 U.S. 424, 436-37 (1983) ("There is no precise rule or
formula for making these determinations. The district court may attempt to identify specific
hours that should be eliminated, or it may simply reduce the award to account for the limited
success.").

In so finding, the court has exercised its discretion based on a particularized analysis of
the facts of this case, considered pursuant to the operative legal principles. That said, the court
observes that this sanction is consistent with other awards for violations of Rule 45—allowing
for inflation and different legal markets. For example, in *Huntair, Inc. v. Climatecraft, Inc.*, 254
F.R.D. 677 (N.D. Okla. Dec. 16, 2008), the court awarded somewhat less than $15,000 as a
sanction for an unduly burdensome subpoena. But *Huntair* was decided over sixteen years ago in
a legal market that was smaller (even then) than Denver. Taking into account inflation over the
last ten years, the award in this case is also similar to the total award of $19,515.82 (for
compliance costs and reasonable compensation under Rule 45(d)(3)(C)(ii)) issued by a judge in

this District. *See Western Convenience*, 2014 WL 1257762, at \*30.

In sum, exercising its discretion to determine an appropriate sanction under Rule 45(d)(1), the court orders that **EMP shall pay Viasat $20,344.80** for the attorney's fees that Viasat incurred in defending against EMP's unduly burdensome Subpoena requesting engineering drawings.

## CONCLUSION

Consistent with the foregoing, Viasat's Motion (ECF No. 207) for attorney's fees and expenses is **GRANTED IN PART** and **DENIED IN PART**. EMP shall pay Viasat $3,411 in compliance costs plus $20,344.80 of the fees Viasat incurred in resisting the request for engineering drawings, for a total of **$23,755.80**.

Objections to this order are due within fourteen days of the filing date of this order, i.e., by January 22, 2025. If no objections are filed, EMP shall make the above payment to Viasat within fourteen days after that deadline passes, or by February 5, 2025. However, if either side timely objects, then the obligation to pay is stayed until Chief Judge Brimmer's ruling on the objection(s).[19]

---

[19] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

DATED: January 8, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge